# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUSTY BUTTON AND MITCHELL TAYLOR BUTTON<br><br>PLAINTIFFS,<br><br>V.<br><br>JULIET DOHERTY, KRISTA KING-DOHERTY and LUIS PONS<br><br>DEFENDANT. | Case No:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Dusty Button and Mitchell Taylor Button file this Complaint and sue Defendants Juliet Doherty, Krista King-Doherty and Luis Pons and allege as follows:

## PRELIMINARY STATEMENT

1. "I kissed a girl and I liked it". That is how Defendant Juliet Doherty preempted her presumptuously strategic and short-lived friendship with Plaintiffs in July of 2018.

2.  Ms. Doherty's *intentional* use of the *very specific* lyrics from Katy Perry's song "*I kissed a girl and I liked it*", was a direct nod to the open dating relationship that her good friend, Sage Humphries initiated with both Plaintiffs Dusty and Taylor Button just one year prior, which came to grief in July of 2017.

3.  Ms. Humphries had relayed those very same lyrics to Plaintiff Dusty Button after initiating an open dating relationship with both Plaintiffs in April of 2017 whereas, Ms. Humphries shared those intimate details with Ms. Doherty following the end of her relationship with Plaintiffs, leading Ms. Doherty to follow suit as she repeated those *very same lyrics* to Plaintiffs the following year setting a precedent before she *aggressively* and sexually pursued Plaintiffs in the hopes of initiating the same open relationship with Plaintiffs that her friend Sage Humphries was successful at creating just one year prior.

4.   Ms. Doherty's persistent, unsolicited and unwanted sexual behavior and harassment toward Plaintiffs lasted over the course of five days during a professional work event whereas, Dusty Button and Juliet Doherty were hired by Ivan Sepulveda of Panama Ballet Festival to perform as guest artists and Plaintiff Dusty Button was additionally hired as a guest artist to teach ballet and contemporary dance to the participants of the festival.

5. Ms. Doherty's aggressive pursuit and sexual advances were verbally and physically rejected by both Plaintiffs as it was abundantly clear that Ms. Doherty's advances and references to Plaintiffs' previous open dating relationship with her friend, Sage Humphries, were an attempt to mimic her and initiate a "threesome" with Plaintiffs to which Plaintiffs rejected on numerous occasions during the five days in Panama with Juliet Doherty.

6. During Plaintiffs' "short-lived" friendship with Juliet, she sexually assaulted, and harassed both Plaintiffs including by continuing to aggressively pursue Plaintiffs sexually after Plaintiffs made it clear to Juliet that they would not entertain her unwanted sexual behavior.

7. On July 12th, 2018, near the end of the business trip in Panama, Defendant (and personal photographer of Sage Humphries and Juliet Doherty), Luis Pons communicated to Ms. Doherty relaying defamatory false allegations that Plaintiffs were "criminals" who drugged and assaulted Sage Humphries and that the fun loving and innocent photos and videos Ms. Doherty was posting on her social media accounts during her time in Panama with Plaintiffs looked as though she was in a threesome with Plaintiffs but that Plaintiffs were dangerous criminals who she should not be around.

8. At the conclusion of the Panama Ballet Festival, and following Ms. Doherty's communications with Defendant Luis Pons, (which Plaintiffs discovered in 2022 through legal discovery process), Plaintiffs spoke to Ms. Doherty a total of two times and ultimately ended communication with Juliet as her actions during the trip and their suspicion of her behavior toward them was eerily similar to the behavior of her good friend and ex-girlfriend of Plaintiffs, Sage Humphries.

9. As retaliation for Plaintiffs vehement rejections of Ms. Doherty's advances in Panama in 2018 and following Luis Pons' communication in conspiracy with Ms. Humphries, Juliet Doherty filed a civil complaint in the Nevada District Court as a Plaintiff in an ongoing litigation[1] initiated by her good friend and ex-girlfriend of Plaintiffs, Sage Humphries who is represented by Sigrid McCawley[2] of Boies Schiller & Flexner LLP.

10. Juliet Doherty's complaint in Nevada shockingly, role reversed the factual events from her time in Panama with Plaintiffs as she portrayed herself as a victim of sexual abuse against Plaintiff Dusty Button without sufficient knowledge that Plaintiffs possessed irrefutable evidence proving that they were victims of Ms. Doherty and whereas, Juliet's frivolous complaint

---

[1] Nevada District Court Case 2:21-cv-01412-ART-EJY
[2] Plaintiffs have already filed a defamation suit against Ms. McCawley, Juliet Doherty's former attorney, in addition to notifying the Florida State Bar of Ms. McCawley's unethical behavior and tactics within the Nevada litigation – see Southern District Court of Florida Case (0:24-cv-60911-DSL).

COMPLAINT AND DEMAND FOR JURY TRIAL

consisted of the very acts of sexual assault and abuse which she, herself had committed against Plaintiffs in 2018 but which she falsely claimed were the actions of Plaintiffs against her in order to conspire with Sage Humphries against Plaintiffs to intentionally harm and destroy Plaintiffs' careers, reputations, livelihoods and business relations.

11. In addition, Ms. Doherty falsely claimed that she was drugged by Plaintiffs in Panama, severely, irreparably and intentionally harming Plaintiffs' careers, reputations, livelihoods and business relations indefinitely and later through Sage Humphries' deposition with Plaintiffs they discovered that Juliet Doherty had further defamed Plaintiffs by claiming that she was raped by both Plaintiffs, though this allegation was not present in her complaint prior to her voluntary withdrawal.

12. In 2022, Plaintiffs discovered communications between Juliet Doherty's mother and Sage Humphries' mother including but not limited to evidence of a social media account created and run by Sage Humphries' mother and Defendant Krista King-Doherty titled @warriormoms, dedicated to defaming, harassing and destroying Plaintiffs' livelihoods, careers, reputations and business relations by spreading false, malicious and defamatory rumors on social media to millions of followers, subscribers, employers, sponsors and innumerable third parties which later

disassociated from Plaintiffs due to Defendants' egregious online harassment and conduct.

13. From 2018 to 2021, Juliet Doherty, her mother Krista King-Doherty and Luis Pons, in conspiracy with each other and with Sage Humphries and her parents and various third parties made, and published defamatory and salacious rumors about Plaintiffs to intentionally and knowingly harm them and their careers and reputations.

14. Juliet Doherty filed her complaint in Nevada with intentionally frivolous claims including but not limited to knowingly lying to the Court by alleging Plaintiff Dusty Button committed "juvenile abuse" against her to entice the media and the press to print false and defamatory statements for shock value.

15. Ms. Doherty was over twenty-one years of age when she met Plaintiffs for the first time ever in Panama and therefore, knowingly and maliciously stated she was under the age of eighteen to influence the media, the press, the public and any potential juror that she was a child at the time of her (false) allegations thus setting off a global chain of hit pieces published by every major media house on the planet all of which were tactically curated by Dawn Schneider, Public Relations manager for Boies Schiller Flexner LLP.

16. On February 23rd, 2023, Plaintiffs sent their first requests for admissions to Ms. Doherty and additionally providing Ms. Doherty's attorneys from Boies Schiller & Flexner LLP with evidence of Ms. Doherty's aggressive behavior and conduct toward them as well as proof that her allegations were fraudulent thus exposing her as the predator and Plaintiffs as the prey.

17. The following day, Juliet Doherty voluntarily withdrew from the Nevada litigation and voluntarily dismissed her complaint against Plaintiffs.

18. Ms. Doherty conspired with Sage Humphries against Plaintiffs using allegations of criminal behavior which she, herself, committed against Plaintiffs in 2018 to intentionally harm, defame, harass and humiliate Plaintiffs who only ever knew or spoke to her for five days in 2018 but who rejected her aggressive sexual advances.

19. Following Juliet Doherty's trip to Panama, Defendant Krista King-Doherty spread salacious and untrue rumors about Plaintiffs on well-known social media platforms including by interfering in Plaintiffs' business relationships, alluding to Plaintiffs being criminals and sexual predators.

20. Krista King-Doherty then conspired with her daughter, her daughter's good friend Sage Humphries and her mother, Micah Humphries,

Defendant Luis Pons and other third parties, to create an untrue and outrageous narrative that Plaintiffs were sexual predators who preyed on children; and that Plaintiffs used those "young girls" for sex acts.

21. These outlandish, disgusting and defamatory statements online and through communications with Plaintiffs' employers, sponsors and business relationships resulted in complete loss of any and all income, employment, business and reputation, ultimately terminating Plaintiffs' careers in both of their respective industries as well as their good names rendering them forever unemployable.

22. As set forth herein, Defendants' actions were intentionally done so to harm and destroy Plaintiffs; and done so with actual malice.

**THE PARTIES**

23. Plaintiff Dusty Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina; Ms. Button is the wife of Plaintiff Taylor Button.

24. Plaintiff Taylor Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina; Mr. Button is the husband of Plaintiff Dusty Button.

25. Upon information and belief, Defendant Juliet Doherty is an individual who resides and is domiciled in Brooklyn, New York.

26. Upon information and belief, Defendant Krista King-Doherty is an individual who resides and is domiciled in Albuquerque, New Mexico but who frequents New York City, NY on a recurring basis for business purposes.

27. Upon information and belief, Defendant Luis Pons is an individual who resides and is domiciled in the Bronx, New York.

## JURISDICTION AND VENUE

28. Plaintiffs are citizens of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C § 1332.

29. Defendants Juliet Doherty and Luis Pons are citizens of the State of New York for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

30. Defendant Krista King-Doherty is a citizen of New Mexico but who frequents New York for business, for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

31. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

32. Pursuant to 28 U.S.C § 1391(b), venue is proper in this Court because the Defendants resides in this district

33. Pursuant to the Federal Rules of Civil Procedure 4(k), this Court may exercise personal jurisdiction over Defendant Krista King-Doherty as the Defendant has minimum contacts with the forum state.

34. The Court has general jurisdiction over Defendants Juliet Doherty and Luis Pons as they are residents of this State.

35. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district by virtue of the transmission and publication of the false and defamatory statements in this district (and elsewhere) and also because Defendants are subject to this Court's personal jurisdiction with respect to this action.

36. This Court possesses personal jurisdiction over Defendants on the grounds that Defendants Juliet Doherty, Krista King-Doherty and Luis Pons committed a tortious act such as injurious falsehood in this state (as alleged in this Complaint), and on the grounds that Defendants caused injury to Plaintiffs within the state arising out of an act or omission by Defendants outside of this state, while at or about the time of the injury, products, materials, or things processed, serviced, or manufactured by

Defendants were used or consumed within this state in the ordinary course of commerce, trade, or use.

### **FACTUAL BACKGROUND**

1. Plaintiff Dusty Button was a *world-renowned* ballerina who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City.

2. In 2007, she joined the Royal Ballet School in London and in 2008 she joined Birmingham Royal Ballet in England.

3. In 2011, Ms. Button danced with American Ballet Theatre.

4. Ms. Button is best known for her work with the Boston Ballet, which she joined in 2012 and was promoted to their highest position of principal ballerina in 2014.

5. Ms. Button was Red Bull's first and only ballet athlete and has been published in media publications across the globe and has positively influenced hundreds of thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States.

6. Plaintiff Dusty Button's Instagram account, @dusty_button, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

7.   Ms. Button deleted her Instagram account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Defendants' defamatory statements to a mass audience whilst participating in a global media campaign against Dusty to destroy her livelihood, career, reputation and business and to gain attention and traction for the false and fraudulent complaint Juliet Doherty would file, which has since been voluntarily dismissed by Juliet.

8.   Plaintiff Mitchell Taylor Button, (Taylor Button), was one of the world's *most influential* custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his automotive design, builds and work in the industry.

9.   Plaintiff has positively influenced hundreds of thousands of people nationally and internationally and has been procured from global organizations for speaking engagements and commissions that continue to live on with his legacy today despite the destruction of his life's work by Defendants.

10. Plaintiff Taylor Button's Instagram account, @button_built, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

11. Plaintiff Taylor Button deleted his Instagram account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Defendants' defamatory statements to a mass audience whilst participating in a global media campaign against Taylor to destroy his livelihood, career, reputation and business and to gain attention and traction for the false and fraudulent complaint Juliet Doherty would file in 2021, which has since been voluntarily dismissed by Juliet.

12. As explained further herein, Plaintiffs' names and likeness *was* their business and generated one hundred percent of their yearly revenue whereas, Plaintiffs, themselves and what they provided to their respective industries was *solely* based on what they provided as their name brands, known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand, Bravado by Dusty Button, Meisturwerk and Meisturwerk Machinen.

13. Plaintiffs' established businesses, goods and services were directly sourced and provided from their good names, talent, expertise, reputations, skills, manufacturing and marketing capabilities, which were **completely destroyed** by Sigrid McCawley and her abuse of power to

influence the media, the public and the press, as a famous, world-renowned attorney.

14. At the time of the events described herein, Juliet Doherty was an actress and model, world-renowned dancer and social media influencer with a following of at least 320,000 subscribers on Instagram, with the account name @julietdoherty with an additional number of "fan page" accounts which followed and posted in support of Juliet Doherty.

15. At the time of the events described herein, Krista King-Doherty was a well-known and globally sought after master dance teacher and dance choreographer with a social media following on Instagram of at least 31,000 subscribers with the Instagram username @misskristakingdoh.

16. At the time of the events described herein, Luis Pons was a well-known and sought after dance photographer with a social media following of at least 57,000 subscribers with the Instagram username is @ponsphoto.

17. Prior to Juliet Doherty filing her false, fraudulent and malicious allegations against Plaintiffs, Dusty Button previously taught with Ms. Doherty's mother as a guest dance teacher and choreographer for various dance studios, events, competitions and galas nationally and internationally on multiple occasions.

18. A culture of defamation permeates and plagues the #MeToo movement, particularly in the entertainment industries and has in turn, destroyed the credibility of real victims everywhere, while simultaneously mocking the judicial system and enabling people to weaponize the civil justice system with false accusations, which ultimately have the same consequence on innocent lives as they would if they were true accusations against guilty parties, rendering Courts and parties afraid to defend against claims of this magnitude due to the inevitable nuclear social fallout.

19. The culture of defamation has dialed the integrity of civil litigation back decades, as recently seen in cases around the world such as Depp v. Heard, Bauer v. Hill and more recently, the Eleanor Williams case in England, all of which proved innocent parties' lives were *completely destroyed* by false and defamatory statements not only in litigation, but in the media and in the press.

20. Other prominent dancers have been publicly defamed and severely harassed in past years, through fraudulent and defamatory statements online including but not limited to British dancer and choreographer Liam Scarlett, who sadly took his own life as a direct cause of false and defamatory statements in the media and through industry gossip.

"*We feel Liam would not have taken his life if his name hadn't been dragged through the press with inaccurate allegations*", stated by Deborah Scarlett, Liam's mother.

21. Liam Scarlett was cleared of any wrongdoing, but only *after* his death which included the false and defamatory statements of misconduct with children, which were *all proven to be false* statements but which were never acknowledged or rectified by any media source **to date**, much like the false and defamatory statements made by Sigrid McCawley.

22. Plaintiffs have suffered *unimaginable* loss to their businesses, careers, reputations, finances, mental health, and overall livelihood and will continue to suffer as a direct and proximate result of Juliet Doherty's false allegations and Defendants' harassment and defamatory statements for the painfully foreseeable future.

23. Plaintiffs are currently enrolled into government assisted programs in South Carolina, such as SNAP for food and Medicaid, as Plaintiffs are expecting their first child in August of 2024.

24. Plaintiffs have had absolutely *no income* and no ability to generate income since May 13th, 2021 due to Defendants' conduct and the egregious false allegations attached to their names and have generated *no income* since the onset of the defamatory statements, as a direct result of

Defendants' intentional infliction of emotional distress and harm on Plaintiffs and their livelihoods.

25. As explained further herein, Defendants **intentionally, willfully** and **maliciously destroyed** Plaintiffs' livelihoods, businesses and future ability to generate work or income in both of their respective industries for the foreseeable future, as their names, likeness and reputations were their careers which were *obliterated* as a direct result of Defendants' intentionally harmful, harassing and defamatory statements.

26. While Juliet Doherty's voluntary dismissal of her claims against Plaintiffs in Nevada are an indirect admission that they were entirely false that dismissal does not repair the damage or the effect the false allegations had on Plaintiffs' lives as she *knowingly* and maliciously filed fraudulent allegations against Plaintiffs, which caused irreparable damage.

**A. *Juliet Doherty Sexually Assaulted Plaintiffs Dusty and Taylor Button***

27. On July 6th, 2018, Dusty and Taylor Button arrived in Panama City, Panama whereas, Dusty Button was to headline the Panama Ballet Festival Gala ("the Festival"), presented by Owner and Director, Ivan Sepulveda.

28. Plaintiff Taylor Button traveled with his wife as it was common practice for Plaintiffs to travel with one another to each other's jobs, though their

industries were in no way associated with one another nor did they work within one another's industries yet, Plaintiffs were both sought after by numerous companies and sponsors as their individual talents combined was beneficial for those who employed them individually due to their combined social media presence and subscribers who subscribed to the couple's everyday lives and careers.

29. Plaintiff Taylor Button was asked by Ivan Sepulveda to capture photos and video for the Panama Ballet Festival as he was aware that Taylor was responsible for all of his and his wife's photography and would be photographing his wife. Taylor Button obliged and granted Ivan Sepulveda with the favor at no cost to him or to the program.

30. Upon Plaintiffs' arrival to Panama, they met the Defendant, Juliet Doherty for the first time at the airport where they were picked up by owner and Director of the Festival, Ivan Sepulveda and his son Diego.

31. Juliet Doherty was also contracted to perform in the same Gala at the Panama Ballet Festival that Plaintiff Dusty Button was headlining and teaching for that week.

32. Plaintiffs had never met or spoken to Juliet Doherty prior to meeting her in Panama but both Juliet Doherty and Dusty Button were equally well-

known in the dance and ballet industries and Plaintiffs knew that Ms. Doherty was a well-known successful dancer.

33. In fact, Ms. Doherty, (at the time of the events listed herein), had a large social media following, equivalent to that of Plaintiffs and was additionally, known for her acting roles in recent film appearances such as *High Strung Free Dance* in association with Nigel Lythgoe who previously directed a YouTube dance series produced by DanceOn, *Dance School Diaries*, which had previously also starred her friend Sage Humphries.

34. During Plaintiffs' dating relationship with Sage Humphries, she informed the Buttons that she "hated" Juliet Doherty, particularly after learning that Juliet "used her connections" to get roles that Sage believed she deserved more than Ms. Doherty therefore, Plaintiffs were always under the impression that the two had no association however, as seen herein, Plaintiffs later learned of their conspiracy together and against Plaintiffs following Ms. Humphries' "break up" with Plaintiffs in 2017.

35. Although Ms. Button and Ms. Doherty were two well-known figures in the same industry, they had never met or spoken prior to the initial meeting in Panama however, Ms. Button was previously hired to guest teach and choreograph for Master Ballet Academy, a ballet studio which

Ms. Doherty's mother, and Defendant, Krista King-Doherty was a teacher and her daughter was, (many years prior), a student of her mother's and never a student of Plaintiff Dusty Button's and where in recent years Defendant Juliet Doherty was also a teacher.

36. Ms. Button taught with Defendant Krista King-Doherty on a number of occasions at Master Ballet Academy as well as a variety of other industry events including Youth America Grand Prix, "The world's largest dance network and the number one source of young dance talent for dance schools and companies worldwide", whereas, the culmination of the regional events each year are held in New York City, NY, where Defendant Krista King-Doherty has been in attendance for years in regard to her business relations in New York with Youth America Grand Prix.

37. During the course of Plaintiffs' trip in Panama and throughout the Festival, Defendant Juliet Doherty was extremely persistent in pursuing a friendship with Plaintiffs, initially starting with immediate conversation at the airport regarding her desire to meet Plaintiffs, progressing to asking small favors of the Buttons such as editing her music for the Gala that week, taking photos and videos of her performances, editing photos and videos for her once they were taken for her to "post" on social media and

eventually leading to the harassment, assault and sexual pursuit of Plaintiffs for the remainder of the trip and once the Gala was complete.

38. Multiple parties who were in attendance and/or hired for the Festival gathered at the hotel pool to celebrate the Festival and the Gala which would commence the following day.

39. Taking a break from the pool, Juliet came to sit with Plaintiffs at a poolside table and unexpectedly decided to open up to the Buttons, whom she had only recently met.

40. Juliet, eager to get something off of her proverbial chest then told Dusty and Taylor that her birthday was the month prior and to celebrate she went to a "gay night club" for the first time in her life.

41. It was at this point that she giggled and said to Dusty and Taylor:

"Actually, I need to tell you guys something but I haven't told my mom… "**I kissed a girl, and I liked it**".

42. Following Juliet's spontaneous decision to tell Dusty and Taylor of her "first-time" experience with another woman, Plaintiffs immediately felt uncomfortable and suspicious of Juliet's reason to disclose such information to them as they had only met just days prior to this "confession" of Juliet's.

43. Over the coming days, Plaintiff Dusty Button and Defendant Juliet Doherty finished their performances with Panama Ballet Festival.

44. Plaintiffs were invited by the owner, Ivan Sepulveda, and his son, Diego, with the rest of the cast, including Juliet, to various restaurants, night clubs and bars as a gesture to show all who attended and performed, the city of Panama.

45. When the Festival was complete, the host and director, Ivan Sepulveda generously invited the Buttons and anyone else who desired to extend their stay in Panama so they could enjoy themselves on the island with him and his son, to show them other parts of Panama before leaving whereas, the Buttons immediately obliged.

46. Juliet told the Buttons that she also wanted to stay in Panama after Mr. Sepulveda generously offered but that she did not want to pay for her own room; it was then that she asked Plaintiffs if they would mind if she abandoned her room and moved into theirs so that she could stay in Panama as well.

47. Plaintiffs, having a room with two beds, said yes as they "thought" Juliet was harmless and would have done the same for any other that was invited to perform at the Festival, should they have been in that situation.

48. During the course of Ms. Doherty's stay in Plaintiffs' hotel room and on multiple occasions, she would intentionally expose herself, walk around soaking wet wearing only a partially covering towel after showering, laying on her bed in suggestive positions to make various calls to her agent and facetime calls including to named Defendant in this action, Luis Pons, which Plaintiffs thought was extremely odd behavior on all accounts.

49. On one such occasion, Juliet literally jumped into Plaintiffs' bed wearing only a sweatshirt and underwear sitting in a suggestive position exposing her underwear to Plaintiffs thus making Plaintiffs uncomfortable, though they did not address Juliet's odd behavior at the time, particularly because they only recently met her and were aware that while they did not share this affinity, many in the dance industry are very open amongst themselves with nudity;  Juliet, sitting inches in front of Plaintiff Taylor Button and just adjacent from Plaintiff Dusty Button remained in the bed as she watched Taylor edit all of the photos that he had taken that day of her and Dusty that afternoon when she and Dusty had done a promotional photoshoot during a rain storm in the Panamanian jungle with Taylor and owner of The Festival, Ivan Sepulveda.

One such instance of the forementioned is seen in the photo below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



50. From the day Plaintiffs met Juliet and until the day of departure from

Panama, Juliet Doherty aggressively pursued Plaintiffs and was overly

persistent in her sexual advances toward Dusty and Taylor, which

ultimately took a dark turn into sexual assault and abuse

51. The first incident pertaining to Juliet's persistent and unwanted sexual behavior toward Plaintiffs occurred at a dinner event with the entire cast and the host of the Panama Ballet Festival present.

52. Plaintiffs were already seated at the table when Juliet chose to sit next to Dusty, placing Dusty and Juliet adjacent from Taylor as Taylor was sitting at the head of the table.

53. Prior to eating dinner, cocktails were ordered by different members of the group and the host to cheers to and celebrate the success of the Festival.

54. Throughout the entirety of the dinner, Juliet was inappropriately touching Dusty under the table and continuously placing her hand on Dusty's leg, rubbing her leg and sliding it up her inner thigh as Dusty repeatedly removed Juliet's hand from her body and shifted her weight in the opposite direction.

55. Taylor noticed Dusty's concern and erratic movement of Dusty's right arm as she swatted Juliet's left hand away from her leg.

56. Taylor then texted his wife and said, "What the fuck is she doing", and Dusty, (who felt extremely uncomfortable with Juliet's behavior), stood up and excused herself to the restroom to remove herself from the uncomfortable situation.

57. While in the restroom, Dusty texted Taylor that Juliet was aggressively touching her under the table and that she wouldn't stop even after removing her hand and forcing it away, on more than one occasion.

58. Dusty then asked Taylor if he would say out loud at the table that he and his wife wanted to go sit at the bar so that Dusty could escape the situation professionally.

59. After dinner, the host took the group from dinner to a nightclub but with extreme social anxiety, Taylor immediately exited the club with Dusty only seconds after entering the club due to the capacity being overwhelmingly exceeded.

60. Juliet instantly followed Plaintiffs out of the nightclub at which point the host asked them what they would like to do instead and the Buttons stated they were just going to relax at the hotel pool but that everyone else should stay at the club and have a good time; Juliet added to the conversation, "Yes please, drinks and pool!".

61. Upon leaving the night club, Plaintiffs and Juliet Doherty were driven back to the hotel by Ivan Sepulveda and his son and they all went together to the hotel pool bringing snacks and drinks to the pool.

62. Juliet again, overserves herself at the pool and becomes extremely flirtatious with both Plaintiffs in the pool, continuously and aggressively

climbing onto the backs of both Plaintiffs, each time, touching them

inappropriately under the water and begging for them to "come play".

63. Plaintiffs remove Juliet each time from their backs and she repeatedly

tries to stay on them as they swim away, trying to keep a professional

distance without causing a scene in front of the host and his son who were

witnessing her behavior in real time.

64. Juliet was persistent in pursing both Plaintiffs, even after Taylor notices

Dusty's uncomfortable panic and loudly tells Juliet multiple times to

"Stop" "Stop now" and "This is extremely unprofessional, Ivan and his

son are watching you do this, stop" "This is not going to happen" "We

know what you are doing and it's not happening".

65. It was clear that Juliet had no intention of stopping her behavior and that

although she was under the influence of alcohol, her desperate agenda to

seemingly replace Sage Humphries and initiate a threesome with

Plaintiffs was clear.

66. After Juliet's multiple advances at dinner and the pool, Dusty and Taylor,

(knowing that Juliet knew of the relationship they had with Sage

Humphries), tell Juliet in the pool, "I know what you are trying to do,

please stop, this is never going to happen", as it was abundantly clear

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

from her actions that her goal was to have a threesome with Dusty and

Taylor, just as her friend Sage Humphries did.

- The following photos are a sequence of screenshots from a video

which show Juliet Doherty aggressively climbing onto the back of

Plaintiff Dusty Button on the night that Juliet Doherty falsely claimed

Dusty assaulted her and Plaintiffs drugged her, which was entirely

malicious, defamatory and untrue:

 

1
2
3
4
5
6
7
8
9
10
11
12

 

13
14

67. Following the first incident in the pool, Dusty once again removes herself

15
16
    from the discomfort and tells Taylor she is going up to the room to get

17
    bottled waters for everyone at the pool, leaves the pool and heads up the

18
    elevator to their room.

19

68. Within minutes, Juliet tells Taylor that she has to use the restroom, exits

20
21
    the pool, bypasses the restroom located beside the pool and enters the

22
    hotel lobby instead, still soaking wet and in her bathing suit.

23

69. Taylor then texts his wife to tell her that Juliet oddly left the pool and that

24
25
    he had no idea why she went into the hotel however, Dusty's phone was

26
    left by the pool.

27
28

70. Dusty, having retrieved the waters for everyone from the room, was waiting for the elevator upstairs to come back downstairs and when the elevator door opened, (to Dusty's surprise), Juliet was inside. Dusty entered the elevator and asked Juliet what she was doing upstairs, as it was abundantly clear Juliet was following her.

71. It was then that Juliet grabbed Dusty's face, pushing her back into the wall and pushing her face against Dusty's in an attempt to kiss her.

72. Dusty, hands full of waters, turned her head, nudging Juliet with her shoulder and says to Juliet, "Juliet stop, you're drunk".

73. Dusty goes back to the pool with the waters and Juliet, again, follows her.

74. Once back at the pool, Juliet continues to make herself drinks until she reaches a point of feeling sick.

75. Juliet then went to the restroom located outside, beside the pool and begins to vomit.

76. Dusty then leaves the pool to check on her and make sure she is okay, giving her water and holding her hair back.

77. Afterward, Juliet exits the pool area and proceeds to enter the lobby again and goes to the Buttons' hotel room, where she stayed in the shower for over an hour trying to sober up as the Buttons remained at the pool to clean up the area with Ivan Sepulveda and his son, Diego.

COMPLAINT AND DEMAND FOR JURY TRIAL

78. The Buttons then part with Ivan and his son and go back up to the room and Dusty knocks on the bathroom door to make sure Juliet is okay.

79. About twenty to thirty minutes later, while Dusty and Taylor were already in their bed to sleep, Juliet exits the bathroom soaking wet and again, in only a towel, lays on her bed and goes to sleep.

80. The following morning, Plaintiffs and Defendant went to get coffee at the mall beside the hotel where all three proceeded with the day as if nothing happened the night before and where Plaintiffs understood that Defendant Juliet Doherty must be going through a sexually driven identity crisis.

81. Plaintiffs were recently provided text messages between Ms. Doherty and son of Panama Ballet Festival owner, Diego Sepulveda from the day following the evening at the pool whereas, Diego even addresses that he is also feeling hungover and that he "woke up dizzy" from drinking the night before.

82. Ms. Doherty was never drugged and in fact, was intoxicated the evening before in celebration of a good time in Panama and later states that to Diego Sepulveda.

83. Ms. Doherty knew that she was never drugged but intentionally harmed Plaintiffs by making this false and defamatory statement on numerous occasions.

(The photos below are indicative of the days and times spent in the days following the night in which Juliet made her malicious and frivolous claims)







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





84. Plaintiffs never pursued a criminal report against Juliet Doherty as, at the time, it seemed she was battling her own demons in regard to her sexuality and simply acted out when intoxicated however, Juliet's actions from 2018 until 2021 prevented Plaintiffs from seeking legal recourse against her as the defamatory and false rumors were so traumatizing that Plaintiffs were prevented from telling their truth to an audience who had already been swayed by conspiracy and defamatory communications and publications.

85. In fact, Plaintiffs did seek advice from a detective they knew in Massachusetts and were advised that civil recourse would be the best option whereas, even though Defendants' allegations were false and defamatory, she made her statements first so it may look as though Plaintiffs were only stating their truth as revenge or in an attempt to discredit her statements and that it would most likely be ineffective to file a criminal report.

86. Following the events of the previous night in the pool, the host, Ivan Sepulveda and his son invited the Buttons and Juliet to go to an island which was nearly two and half hours of travel away.

87. Mr. Sepulveda escorted the three around Panama for the rest of the trip, for about three days, to various locations to sight see.

88. There was never any mention of the night at the pool as Plaintiffs let it go and Juliet never brought up her behavior, presumably because she did not remember just how aggressive her behavior had been and therefore Plaintiffs did not want her to feel shame for her actions as apart from that night, she seemed to be a genuinely good friend.

89. During this time, Mr. Sepulveda prescheduled and contracted Dusty and Taylor back to Panama for a separate event which he wanted to hold in February of 2019 and additionally asked Juliet if she would want to join as well citing that she seemed to be having a great time following her decision to remain in Panama alongside Plaintiffs, to which all three were looking forward to coming back to Panama and therefore obliged.

90. During Plaintiffs' time in Panama, they sent numerous photos and videos of Juliet's performance, taking Dusty Button's dance class which was taught to Panama Ballet Festival students and her time in Panama sightseeing to her mother, Krista, as her mother commented to Dusty Button on Instagram after posting a series of photos and videos, (some of which Juliet were in), asking if Plaintiffs would send her all the photos and videos because Juliet was "so bad" at sending her any photos or videos.

91. Without question, Plaintiffs sent all photos and videos from Panama to her mother as a nice gesture.

92. On the last day of the trip in Panama, Defendant stated how much fun she had with Ivan and his son, as well as the Buttons, including in a video where she was wearing and borrowed one of the Buttons' branded hoodies and relayed to the camera "I'm so happy right now!".

- The photo below was taken on July 14th, 2018, the day of departure from Panama.



COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

93. This statement was made just before Plaintiffs and Juliet were driven to the airport as their trip had concluded.

94. Once at the airport, Juliet and Plaintiffs went to separate gates but prior to going their separate ways Juliet gave both Plaintiffs a hug and said "I love you guys" and "I'll text you!".

95. Juliet never brought up her behavior to anyone on the night she claims she was "drugged and sexually assaulted", because she was not; in fact, on July 19th, 2018, Juliet Doherty "liked" a photo of Plaintiff Dusty Button's on Instagram, over a week after she falsely alleged Plaintiffs drugged her and she was assaulted, as seen below:



96. Plaintiffs have since discovered through Nevada litigation discovery that on July 12th, 2018, just two days prior to the end of the trip in Panama, Juliet received further communication from Defendant, Luis Pons, who was good friends with Sage Humphries and her mother, as well as her and Juliet Doherty's personal photographer and "good friend".

97. Mr. Pons is known for photographing young women in dance as well as taking advantage of those seemingly professional relationships with young girls, often taking the opportunity to "get closer" to those young girls by way of sending inappropriate text messages to those he photographs including but not limited to Defendant Juliet Doherty, as she stated to Plaintiffs in Panama.

98. Ms. Doherty created her narrative only *after* speaking with Defendant Luis Pons and *after* hearing intentional defamatory statements from that third party to then plot against Plaintiffs based on the intentionally false and defamatory statements made by Luis Pons at the end of her time in Panama.

99. Defendant *did not even* assert her outrageous and salacious lies, until *three years later* on December 13th, 2021, five months *after* she conspired with her good friend and after ex-girlfriend of Plaintiffs, Sage Humphries, brought forth her civil lawsuit against Plaintiffs on July 28th, 2021.

100.    For years, Juliet Doherty slandered and harassed Plaintiffs including by spreading malicious and defamatory rumors that Dusty and Taylor "kind of drugged her" and "raped" her, though rape was not even asserted in her own Nevada complaint.

101.    Juliet Doherty knowingly, willingly and maliciously harmed and defamed Plaintiffs including by stating that Plaintiffs had "pending criminal charges" against them and that Plaintiffs were "dangerous" people.

102.    Juliet Doherty knowingly, willingly and maliciously harmed and defamed Plaintiffs including by stating that Plaintiffs "kind of drugged her".

103.    Juliet Doherty knowingly, willingly and maliciously harmed and defamed Plaintiffs including by telling Ivan Sepulveda, (director of Panama Ballet Festival):

"*As I have discovered, during the end of my trip in Panama, both of the buttons have serious criminal charges pending against them. I do not want to be connected to them in anyway*".

104.    Ms. Doherty never stated to Mr. Sepulveda that she was drugged or assaulted by the Buttons nor did she state that she did not want to be

connected to them due to any reason other than she "discovered" that "both of the buttons have serious criminal charges pending against them".

105.    That "discovery" was from Luis Pons intentionally false and defamatory statements made to Juliet Doherty after speaking to Sage Humphries and her mother as proven through communications between them.

106.     This statement proves that Juliet Doherty not only maliciously and willingly defamed Plaintiffs by falsely stating there were "criminal charges" against them, (there were not and never have been) but that she, herself, did not file criminal charges against either Taylor or Dusty and further, intentionally harmed Plaintiffs by falsely stating some *other* criminal charges were pending against them.

107.    Juliet Doherty knowingly, willingly and intentionally defamed Plaintiffs including by telling Ivan Sepulveda, "*they are not good people*", "*for the reputation of your festival I don't think you want to be connected to them*" and "*you should detach from them in certain way so it doesn't get too messy*".

108.    Juliet coerced and convinced Ivan Sepulveda to terminate his relationship and disassociate from Plaintiffs by making intentionally false and defamatory statements to harm Plaintiffs and their reputations.

109.    Juliet Doherty was the direct cause of Ivan Sepulveda terminating his relationship with Plaintiffs including the termination of the previously planned business relations between Mr. Sepulveda and Plaintiffs.

110.    Additionally, Juliet Doherty knowingly, willingly and intentionally defamed Plaintiffs by stating to a third-party and son of Master Ballet Academy owner, Slawek Wozniak, "*remember they kind of drugged me so probably better to stay away from them*"; whereas Mr. Wozniak replied, "*kind of?*" and "*u are not sure?*".

111.    Mr. Wozniak's message was in response to a conversation had with Ms. Doherty about seeing Plaintiffs in Cancun for another festival where Plaintiff Dusty Button was invited to guest perform and teach.

112.    This message was not discovered until the discovery process in the Nevada litigation took place in 2022 and 2023.

113.    Plaintiffs have never purchased drugs and do not do drugs of any kind and especially would not have crossed international waters with drugs or purchased drugs in a foreign country, especially one in which they cannot communicate with the locals who would be responsible for selling those drugs nor did they have a mode of transportation in which to retrieve such "drugs".

114.    Juliet Doherty's allegations are so egregious as she intentionally harmed the reputation of Plaintiffs to cover up her behavior after over serving herself in Panama and acting out.

115.    Juliet Doherty knew that she was never drugged but rather that she drank too much on her own at dinner and then again at a pool party surrounded by other witnesses and instead made up a salacious and disgusting rumor that Plaintiffs drugged and sexually assaulted her in order to preserve her reputation after she aggressively pursued Plaintiffs.

116.    There have never been criminal charges against Plaintiffs, pending or otherwise.

117.    The reason Juliet Doherty created a narrative that did not exist, in conspiracy with Sage Humphries, to destroy the careers, reputations, livelihoods and business relations of Plaintiffs.

118.    Juliet Doherty's lawsuit against Plaintiffs names claims which were made three years after July 14th, 2018, (the end of the Panama trip), whereas, Juliet Doherty never stated she was a "victim" of Dusty or Taylor Button because she was not.

119.    Juliet Doherty intentionally harmed the reputation of Plaintiffs, placing the blame of her embarrassing actions on Plaintiffs, exploring her own sexuality as she had complete understanding of the Button's previous

relationship with Sage Humphries and attempted to become the "next Sage", ultimately being rejected on multiple occasions.

120.    The Buttons regret ever allowing Sage Humphries to infiltrate their marriage and manipulate them in 2017 and had no intention of ever allowing another to do the same again.

121.    Juliet Doherty knowingly, willingly and maliciously stated to Ivan Sepulveda that he should distance himself from his relationship with Plaintiffs and that he should not work with them, resulting in the termination of business relations including that her defamatory statements about Plaintiffs resulted in harming the reputation of Plaintiffs, lowering their professional reputation in the community and deterring third persons from associating or dealing with them including termination of any and all business, contracts or employment.

122.    Juliet Doherty knowingly and maliciously made her defamatory statements with no factual basis.

123.    In hindsight, Plaintiffs should have filed charges with law enforcement against Juliet Doherty the moment they returned from Panama for sexual harassment and sexual assault but unfortunately, they relinquished the thought assuming that Juliet was drunkenly battling demons of her own sexuality and due to the nature of her actions having

taken place outside of the United States of America, jurisdiction would be an issue.

124. Juliet Doherty's aggressive pursuit of Plaintiffs and sexual advances were intentionally calculated in conspiracy with Sage Humphries to manipulate and harass Plaintiffs including by making Plaintiffs feel so uncomfortable that they could not ever speak of Juliet's actions, as she acted as if nothing happened for the duration of the Panama trip.

125. Juliet Doherty continued to share the images and videos taken by Taylor Button in Panama on her social media even after leaving Panama on July 14th, 2018 with captions reflecting the "fun" she had while in Panama with the Buttons, Ivan Sepulveda and his son, Diego.

126. Following the trip in Panama, Juliet Doherty's mother and Defendant Krista King-Doherty, sent Plaintiffs a text message telling Plaintiffs she looked forward to seeing them again and thanked them for the photos and videos of Juliet's time in Panama, once again, and additionally thanked Plaintiffs for being so kind to Juliet and that she was thrilled they all finally met in person.

127. Plaintiffs never heard from Krista King-Doherty or Juliet Doherty again after about a week following their time in Panama but never thought

anything of it as they had only met and spent time with Juliet for a total of six days, three of which were occupied by rehearsals and performance matters.

128.    Plaintiffs have not spoken to Juliet Doherty or her mother since the summer of 2018 but have been harassed, defamed and severely harmed by the defamatory and false statements made by Defendants for years and leading up to Juliet's complaint filed in Nevada.

**B. Juliet Doherty's Frivolous and Malicious Complaint Filed in the Nevada District Court**

129.    On December 13th, 2021, Juliet Doherty filed a frivolous and fraudulent complaint against Plaintiffs in the Nevada District Court as the sixth litigant to join Sage Humphries' lawsuit against Plaintiffs.

130.    Juliet Doherty's allegations were maliciously and intentionally filed to harm the lives and careers of Plaintiffs including by willingly and knowingly making false and defamatory statements within her complaint.

131.    Ms. Doherty's complaint was already untrue in and of itself however, through the discovery process in Nevada, Plaintiffs further proved her complaint to be frivolous, fraudulent and malicious as even her defamatory complaint was inconsistent with the facts provided by way of documented video, photos and messages.

132.    First, Ms. Doherty titles her section of the complaint, "**The Buttons Drugged and Molested Juliet Doherty**".

- Juliet Doherty never stated to Mr. Sepulveda, Mr. Wozniak, Defendant Luis Pons or any other party prior to receiving communications from Defendant Luis Pons, that she was drugged or molested in Panama; in fact, Ms. Doherty states that she was "kind of" drugged and furthermore, never states she was molested, because she was not.

- Ms. Doherty told Mr. Sepulveda that Plaintiffs had "criminal charges pending" against them, but did not file any charges against Plaintiffs and instead, stated she did not want to be "connected" to the Buttons in anyway; not because the Buttons molested or drugged her, (they did not), but because she knowingly and falsely stated that criminal charges were pending against them by others, (which they were not).

- Ms. Doherty knew that her statements were false and defamatory, that they would harm Plaintiffs but made them anyway.

133.    Juliet Doherty states in her complaint, "The Buttons encouraged Juliet to share personal details about her life with them. Dusty told Juliet that she felt like Juliet's "big sister".

- The statements made in the particular set of allegations make no common sense as Plaintiffs only knew Juliet Doherty for a total of six days in Panama, three of which were occupied by rehearsal and performances pursuant of the Panama Ballet Festival.

- Plaintiff Dusty Button would have never referred to herself as a "big sister" to Ms. Doherty, who she had only met just three days prior.

134.    Juliet Doherty's complaint states, "At one point, the Buttons showed Juliet photos of a room full of guns that the Buttons had at their house".

- Plaintiffs have never shown Ms. Doherty a photo of a room full of guns at their home however, Plaintiffs posted multiple photos on their social media accounts prior to meeting Juliet Doherty which showed a display of airsoft toy prop guns which were previously used for advertising and marketing for various companies on social media.

- Juliet Doherty lied when she stated Plaintiffs specifically showed her a room "full of guns" as she conspired with Sage Humphries and her attorney, Sigrid McCawley, to mislead the media, the press, the public and any potential juror to believe Plaintiffs were using a photo of guns to intimidate her.

- Juliet Doherty's attorneys intentionally conspired with Ms. Doherty when filing her complaint as they were already in possession of over fifty receipts proving the "guns" were plastic toys which Plaintiffs already provided in 2017 to Sage Humphries and which Sage Humphries took photos with and posted on her social media, herself, years prior.

- Ms. Doherty knew that this specific allegation within her complaint was intentionally and knowingly false as she conspired with her attorney, Sigrid McCawley[3], to spontaneously state that Plaintiffs specifically showed her a photo of a "room of guns", in order to claim she was "intimidated" by Plaintiffs, mimicking the complaints of two

---

[3] Plaintiffs have already filed a federal lawsuit against Sigrid McCawley in the Southern District Court of Florida – 0:24-cv-60911

other Plaintiffs, Sage Humphries and Jane Doe 1 (who Plaintiffs have never met or heard of before in their entire lives).

- In 2017, Juliet Doherty's good friend, Sage Humphries', parents (who had been to Plaintiffs' apartment) called in a false 911 call to the Somerville Police Department in Massachusetts claiming Plaintiffs owned over fifty automatic assault weapons, hand grenades and land mines after they kidnapped their own daughter because they did not approve of her relationship with Plaintiffs and after Sage Humphries refused to end her relationship with Plaintiffs.

- Sage Humphries and her parents knew the "guns" were plastic toys as Ms. Humphries did a photo shoot with these plastic props as well as played with them on many occasions prior to and after she was present to witness Plaintiffs purchasing all of these plastic photography props and witnessed the arrival of these toys and which is documented in numerous videos and photos as well as by her own admissions in her deposition with Plaintiffs.

- Ms. Humphries was in possession of any and all receipts of these toys in 2017 and 2018 when falsely stating to law

COMPLAINT AND DEMAND FOR JURY TRIAL

enforcement and to the Court that Plaintiffs possessed over fifty automatic weapons and were selling them illegally in California.

- Ms. Humphries' attorneys conspired with Juliet Doherty to state she was shown a photo of a "room of guns" however, Plaintiffs never showed a photo to Ms. Doherty in the six days they were with her after just meeting her.

- Additionally, Jane Doe 1, (who Plaintiffs have never met or heard of in their entire lives), claimed in her complaint filed on September 23rd, 2021 that she was raped at gunpoint by Plaintiffs however, after three years, Plaintiffs have not only proven they have never met Jane Doe 1 but that her allegations are literally *impossible* including because she claims she was raped in a building that did not exist, one singular time in three different years and when Plaintiffs did not even own this collection of toy airsoft props used for marketing.

- Jane Doe 1 plagiarized Ms. Humphries' complaint after seeing the allegations on Instagram in a public announcement posted by Sage Humphries' best friend, Madison Breshears[4], who initiated

---

[4] Plaintiffs have already filed a federal lawsuit against Madison Breshears in the Southern District of New York – 1:24-cv-03757-MKV.

COMPLAINT AND DEMAND FOR JURY TRIAL

defamatory and false statements against Plaintiffs three months prior to the New York Times publishing Sage Humphries' allegations before Plaintiffs were even served.

135.    Juliet Doherty's complaint states, "The Buttons also emphasized their power in the dance world and spoke negatively about their enemies in the dance community" and "The Buttons suggested that they had the ability to negatively impact individuals' dance careers".

- These statements in their entirety come with no foundation whatsoever, whereas Plaintiffs did not have "enemies in the dance community" or suggest that they "had the ability to negatively impact individuals' dance careers" and Plaintiff Taylor Button was himself not involved in the dance industry in any capacity.

- Plaintiffs knew Juliet Doherty for only six days and the friendship which was somewhat created was in no way on the level in which Plaintiffs would confide in or speak to Juliet beyond surface level conversation.

- These exaggerated and blatantly false statements in her complaint are entirely and intentionally false.

136.    Ms. Doherty's complaint states, "One evening in Panama, Juliet and the Buttons went to the hotel pool. The Buttons made Juliet a drink".

- Juliet Doherty intentionally and maliciously left out that Ivan Sepulveda and his son, Diego were at the pool with Ms. Doherty and Plaintiffs and that Juliet was never alone with the Buttons at the pool.

- The Buttons did not make Juliet a drink as alcohol was provided at the pool whereas, Ms. Doherty made herself drinks on multiple occasions.

- Juliet overserved herself, including because she already had drinks prior to drinking at the pool and was noticeably "tipsy" before arriving at the pool.

- As stated *supra*, Juliet Doherty aggressively pursued Plaintiffs with her sexual advances that evening in the pool.

137.    Juliet Doherty stated in her complaint, "Juliet soon felt incapacitated and like she did not have control over her body. Juliet believes she was drugged by the Buttons."

- As previously stated, the Buttons did not "drug" Juliet.

- Juliet Doherty over served herself that evening and was drunk however, Juliet still had control of her body and continued to

aggressively pursue Plaintiffs sexually and without shame or embarrassment while doing so.

138.    Juliet Doherty stated in her complaint, "While in the pool, Dusty began rubbing Juliet's vagina without her consent. Dusty then penetrated Juliet with her hand."

- These disgusting and outrageous lies by Juliet Doherty caused Plaintiffs extreme distress as she maliciously and knowingly made defamatory and false allegations against Plaintiffs, in addition to the defamatory statements made *supra.*

- Juliet Doherty, (as depicted in numerous photos and videos of the night at the pool), harassed and aggressively pursued Plaintiffs in the pool that evening including continuously jumping on the backs of Plaintiffs and touching them inappropriately.

- It was Juliet Doherty that molested Plaintiff Dusty Button as she placed her hands on Dusty's chest while she was on her back, whispering "I think I like you", in her ear and continuing to touch Dusty inappropriately as Dusty continued to remove Juliet from her back.

- Juliet Doherty swam to Plaintiff Taylor Button on a number of occasions, aggressively touching him inappropriately under the water whereas, Taylor told Juliet to "stop", "this is not going to happen" and "this is unprofessional, Ivan and his son are watching you do this".

- Juliet Doherty made numerous statements to Plaintiffs as she made her sexual advances on Plaintiffs including, "c'mon, you know you want to".

139.    Juliet Doherty's complaint states, "Juliet felt overwhelmed and scared. Juliet attempted to escape the pool, but she lost control of her body and fell. This fall caused Juliet to suffer extensive bruises and scrapes on her leg".

- Juliet never "attempted to escape the pool", but instead followed Plaintiff Dusty Button up to her room and back down to the pool.

- Juliet never "lost control of her body and fell" and instead, walked out of the pool on her own stating she needed to use the restroom which was located outside, directly by the pool.

- As seen in photographs from the photoshoots following this evening, Juliet did not suffer extensive bruises or scrapes because she did not fall and her statements are lies.

140.   Juliet Doherty's complaint states, "Juliet then went to the hotel room. Juliet locked herself in the bathroom and continued vomiting. The Buttons repeatedly knocked on the bathroom door and told Juliet to let them in, but Juliet kept the door locked because she did not feel safe with the Buttons."

- Juliet did go to the hotel room as stated, *supra*, and the Buttons helped Ivan and his son Diego clean the pool area before heading back up to the room.

- Once the Buttons arrived back to their room, Juliet was in the bathroom, (allegedly showering, as the shower was on), but the Buttons did not "repeatedly knock and tell Juliet to let them in". Instead, Dusty knocked once to ask if Juliet was okay after vomiting at the pool restroom and when she heard nothing, she asked once more whereas, Juliet stated she was okay and "I think I drank too much".

- Dusty told Juliet to let them know if she needed anything and proceeded to get herself ready for bed.

141. Juliet Doherty's own complaint contradicts itself here as she states next, "Juliet then passed out on the bathroom floor. When Juliet woke up, she was in bed in a towel lying next to Dusty. Taylor was also present in the room with Juliet that night."

- Juliet states she locked herself in the room and passed out on the floor but her next statement would have required Plaintiffs to break into the bathroom and "retrieve" her and place her in the bed next to Dusty while Taylor was only "present in the room with Juliet that night".

- It is without question that Taylor was "present" as he, and his wife were letting Juliet stay in their room however, Juliet's fabrication of the entirety of the complaint makes no common sense, particularly the statements stated above.

142. On August 23rd, 2023, Plaintiffs deposed Sage Humphries who stated under oath that Juliet Doherty told her that she was "raped by both Plaintiffs" and that she "woke up naked and afraid"; the transcript is quoted below:

- Mr. Button: You claim that one of these victims was raped by us. Which one of these victims were raped by us?

- Sage Humphries: I don't' remember who I was specifically referring to in the 2018 affidavit.

- Mr. Button: So Someone professed a rape to you, and you don't recall that from the affidavit. You went on to state that you claim one of them had been drugged. Who was that?

- Sage Humphries: I'm sorry. To clear the record and since you have specified that, it was Juliet.

- Mr. Button: So Juliet claimed to you she had been raped?

- Sabina Mariella (counsel for Humphires): Objection. Mischaracterizes her testimony.

- Mr. Button: Okay. I'll rephrase. Did Juliet Doherty claim to you that she had been raped by one of us?

- Sage Humphries: By both of you.

- Mr. Button: Are you aware that Juliet herself didn't even claim that she had been raped in her complaint against us prior to dropping out of this litigation?

- Sage Humphries: I – repeat the question one more time, please. I'm sorry.

COMPLAINT AND DEMAND FOR JURY TRIAL

- Mr. Button: Are you aware that Juliet Doherty did not claim that she had been raped in her complaint prior to dropping out of this litigation?

- Sage Humphries: She told me that it was a awful situation and that she doesn't remember because she was drugged, but she woke up and was naked and afraid.

143.    Sage Humphries' deposition transcript proves that Juliet Doherty not only made defamatory remarks but that she continued to embellish her story from the time the actual events took place in Panama, to her text messages with third parties in 2018 and 2019 and finally to Sage Humphries, herself prior to Ms. Humphries' deposition in 2023.

144.    Juliet Doherty knowingly and willingly lied to the Court, the public and to various third parties on numerous occasions over the course of five years, continuously and maliciously embellishing allegations which did not take place to begin with, so that she would intentionally harm Plaintiffs.

145.    Juliet Doherty's complaint states "Juliet left Panama and returned to the U.S. later that day".

146.    This statement is entirely false as Juliet did not leave Panama that day, as shown by documented metadata, Juliet Doherty spent the

following days with Plaintiffs and with Ivan and his son, Diego, sightseeing and venturing around Panama.

147.    When Juliet Doherty did leave Panama, it was on July 14th, 2018 and she departed the hotel with Plaintiffs, as Ivan and his son drove them all to the airport that day.

148.    On the final day, as stated *supra*, Juliet Doherty asked if she could keep Dusty and Taylor's sweatsuit which was from their brand labeled "Button Brand" because she thought it was "so comfy".

149.    The Buttons let Juliet have the clothing and she wore it to the airport.

150.    As seen in the screenshot below, taken from a video on the final day just minutes before departing for the airport, Juliet Doherty states, "I'm so happy!".

151.    Juliet Doherty was never assaulted, drugged or intimidated by Plaintiffs and her fraudulent, frivolous and malicious complaint and defamatory statements ruined the livelihoods, careers, reputations and business relations of Plaintiffs.

152.    Juliet Doherty knew that her actions were false and fraudulent.

153.     Juliet Doherty made her defamatory statements with actual malice as she knew that nothing happened to her in Panama but she made her defamatory statements anyway.

154.     Juliet Doherty knew that in fact, she assaulted, harassed and abused Plaintiffs in Panama and that she acted recklessly while intoxicated on her own accord.

155.     Juliet Doherty has no cause of action against Plaintiff Taylor Button in her complaint in Nevada and instead only states causes of action against Dusty Button such as: Sex Trafficking, Forced Labor, Involuntary Servitude, Battery, Assault, Intentional Infliction of Emotional Distress and Breach of Fiduciary Duty.

156.     As if her false allegations were not already egregious enough, Ms. Doherty falsely and intentionally lied to the Court in her complaint in her 'Battery' cause of action portion by stating:

"Dusty intentionally attempted, threatened, and committed harmful and offensive contacts against Juliet, including but not limited to inflicting **juvenile sexual abuse** and physical abuse against Juliet"; (as seen below in a screenshot of the complaint):

**FORTY-SECOND CAUSE OF ACTION**

**ASSAULT**
*(Juliet Doherty Against Dusty Button)*

604.    Plaintiff Juliet Doherty incorporates each and every allegation contained above as though fully set forth herein.

605.    Dusty intentionally attempted, threatened, and committed harmful and offensive contacts against Juliet, including but not limited to inflicting juvenile sexual abuse and physical abuse against Juliet.

157.    First, the allegations are frivolous and false in their entirety.

158.    Second, Juliet Doherty was born on June 10th, 1997.

159.    Third, Plaintiffs were in Panama with Juliet Doherty from July 7th, 2018 until July 14th, 2018.

160.    Finally, Juliet Doherty's age at the time of the trip in Panama was twenty-one years of age which does not constitute the age of a juvenile even if the allegations were true, (they are not).

161.    This is the *modus operandi* of the Nevada litigation Plaintiffs and their attorneys from Boies Schiller & Flexner LLP, as the narrative of their complaint was "Two dance teachers abuse their minor students at gun point" while simultaneously comparing them to the disgraced couple, Ghislaine Maxwell and Jeffrey Epstein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

162.    Juliet is equitably estopped from asserting a statute of limitations defense as to Plaintiff Dusty's claims.

163.    Allowing Juliet to do so would be unjust.

164.    Juliet took active steps to prevent the Buttons from commencing this lawsuit before now, including by immediately slandering the good names of Plaintiffs in their respective industries and making salacious statements to third parties which put Plaintiffs in an uncomfortable position to address the assault which took place in Panama; as both Plaintiff Dusty Button and Defendant were very well-known in the dance industry and Plaintiffs believed that the assault against them would not be believed after such defamatory rumors were spread.

165.    Juliet is equitably estopped from asserting a statute of limitations defense as to Plaintiff Taylor's claims.

166.    Allowing Juliet to do so would be unjust.

167.    Juliet took active steps to prevent the Buttons from commencing this lawsuit before now, including by immediately slandering the good names of Plaintiffs in their respective industries and making salacious statements to third parties which put Plaintiffs in an uncomfortable position to address the assault which took place in Panama as her actions made it clear to Plaintiff Taylor Button that the assault against him would

not be believed after Plaintiffs' open relationship with Sage Humphries

and the defamatory statements which were made by Sage, her friends and

her family.

168.    Juliet's assaults on Plaintiffs caused severe anxiety, mental and

emotional distress and mental anguish.

169.    Plaintiffs continue to suffer mental anguish, severe emotional

distress, complete loss of income, damage to their reputations and careers

and the inability to generate any income as a direct and proximate result

of Juliet's sexual abuse against them and the defamatory statements made

following the trip to Panama.

170.    In 2019, Plaintiffs discovered that Juliet Doherty made further

defamatory statements to company members at Ballet West, a ballet

company in Arizona including stating that Plaintiffs drugged and raped

her in Panama in 2018.

171.    Juliet Doherty made these defamatory and false statements with

actual malice as she continued spread salacious rumors about Plaintiffs

within the dance industry to intentionally harm Plaintiffs and their

reputations.

172.    For years, Plaintiffs were made aware of rumors that surrounded

false and defamatory statements of this nature but until 2022 and 2023 did

not have evidence or documentation proving these defamatory statements came from Juliet Doherty, Krista King-Doherty, Luis Pons, the Humphries' family and various third parties who conspired with the forementioned names.

### C. Juliet Doherty's Withdrawal from the Nevada Litigation

173.    As stated *supra*, on December 13th, 2021, Juliet filed her frivolous complaint against Plaintiffs in the Nevada District Court.

174.    Over one year later, and on February 23rd, 2023, Plaintiffs issued and emailed their first set of requests for admissions to Juliet Doherty and her counsel, Sigrid McCawley, from Boies Schiller & Flexner LLP.

175.    On February 24th, 2023 at 7:19pm EST, Juliet Doherty voluntarily dismissed her claims against Plaintiffs.

176.    On the same day, Ms. Doherty filed to voluntarily dismiss her claims, she posted on her Instagram page (photo below):

"yep that's alright with me! [mailbox emoji]".



177.    Plaintiff Juliet Doherty alleged that she voluntarily dismissed her claims, "due to severe online harassment in retaliation for her claims", however, Ms. Doherty's public social media post on the day of her voluntary dismissal speaks volumes, both of which are dated February 24th, 2023. Plaintiffs never harassed Juliet Doherty online or otherwise.

178.    In fact, neither her or her attorneys from Boies Schiller & Flexner LLP ever provided any proof of such "harassment" which Juliet claimed caused her to withdraw her claims; this is because it does not exist.

179.    If Ms. Doherty was "harassed" online regarding her complaint or otherwise, Plaintiffs cannot control what others may say or do online in regard to their opinions of Ms. Doherty or her false and defamatory allegations against Plaintiffs as she presumably has committed these offenses against multiple other victims just as her friend and inspiration Sage Humphries had previous infiltrated multiple other marriages and had sexual partners of both genders in various states and even within her own employment.

180.    Plaintiffs have not had social media since December of 2021 as a direct and proximate result of the global media campaign waged against them in July of 2021, including that The New York Times publishing the complaint prior to Taylor Button ever being served or the Buttons ever being made aware there was a lawsuit against them and as a direct result of threats of physical violence, murder and thousands of examples of harassment that drove Plaintiffs to the edge of taking their own lives.

181.    Just as Ms. Doherty filed a false and frivolous complaint which caused severe defamation in the media, (resulting in harassment and death threats against Plaintiffs), Juliet's false statements citing the reason for her withdrawal were equally defamatory and resulted in harassment and defamatory statements made in the media, ultimately continuing

Plaintiffs' already destructed careers, reputations, livelihoods and any generation of income.

182.    Ms. Doherty knew that her statements were false and defamatory but made them anyway including because she intentionally made false and defamatory statements to once again, save her reputation as she fraudulently stated Plaintiffs harassed her, rather than replying to the admission Plaintiffs requested in discovery as she knew the discovery Plaintiffs already provided to her counsel disproved her false and malicious allegations.

183.    In fact, it was not Plaintiffs who harassed Juliet Doherty but rather, Juliet Doherty who defamed and slandered Plaintiffs to hundreds of third parties including Plaintiffs friends, coworkers, industry and business relations and sponsors of Plaintiffs including but not limited to the following screenshots below which were a direct result of Juliet Doherty's defamatory statements about Plaintiffs: (Possibly insert screenshots).

### D. Plaintiffs' Previous Relationship with Sage Humphries in 2017

184.    In 2012, Plaintiffs moved to Massachusetts as Dusty Button became a company member of the Boston Ballet.

185.    In 2014, Dusty was promoted to Boston Ballet's highest position in the company as Principal ballerina.

186.     In 2016, Sage Humphries, who was also a member of the Boston Ballet, introduced herself to Dusty Button at the Boston Ballet whereas, they became good friends.

187.     In 2017, Sage Humphries, (nearly twenty years old), infiltrated Plaintiffs' marriage, initiating a physical and sexual relationship with both Plaintiffs, ultimately forming an open dating relationship for about four months from May until July of 2017, thus making Plaintiffs one of dozens of unconventional relationships that Sage Humphries created in her pursuit of freeing herself from the confines of an overcontrolling family.

188.     Plaintiffs have never had interest, been involved in or interested in an open relationship prior to allowing Sage Humphries to infiltrate their marriage and would never again do so.

189.     In April, 2017, Plaintiffs were invited to Ms. Humphries' parents' home in California for Easter and to celebrate Plaintiff Taylor Button's birthday which is April 16th.

190.     On April 16th, 2017, Sage Humphries asked Plaintiffs if they wanted to sleep at her father's "law office" which doubled as a "beach house" in Seal Beach, CA – The Law Office of Michael Humphries.

191.     On April 16th, 2017, Sage Humphries stated she had a "surprise" for Taylor's birthday, whereas, she initiated a three-way sexual and

emotional relationship that evening as a proverbial birthday gift for Plaintiffs Taylor Button and Dusty Button, thus blurring the lines between friendship and relationship.

192.    On the morning of April 17th, 2017, Sage's father walked in on the three, nude together in bed, and while making unbroken eye contact simply reminded Sage Humphries of her dentist appointment that morning and left, later directing Plaintiffs where the best coffee place in town was and carried on for the rest of the trip as if nothing happened.

193.    Following the intimate interaction which took place on April 16th, 2017, Sage Humphries and Plaintiffs continued their relationship, ultimately labeling each other as "boyfriend" and "girlfriend" and spending most of their time together in a relationship as Sage Humphries asked Plaintiffs if she could stay at their apartment the majority of the time.

194.    Ms. Humphries' parents never addressed walking in on the three.

195.    Following the April trip to California, Micah Humphries initiated a "group text" with her daughter and Plaintiffs which was regularly used.

196.    In May of 2017, Ms. Humphries' parents again, invited Taylor Button to their home on two occasions while he was there for work, in which he obliged.

197.    At the end of April, 2017, Ms. Humphries' parents, (Micah and Michael Humphries), made it clear that they knew she was in a dating relationship with both Plaintiffs whereas, at first, Ms. Humphries' parents accepted the relationship, asking if she could move in with Plaintiffs stating they knew Sage's desire was to move in with them and wanted to make sure it was okay with Plaintiffs.

198.    In May of 2017, Micah Humphries visited Plaintiffs' home in Massachusetts, staying over for one night during her visit.

199.    In May of 2017, Sage's parents sent the summer itinerary they planned for her, giving her dates in which, she was allowed to make her own plans for the summer, though she was an adult, whereas, Sage Humphries made it clear that she already made plans with Plaintiffs to travel to Australia but would adjust her schedule to also fit in what her parents scheduled for her.

200.    Upon Sage Humphries' statements to her mother regarding her summer schedule, there was a complete turn of events, as Sage Humphries was insistent on being allowed to make her own decisions including the text message between Sage and her mother which stated the following:

• **Micah Humphries to Sage**: "They are not your masters. I don't know what control. I'm pretty sure this is a threesome and I'm completely weirded out by all of it. You've known them 3 months. I love you sage but this situation is destructive to you and not healthy."

• **Sage Humphries responded to her mother**: 1) "Dusty is texting you regarding what you said about her to dr k. 2) you are paranoid and sound crazy regarding this relationship.

• **Micah Humphries replied:** "It is weird Sage".

• **Sage Humphries replied**: 3) "this is my choice".

• **Micah Humphries**: "Sage".

• **Sage Humphries**: "my life my summer".

• **Micah Humphries**: "I love you with all my heart".

• **Sage Humphries**: "Nobody is controlling my life. You are the only person trying to do so"

201.    Following this argument between Sage and her mother, it was then made clear (in a turn of events), that her parents suddenly did not approve of her decision to be in an open dating relationship with Plaintiffs.

202.    On May 17th, 2017, Micah Humphries texted her daughter, warning her that if she did not end the relationship with Plaintiffs, she

would fly to Boston from California with her husband and forcibly remove Sage.

203.     Sage Humphries ignored her mother's message regarding coming to get her things and instead, continued her relationship with Plaintiffs as she expressed that was her desire.

204.     On May 22nd, 2017, to Plaintiffs' shock, Plaintiff Dusty Button's contract with the Boston Ballet was abruptly terminated for "just cause", with no explanation as to why she was terminated, banning Dusty and Taylor from the Boston Ballet building as well as the Boston Opera House where the performances were held and in fact, would not allow Dusty to collect her belongings from Boston Ballet.

205.     Dusty Button has never received a reason or cause for her termination from Boston Ballet nor was one named in the official documentation however, Plaintiffs now know, Micah and Michael Humphries conspired with Boston Ballet to prematurely terminate Dusty Button's very financially lucrative and prestigious contract.

206.     On May 24th, 2017, Sage Humphries' parents sent her a text that they were in Massachusetts, ordering her to attend dinner and falsifying that Ms. Humphries' grandfather was "dying". He was not.

207.    On May 25th, 2017, Sage Humphries, (who was an adult), went to dinner with Plaintiffs prior to her performance with Boston Ballet.

208.    Upon Sage Humphries arrival to the Boston Opera House, she was escorted out of the Opera House by Boston Ballet staff and forcibly removed by her own parents who were waiting at the Opera House.

209.    Sage Humphries called Plaintiffs screaming for help as she was forced by her parents into a taxi, through the airport and onto a plane, taken back to California to the Humphries' home to be "converted".

210.    Micah and Michael Humphries (admittedly) stripped their daughter of her drivers' license, cell phone and keys to prevent her from leaving their home or contacting Plaintiffs or any other third party for help as they forced her into therapy that they funded with her own money that they stole from her bank account without permission.

211.    On May 27th, 2017, Sage Humphries' parents sent a text message to Plaintiffs threatening them with restraining orders.



212.    Simultaneously, and unbeknownst to Ms. Humphries' parents, she

was using their phones to message Plaintiffs, which she pursued on her

own, begging Plaintiffs for help to, "come save her", "come get her" and

"need help", as seen below:



And btw .. dr Kesten knows Sage smokes weed. She helped her with that when she came back from New York and was a mess! — 7:10 AM

Sun, May 28, 12:48 PM

It's me — 12:48 PM

I don't know what to do — 12:49 PM

Going to Sacramento — 12:49 PM

Need help — 12:50 PM

I will try to call — 12:50 PM

At airport — 12:50 PM

Tay? — 12:51 PM

Dusty? — 12:52 PM

Hello — 12:59 PM

❤️ — 12:59 PM

😊 — 12:59 PM

🤔 — 12:59 PM

If you need, we are here for a call 😇 — 1:00 PM
Sent as Text Message

I love you both — 1:01 PM

Just know that — 1:02 PM

🔺 — 1:03 PM
Sent as Text Message

I have been put in therapy — 1:10 PM

Its crazy — 1:10 PM

I miss you — 1:10 PM

Are you being held against your will? Should we send help for you? — 1:11 PM
Sent as Text Message

Just respond and say you love me and I'll call later — 1:13 PM

We will always love you — 1:14 PM
Sent as Text Message



213.    On May 28th, 2017, Sage Humphries' father filed two false police

reports, one in California and one in Massachusetts.

214.    Sage Humphries tried to escape his home in California whereas, he

called the police for a family disturbance.

215.    Michael Humphries told the police his daughter's ex-boyfriend,

(Plaintiff Taylor Button), boarded a flight, was coming to kidnap her and

take her back to Boston, that Plaintiffs were going to harm Sage and her

family. Sage Humphries told the police that there was no validity to her

fathers' statements to the police and she felt safe, as seen below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22
23    216.    From June 1st until July 18th, 2017, Sage Humphries continued to

24    pursue Plaintiffs, (who were in Australia), via Snapchat using her younger

25    brothers' phone and at times, stranger's phones, begging Plaintiffs to

26    "save her" and to "come get [her]", that her parents were performing

27
28

exorcisms on her, had kidnapped her and she was being forced into therapy.

217.    Ms. Humphries hid her relationship and contact with Plaintiffs from her parents.

218.    In July of 2017, Ms. Humphries' parents gave her an ultimatum; to either end her dating relationship with Plaintiffs or she would lose everything she ever loved, including that they would not pay for her ticket to go back to Massachusetts to rejoin the Boston Ballet in August of 2017.

219.    On July 10th, 2017, Ms. Humphries warned Plaintiffs of her parents' ultimatum whereas, she additionally warned Plaintiffs that she would leave a fake breakup voicemail on their phones in order to make her parents believe she ended the relationship, allowing her to **go back to** Boston but insisted she wanted to continue the relationship when back in Boston; she just needed to "make her parents think she was ending it".

220.    On July 14th, 2017, Ms. Humphries contacted Plaintiffs and stated her parents were forcing her to see a lawyer, that she got really upset and left and stating to Plaintiffs that her parents were forcing her to sign restraining orders against Plaintiffs or they would not give her back her freedom.

221.    Sage Humphries did not fill out the restraining order application form, her parents did, forcing Sage Humphries to sign what they had written.

222.    This forgery has since been admitted by Sage Humphries per her deposition in September of 2023.

223.    On July 18th, 2017, Ms. Humphries succumbed to her parents' pressure when her parents admittedly messaged Plaintiffs from her account thus ending her relationship with Plaintiffs.

224.    On July 22nd, 2017, Sage Humphries' filed a false police report with the Orange County Police Department contradicting her prior statements to the police in May in order to have a record that she filed a report in preparation for her restraining order hearing.

225.    The police noted they had previously been called to her parents' home on numerous occasions for the same matter whereas, every report was unfounded as shown below:

| 12/17/2020 | | Orange County Sheriff Department | | | | | 11:21:18AM |
| | | **Call Detail Information Report** | | | | | |
| | | Call Number: 170722-0273 | | | | | |

| Call Number | 170722-0273 |

## Call Detail Information

| Call Number | Class | Taker | Pos | Call Owner | | Date - Time Received | Cat |
|---|---|---|---|---|---|---|---|
| 170722-0273 | C | CEValdivia | 12 | | | 07/22/2017 11:21:32 | 0 |

| Complaint | | | Ten Code | Priority | Disp Zone | IRA | How Received |
|---|---|---|---|---|---|---|---|
| 422R CRIMINAL THREATS REPORT | | | | 3 | NO | ROO1 | |

| Incident Location | | | Apt/Suite | Floor/Bldg | Incident City | | Grid |
|---|---|---|---|---|---|---|---|
| ███████ | | | | | RO | | 796H3 |

| Caller Name | | Patrol Zone | Telephone | | Tower ID | Jurisdiction | Tract |
|---|---|---|---|---|---|---|---|
| HUMPHRIES, SAGE | | 06 | 714-██████ | | - - | OCSD | RO |

| ☐ Images | ☐ Medical | ☐ Hazard | ☒ Previous | | ☐ DR Issued in Error | | |

| ALI Time | Call Rec'd | Xmit | Dispatch | Enroute | OnScene | Departed | Arrived | Comp | Unit |
|---|---|---|---|---|---|---|---|---|---|
| | 11:21:32 | 11:22:59 | 11:23:59 | 11:23:59 | 12:27:09 | | | 14:57:52 | 1a06 |

**Narrative**

[07/22/2017 14:57:52 : pos1 : HixsonC]
[Cleared with unit 1A06]

[07/22/2017 14:57:00 : MOB : 1a06]
OTHER DEPUTIES HAVE BEEN DISPATCHED TO THE HOUSE REFERENCE SIMILAR CALLS AND THE CALLS WERE
UNFOUNDED.

[07/22/2017 14:54:54 : MOB : 1a06]
INF STATES HER DAD ALLOWS HER TO USE THE PHONE BY PERMISSION ONLY, AND HAS SAVED ALL
COMMUNICATIONS ON TE PHONE. INF IS WILLINGLY COMMUNICATING WITH THEM ON HER BROTHERS PHONE
WHEN SHE DOES NOT HAVE HER DADS PHONE.

[07/22/2017 14:52:19 : MOB : 1a06]
WHEN SHE RETURNS TO BOSTON, SHE HAS BEEN IN CONSTANT COMMUNICATION WITH THE COUPLE WHILE HERE
IN ROSSMOOR. SHE ALLOWED ME TO VIEW HER TEXT MESSAGES WITH THEM AND THE MESSAGES WERE
INCONSISTANT WITH THE STATEMENTS SHE MADE IN THE INTERVIEW. THE INF IS 19, INPRESSIONABLE, AND WAS
ABLE TO WALK AWAY OR LEAVE THE RELATIONSHIP AT ANY TIME AND CHOSE TO STAY IN IT. TE CRIMES WERE
UNFOUNDED AND THE FATHER STATED THEY ARE IN THE PROCESS OF ATTEMPTING TO OBTAIN RESTRAINING
ORDERS IN BOSTON.

[07/22/2017 14:48:22 : MOB : 1a06]
FATHER STATED HE CONTACTED BOSTON PD A COUPLE OF MONTHS AGO TO RELAY THE INFORMATION AND THEY
ADVISED HIM WHEN THEIR DAUGHTER IS READY TO SPEAK WITH THEM, THEY WILL LOOK INTO IT. INF IS
RETURNING TO BOSTON IN A COUPLE OF WEEKS FOR WORK AND WAS PLANNING ON TELLING BOSTON PD ABOUT
THE RELATIONSHIP.

[07/22/2017 14:47:11 : MOB : 1a06]
THE 422 WAS UNFOUNDED BASED ON THE INTERVIEW. THE STATEMENTS MADE ON SNAPCHAT WERE
INTERPRETED AS SEXUAL IN NATURE AND NOT IMPLIED TO MEAN GREAT BODILY INJURY OR DEATH. THE SEXUAL
RELATIONS INCLUDED 'BONDAGE' TYPE ROLE PLAYING AND SHE BELIEVED THE STATEMENT WAS REFERENCE TO
'BONDAGE'.

[07/22/2017 14:45:38 : MOB : 1a06]
CONTACTED INF WHO STATED SHE S A BALLET DANCER IN BOSTON WHO BEFRIENDED A COUPLE ( MITCHELL
TAYLOR MOORE AND DUSTY RACHEL BUTTON) ASSOCIATED WITH THE DANCE COMPANY SHE WORKED FOR. SHE
WILLINGLY STAYED AT THERE APARTMENT MOST OF THE TIME, CONSENTED TO ENGAGING IN AN OPEN ROMANTIC
RELATIONSHIP WITH THEM, HAD CONSENSUAL INTIMATE RELATIONS WITH THEM FOR A FEW MONTHS. 261 WAS
UNFOUNDED BASED ON THE INTERVIEW.

Page 1 of 4

226.    Plaintiffs were never aware of these reports filed until 2022.

227.    On August 1st, 2017, Ms. Humphries filed her application for a

temporary restraining order against Plaintiffs in Boston, Massachusetts.

228.    On August 14th, 2017, Ms. Humphries was granted a one-year

restraining order against Plaintiffs.

229.    Sage Humphries perjured herself in Court that day and committed

fraud upon the Court to ensure her restraining order was granted.

230.    Sage Humphries omitted every police report in her hearing in order

to state she "filed" police reports against Plaintiffs but failed to bring the

actual reports proving all of her statements and her parents' statements to

the police were unfounded and that her statements in Court were

fraudulent.

231.    Sage Humphries has since been deposed, in 2023, whereas, she

admitted her restraining order was actually to prevent Plaintiffs from

"blackmailing" her, as she previously uploaded a camera roll from her

iPhone in 2017 to Plaintiffs hard drive upon request, in order to send her

old phone back when upgrading phones.

232.    The camera roll she uploaded in 2017 consisted of screenshotted

text messages in her camera roll between her and Daryl Katz, (owner of

the Edmonton Oilers hockey team and one of the wealthiest men in the

world), proving illegal sexual activities between the two, whereas, Daryl

Katz ordered her to open a Swiss bank account that he could access with UBS in order to send Sage Humphries money, in which he sent her at least $50,000.00 in exchange for sexual favors.

233.    Sage Humphries told Plaintiffs this relationship with Katz began when she was seventeen.

234.    Sage Humphries' father is an attorney, who abused his power by falsifying documents and forcing his daughter to sign them by way of threat and intimidation.

235.    Sage Humphries' father used his connections to ensure his daughter's restraining order was granted as the Judge refused to look at or accept any evidence against Sage Humphries or her parents provided by Plaintiffs that day when they requested their thousands of files be filed as exhibits.

236.    In 2018, on June 11th, Sage Humphries filed another false police report in Massachusetts against Plaintiffs, falsely stating Plaintiffs were selling illegal firearms in California.

237.    This report was unfounded by police as the allegations were false.

238.    On August 14th, 2018, the night before Ms. Humphries' restraining order renewal hearing, Sage Humphries filed another false police report in Massachusetts claiming Plaintiffs were using a third-party to stalk her.

239.    This report was unfounded by police as the allegations were false.

240.    On August 15th, 2018, the Court held an ex-parte hearing whereas, Plaintiffs were not aware of the hearing, nor were they present and Ms. Humphries was granted a permanent restraining order against Plaintiffs.

241.    Sage Humphries used the false statements she reported to police in Court but neglected to bring the actual reports which showed her allegations were all false and unfounded, which Plaintiffs were never aware of until 2022.

242.    As seen, *supra*, due to Sage Humphries' false allegations and inconsistencies in her story, at least on seven different occasions, law enforcement found her statements to be unfounded and inconsistent with the evidence of her consensual dating relationship with Plaintiffs.

243.    Given Defendant Juliet Doherty's actual knowledge of the relationship between Sage Humphries and Plaintiffs as well as her close personal and professional proximity to Sage Humphries, her repeated statements that Plaintiffs had pending criminal charges, were and are knowingly and entirely false and defamatory, made with actual malice and which destroyed Plaintiffs' business and any chance of recovering from the damage which was immediately done to their careers and reputations.

244.     The importance of Defendant's role prior to her own involvement in

Plaintiffs' lives in this destruction was to eliminate Plaintiffs' ability to

work, thus assuring that they would be incapable of funding a defense

against Sage Humphries' frivolous and malicious lawsuit filed against

Plaintiffs with the singular purpose of forcing Plaintiffs to destroy

evidence that federally incriminates Sage Humphries and one of the

wealthiest and most prominent men in the country, Daryl Katz, (owner of

the Edmonton Oilers NHL team), for illegal prostitution, which Sage

Humphries verified to be authentic through her own admissions, that her

mother did in fact sell herself through sexual acts and favors to Mr. Katz

for the sum of $50,000.

245.     While the reasons behind Juliet Doherty's defamation remain

entirely irrelevant, it remains that Defendant knew that her conspiracy

with Sage Humphries was set in motion as a scheme in order to destroy

Plaintiffs' reputations, careers and livelihoods prior to the onset of the

Nevada litigation as her allegations against Plaintiffs have always been

false and malicious in their entirety, and the defamatory statements made

in affiliation with those allegations.

246.     Juliet Doherty intentionally attacked innocent people, at the

pinnacle of their careers, while knowing they would be financially ruined

and incapable of defending against the defamation of a powerful and renowned attorney, backed by one of the most powerful firms in the country as Juliet became the seventh addition to the complaint, creating a "strength in numbers" scenario, only to later back out of her complaint prior to being required to be a part of the discovery process which would further prove her lies.

247.    Juliet Doherty was in possession of the evidence proving the aforementioned statements to be true in 2018 including that Plaintiffs have never had any "pending criminal charges" against them.

248.    The statements she made were intentional, willful and with actual malice as she slandered and defamed Plaintiffs to hundreds of third parties, knowing her statements would severely harm Plaintiffs by way of knowingly making defamatory statements which she knew to be false, including her own allegations within her complaint.

249.    Juliet Doherty, in concurrence with Defendants Krista King-Doherty, Luis Pons and various third parties, intentionally filed her complaint while simultaneously conspiring with Sage Humphries for *over three years*, filing frivolous and fraudulent allegations which in turn, provided the fuel to the fire of the Nevada litigation and the false and

defamatory statements made to the media, the press and the public including any potential juror.

### E. The Nevada District Court Matters Filed on July 28th, 2021

250.    On July 28th, 2021, Sage Humphries and Gina Menichino, (represented by Sigrid McCawley and associates from Boies Schiller & Flexner), filed a civil complaint against Plaintiff in this case, Taylor Button[5].

251.    Plaintiffs discovered through the headlining front-page publishing of The New York Times that this complaint was filed, *prior* to Plaintiff Taylor Button even being served.

252.    Plaintiff Dusty Button was *not named* as a Defendant in Ms. Humphries' and Ms. Menichino's complaint.

253.    Plaintiff Dusty Button has never met Gina Menichino.

254.    Ms. Menichino was once, a dance student at Centerstage Dance Academy where Plaintiff Taylor Button taught in 2009.

255.    Ms. Humphries was never mentored, nor was she a student of Taylor or Dusty Button's but was in fact, a coworker of Ms. Buttons and was, in 2017, in an open consensual dating relationship, (as an **adult**),

---

[5] See Nevada District Court Case: 2:21-cv-01412-ART-EJY

COMPLAINT AND DEMAND FOR JURY TRIAL

with both Plaintiffs, as verified through countless documents and Ms. Humphries' own deposition testimony and admissions.

256.    The allegations brought forth by Sage and Gina are false in their entirety however, these complaints prove Juliet Doherty's defamation further as her defamatory statements about Plaintiffs are not supported by the allegations *even if* the allegations were true, (they are not).

257.    On September 23rd, 2021, Plaintiffs were met with an amended complaint whereas, Ms. McCawley and her associates, (through proven discovery), recruited three more litigants; Plaintiff Taylor Button's ex-girlfriend from 2009, Danielle Gutierrez, another woman from the same dance studio in 2009, Rosie DeAngelo and a woman Plaintiffs have never met or heard of, known as Jane Doe 1 (formerly known as Jane Doe 100 ).[6]

258.    The allegations brought forth by all three litigants are false in their entirety however, these three complaints prove Juliet Doherty's defamation further as her defamatory statements about Plaintiffs are not supported by the allegations *even if* the allegations were true, (they are not).

---

[6] Sigrid McCawley originally filed Jane Doe 1 as Jane Doe 100 in order to lead the public to believe there were hundreds of victims, sensationalizing the complaint for the media. On February 2nd, 2023, the Court ordered Ms. McCawley to refer to Jane Doe 100 as Jane Doe 1.

259.     Plaintiff Dusty Button has never met any of the three litigants added to the amended complaint which include Danielle Gutierrez, Rosemarie DeAngelo and Jane Doe 1.

260.     In fact, Plaintiff Dusty Button **has never met or heard of Jane Doe 1** as Jane Doe 1 is a total stranger.

261.     In fact, Plaintiff Taylor Button **has never met or heard of Jane Doe 1** as Jane Doe 1 is a total stranger.

262.     Juliet Doherty *intentionally, maliciously and knowingly* created a further, false narrative which she portrayed to hundreds of thousands of third parties including but not limited to business associates of Plaintiffs, employers, sponsors, co-workers and the media, which were entirely and knowingly false and defamatory to gain shock value from the industries which Plaintiffs were well-known and loved in.

263.     On December 13th, 2021, Plaintiffs were **again**, met with an amended complaint; "The Second Amended Complaint", whereas two more litigants were added, Plaintiff Taylor Button's ex-girlfriend's best friend, Jane Doe 2[7] and **Defendant in this action**, Juliet Doherty.

---

[7] 7 Sigrid McCawley originally filed Jane Doe 2 as Jane Doe 200 in order to lead the public to believe there were hundreds of victims, sensationalizing the complaint for the media. On February 2nd, 2023, the Court ordered Ms. McCawley to refer to Jane Doe 200 as Jane Doe 2.

264.    The allegations brought forth by Jane Doe 2 are false in their

entirety *however,* her complaint proves Juliet Doherty's defamation

further as her defamatory statements about Plaintiffs are not supported by

Jane Doe 2's allegations *even if* the allegations in the complaint were true,

(they are not).

265.    Plaintiff Dusty Button has never met Jane Doe 2.

266.    As stated *supra*, Plaintiff Juliet Doherty voluntarily withdrew

herself from the litigation.

267.    This came directly after Taylor and Dusty Button proved her

allegations to be fraudulent, providing photo and video evidence to her

counsel and immediately following Plaintiffs' requested admissions.

268.    Prior to Juliet Doherty's complaint being filed, her defamatory

statements were embellished and exaggerated each time she spoke to or

wrote to a third party including that the allegations in her complaint are

*not even consistent* with the defamatory statements made prior to the

complaint being filed, causing Plaintiffs *extreme distress*.

269.    Due to Juliet Doherty's false and defamatory statements to

innumerable third parties, it led to further defamation on social media

including that various third parties published that Plaintiffs were going to

jail, were criminally charged and should stay away from children.

270.     In fact, Juliet's statements, in conspiracy with the six other litigants resulted in the following destructive and defamatory statements by the best friend of Sage Humphries and good friend of the other litigants, Madison Breshears, which were *intentionally* posted online three months prior to the Nevada litigation being filed and seven months prior to Juliet Doherty's complaint *strategically* being filed, to fuel the fire of the frivolous lawsuit and global media campaign waged against Plaintiffs.

271.     These defamatory and salacious rumors were posted to over half a million people on social media to gain traction for the article in the New York Times, which was published prior to Taylor or Dusty Button ever being served with a lawsuit.

272.     The statements below are just a fraction of what Plaintiffs endured due to Juliet Doherty's defamatory and harassing statements to third parties prior to filing her complaint.

1. On May 13th, 2017, Dusty received an initial attack of two false and defamatory public comments on her Instagram profile page in response to a video she posted of herself dancing from Defendant's personal Instagram account with the username, @mjbreshears[8] which stated the following:

---

[8] @mjbreshears is Defendant Madison Jane Breshears' personal Instagram account; Plaintiffs have already filed a Federal lawsuit against Madison Breshears – Case 1:24-cv-03757-MKV

"stop preying on young girls" and "feel like y'all should know she can't keep a ballet job bc she grooms young girls into sex acts with herself and her husband".



2. Plaintiffs did not know of, or recognize the username @mjbreshears as her account was private and Plaintiffs did not know at the time that Ms. Breshears was working "behind the scenes", conspiring with Sage Humphries and Juliet Doherty to defame, harass and destroy Plaintiffs' lives.

3. Within seconds of Plaintiffs blocking the account @mjbreshers, a separate and anonymous account with the username @Real_World_Ballerina posted the defamatory and despicable posts which led to the downfall and complete destruction of Plaintiffs' careers, businesses, reputations and livelihoods.

4. The account @Real_World_Ballerina, (which Plaintiffs discovered and confirmed in 2023, was owned and controlled by Madison Breshears), had nearly *twenty thousand* followers and had direct association with Juliet Doherty and her defamatory statements.

5. Nearly *twenty thousand* people had access to everything posted on the account, @Real_World_Ballerina, influencing those *twenty thousand* followers to repost and share the defamatory statements to *hundreds of thousands* of accounts and users on virtually every social media and communication platform, (i.e. Instagram, Facebook, Tik Tok, Snapchat, Reddit, text message, email communication, WhatsApp, and various other platforms).

6. Within *seconds* of Plaintiffs blocking and reporting, (what Plaintiffs now know to be Madison Breshears' personal account), the following false and defamatory statements were posted by on her anonymous yet, famous account, @Real_World_Ballerina:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## POST ONE

"PSA: DUSTY BUTTON IS A PREDATOR"



## POST TWO

"This keeps getting removed. And she blocked me. But if you follow Dusty Button, you should know she can't keep a ballet job because she grooms young girls to engage in sex acts with herself and her husband".

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**POST THREE**

"[toxic emoji], if u or someone u know has been victimized by dusty_button, u

aren't alone. She can't keep a ballet job because she grooms young dancers for

sex acts with herself and her husband. This will probably get removed, she has

managed to block and remove my other posts, but I hope at least someone can

see this [toxic emoji]".

real_world_ballerina 😷😷😷if u or
someone u know has been victimized by
dusty_button, u aren't alone. She can't
keep a ballet job because she grooms
young dancers for sex acts with herself
and her husband. This will probably get
removed, she has managed to block and
remove my other posts, but I hope at
least someone can see this. ☢️😷☢️

## POST FOUR

"I have friends who have personally been victimized, or known someone

victimized by @dusty_button. Don't give her a platform".



273.    The defamatory and disgusting statements posted above are just a fraction of the harassment and defamation Plaintiffs endured for years but are a direct result of Juliet Doherty's false, defamatory and slanderous statements made about Plaintiffs to various third parties from 2018-2021.

274.    Plaintiffs have *never* been charged with a crime, as none have been committed.

275.    Juliet Doherty knew that her statements to third parties regarding "pending criminal charges" against Plaintiffs were false in their entirety, but chose to make them anyway.

276.    Four of the women who filed complaints brought forth false allegations from 2008 and 2009, all four of which Plaintiff Dusty Button has never met or known; all four who are best friends from the same dance studio in Florida; three of which filed false police reports in 2018 at the same time, in conjunction with Sage Humphries' abuse prevention order being made permanent and Juliet Doherty's dance studio receiving an "anonymous" email with a copy of Sage Humphries' abuse prevention order granted in August of 2018.

277.    Juliet Doherty was in possession of Sage Humphries' abuse prevention order as Juliet and her mother conspired with Sage Humphries to begin an online harassment campaign against Plaintiffs, ending their

1
2
3
4
5

careers, reputations, livelihoods, good names and nearly their lives after

receiving many death threats due to the heinous and false allegations

against them, years prior to the onset of this litigation, (as previously

stated).

6
7
8
9
10
11
12

278.      Juliet Doherty and Krista-King Doherty's defamatory statements to

various third parties resulted in hundreds of thousands of comments online

including but not limited to the following screenshots of "hate pages"

against Plaintiffs; including because she falsely and egregiously claimed

"juvenile" sex abuse against Plaintiff Dusty Button.

13
14
15
16

- "Hey Dusty! I hope prison is everything you hope for! Maybe those tilts

   and competition tricks will come in handy behind bars?! Best of luck!" –

   Instagram user - @lauramarbs

17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT AND DEMAND FOR JURY TRIAL

- "@schonraker_foto him and the missus have been too busy BF'n[9] little

  girls to make social media posts it would appear" – Instagram user

  @the_mechanicalanimal.



- "Hi! According to a recent post by @real_world_ballerina, dusty button is

  a predator who is not someone people should be looking up to! Just

  spreading the word." – Instagram User - @cheryltanxr



---

[9] *BF'n – abbreviation for "butt fucking" but which means "sodomizing"; in this case, a female child.

COMPLAINT AND DEMAND FOR JURY TRIAL

- "#dustybutton You child rap1st[10] P#S[11]. You need to be thrown in a wood chipper." – Instagram User - @dunerooster

  - "Child rapist POS[12]. You need to be thrown in a wood chipper." – Instagram User - @dunerooster

  - 



279.   As another example, (as depicted by the screenshot below), following the initial post, numerous hate pages and accounts were created to bully, harass and threaten Plaintiffs as a direct result of Juliet Doherty's defamatory and slanderous remarks.

[10] Rap1st = rapist.
[11] P#S = Piece of shit.
[12] POS = piece of shit.

- Username – @dusty_button_hatepage



280.    This is just a *fraction* of the communications, notifications, threats

and harassment which Plaintiffs received following Defendants'

defamatory and slanderous remarks and frivolous complaint, all of which

Plaintiffs have documented and preserved for discovery.

281.    Juliet Doherty *knew* her false and defamatory narrative provided a

questionable foundation for the complaint filed but that it would

sensationalize and amplify any headline to follow thus fortifying that frivolous foundation.

282.    Defendants' statements were made out of *actual malice*, in an effort to ruin Plaintiffs' livelihood, career, reputations and overall ability to defend themselves against these false and defamatory allegations in the media prior to the onset of her clients' complaint being filed.

283.    In July of 2022, Plaintiffs Dusty and Taylor Button filed a Motion to Dismiss the Second Amended Complaint and filed their Counterclaim in Nevada, adding a third-party complaint against Sage Humphries' parents and three men whom Sage Humphries had illegal and inappropriate sexual relationships with, Daryl Katz[13] (billionaire and owner of the NHL team The Edmonton Oilers), Anthony Giovanni Deane (Sage Humphries' ex-boyfriend whom was more than two decades her senior) and Chase Finlay, (whom Sage dated whilst he was engaged to another woman, thus destroying their engagement and their relationship in its entirety).

284.    In August of 2022, after being physically and financially (legally) threatened by Daryl Katz and his hired convicted felon "fixer", Anthony

---

[13] https://edmontonjournal.com/news/local-news/oilers-owner-daryl-katz-and-ballet-dancer-both-deny-allegations-they-had-sexual-relationship - Edmonton Journal Article regarding Sage Humphries and Daryl Katz' relationship.

Pellicano[14], against Plaintiffs' demands, Plaintiffs attorney withdrew Daryl Katz (with a tolling agreement) and the other two men from the third-party complaint leaving only Sage Humphries' parents.

285.    Juliet Doherty had actual knowledge of Sage Humphries' relationship with Daryl Katz.

286.    Ms. Doherty and Ms. Humphries are equally intertwined in the dance and film industry with associates of Daryl Katz, which were prior to the onset of the Nevada litigation.

287.    Upon belief, Sage Humphries and Juliet Doherty both have connections in the dance and film industry related to Daryl Katz, his cousin Michael Gelmon, previous business partner Joel Silver, producer Steve Turnbull and most recently, producer and director, Nigel Lythgoe who has graced headlines through scandal of his own in recent months.

288.    During the course of Plaintiffs' relationship with Sage Humphries, Sage made it abundantly clear that she did not like Juliet Doherty as she stated Ms. Doherty was only cast for roles due to her networking in the industry and her connections but that she believed she deserved those roles over Ms. Doherty.

---

[14] https://variety.com/2022/film/news/anthony-pellicano-daryl-katz-marc-randazza-1235349929/ ; https://thenevadaindependent.com/article/pellicanos-presence-adds-a-new-twist-in-ballerina-sex-exploitation-litigation ; https://www.casino.org/news/mgm-wiretap-p-i-hired-to-disappear-billionaire-ballerina-sex-lawsuit/ ; articles regarding Daryl Katz hiring Anthony Pellicano to silence Plaintiffs Dusty and Taylor Button.

289.     Ms. Humphries and Ms. Doherty both previously worked with Nigel Lythgoe[15], director and producer of many dance shows including but not limited to *So You Think You Can Dance.*

290.     In 2014, Sage Humphries participated in a YouTube series titled, "*Dance School Diaries*" which was produced by Nigel Lythgoe through a dance channel with the name DanceOn whereas, Nigel Lythgoe is on the board of directors.

291.     Following Ms. Humphries' appearance in the YouTube series "*Dance School Diaries*", she was involved in the production and development of a film titled, "Tackling Romeo", which was produced by Steve Turnbull and additionally directed by Nigel Lythgoe whereas, upon belief, Mr. Lythogoe's production company was titled Faraway Films.

292.     According to Ms. Humphries, Juliet Doherty was a second choice for this film but she was "picked" over Ms. Doherty by Nigel Lythgoe.

293.     The film "Talking Romeo" never came to fruition and is, in fact, still listed as "under development".

294.     Upon Plaintiffs filing their Counterclaim in the Nevada District Court, alleging Mr. Katz paid Ms. Humphries over $50,000.00 for sexual favors, Mr. Katz and his attorney stated the money sent to Ms. Humphries

---

[15] See Superior Court of the State of California County of Los Angeles: 23STCV31886

COMPLAINT AND DEMAND FOR JURY TRIAL

was for a movie titled "Tackling Romeo", which they allege "she pitched" to Mr. Katz' and Joel Silver's production company, Silver Pictures.

295.    Mr. Katz' messages to Ms. Humphries insinuated no such payment was for "Tackling Romeo" and Mr. Katz' allegation that his payments to Ms. Humphries to an international account were for the production of the movie that never took place are ridiculous and untrue.

296.    Juliet Doherty knew of Ms. Humphries relationship with Mr. Katz and the production of the move "Tackling Romeo" whereas, she was not cast for the role ahead of Sage Humphries.

297.    In 2018, Juliet Doherty was featured in the film *High Strung Free Dance* alongside Nigel Lythgoe.

298.    Plaintiffs were threatened by Mr. Katz and his attorney including that Mr. Katz hired the infamous convicted felon Anthony Pellicano to silence them by way of death threats and other harassment including breaking and entering in an attempt to tap their phone lines, if they did not "drop their case" against Katz.

299.    As a direct cause and result of Ms. Humphries actions with Daryl Katz and Ms. Doherty's actual knowledge of the relationship between Sage Humphries and Daryl Katz and Plaintiffs discovering the inappropriate relations and illegal activities between the parties, upon

belief, Plaintiffs were put in a position to stay silent about their knowledge of the relationships.

300.    Defendant's had actual knowledge of the relationship between Sage Humphries and the other Plaintiffs therefore, her repeated statements that Plaintiffs had "pending charges" against them, that they were criminals, "dangerous" and "not good people", are *knowingly* and *entirely defamatory* statements made *with actual malice*, which destroyed Plaintiffs' business and any chance of recovering from the damage which was immediately done to their careers and reputations.

301.    The importance of Defendant's role in this destruction was to eliminate Plaintiffs' ability to work, thus assuring that they would be incapable of funding a defense against her frivolous and malicious lawsuit filed against Plaintiffs.

302.    In October of 2022, Plaintiffs lost their counsel due to the inability to continue funding their representation having already sold all of their assets to fund that representation up to that point.

303.    Since October 14th, 2022, Plaintiffs have been *pro se* against Sigrid McCawley, associates of Boies Schiller & Flexner, one of whom Plaintiffs have never met or heard of, (Jane Doe 1) but all of who have

admitted under oath that they were recruited by Humphries and her counsel and that their claims have no basis or grounds.

304.    On February 2nd, 2023, the Nevada District Court held an Oral Argument on several pending motions including Plaintiffs' Counterclaim against Sage Humphries, which included supplemental exhibits including text messages between Sage Humphries and her mother regarding her mother's disapproval of her daughter's consensual dating relationship with Taylor and Dusty Button in 2017 and a July 22nd, 2017 false police incident report filed by Sage Humphries' mother, countering Sage Humphries' allegations, in addition to the defamation claims against her.

305.    Sage Humphries filed to dismiss Dusty and Taylor Button's counterclaim against her whereas, the Court DENIED her motion to dismiss the counterclaim of *defamation per se*, further proving Ms. Humphries allegations to be fraudulent and that not only was Sigrid McCawley unethical by creating a narrative to cover up her clients' relationship with Plaintiffs but that Sigrid McCawley's unethical play to the media included a false, defamatory and malicious narrative created for the sole purpose to mislead the public and that her statements were knowingly and *intentionally* false and defamatory against Plaintiffs[16].

---

[16] On February 17th, 2023 Honorable Judge Traum entered an Order denying Sage Humphries' motion to dismiss Dusty and Taylor Button's defamation claim against her whereas the Court stated: "Based on the details herein

306.     On February 22nd, 2023, Plaintiffs filed a motion to vacate Sage Humphries' abuse prevention order which was granted in 2017, (which is currently pending appeal on the grounds of fraud on the Court), in Boston, MA.

307.     Plaintiffs' discovered evidence of fraud in the Nevada litigation proving Sage Humphries' fraud on the Court in 2017 and 2018 including false police reports and lying to law enforcement, which Plaintiffs were not aware of until the discovery of the Nevada litigation began but which she used to secure her abuse prevention order in 2017 and 2018.

308.     Juliet Doherty, Krista King-Doherty and Luis Pons were all aware of the information stated above, knew that Sage Humphries was not a child and were in possession of Sage Humphries' abuse prevention order.

309.     Defendants knew their statements regarding Sage Humphries' relationship with Plaintiffs were false and defamatory but made them anyway.

310.     On February 24th, 2023, Juliet Doherty voluntarily withdrew herself from the Nevada litigation.

---

and in lights of the record as a whole, the Court denies Sage Humphries' Motion to Dismiss the counterclaim of defamation per se."

COMPLAINT AND DEMAND FOR JURY TRIAL

311. On June 11th, 2023, Plaintiffs filed to appeal the decision to vacate Sage Humphries' restraining order on the grounds of fraud on the Court in light of new evidence.

312. Plaintiffs appeal is currently pending in the Massachusetts Appellate Court[17].

313. Juliet Doherty had actual knowledge of Sage Humphries' consensual dating relationship with Plaintiffs and in fact, had the restraining order in her possession from 2017 including that Ms. Humphries' order stated that she was not forced, threatened or under duress during the time of her relationship with Plaintiffs or during intimate relations with Plaintiffs which is entirely contradictory to Sage Humphries' allegations within her complaint.

314. Upon belief, Juliet Doherty conspired with Sage Humphries to withhold and keep Ms. Humphries' illegal activities with Daryl Katz a secret.

315. Juliet Doherty was in possession of the evidence proving the aforementioned statements to be true *over three years* prior to filing her own complaint and four years prior to making her own complaint against Plaintiffs.

---

[17] Docket number: 2023-P-1202 – Button v. Humphries- Massachusetts Appeals Court

*D. Krista King-Doherty's Defamatory Statements about Plaintiffs*

316.    Krista King-Doherty and her daughter Juliet have been eerily obsessed with Plaintiffs since *at least* 2017 whereas, Defendants have not only made inappropriately defamatory comments publicly and to innumerable third parties but to each other; proving the obsession with Plaintiffs' years prior to Juliet Doherty ever meeting Plaintiffs in 2018.

317.    For example, on February 12th, 2018, Juliet Doherty and her mother Krista exchanged conversation about Plaintiff Dusty Button and photos which were published in a magazine for Discount Dance, declaring their obsession with admissions that "seventy percent of [their] DMs are about Dusty".

318.    This conversation (as seen below) was provided through the discovery process in Nevada in or around 2023 was had five months prior to Juliet Doherty meeting Plaintiffs for the first time in Panama in July of 2018.

319.    The conversation provided below shows Juliet Doherty sending her mother a link to one of the Instagram photos posted by Discount Dance of Plaintiff Dusty Button, seemingly making fun of Plaintiffs hair and attire which was provided during the photo shoot.

320.    Following the initial post sent by Juliet Doherty, she then states to her mother, Krista, "70% of our DMs are about dusty I think", to which Krista replies, "Well it's entertaining".

321.    Plaintiff Dusty Button was shocked and repulsed to read that Juliet, like the six other litigants in Nevada, admittedly spent a vast majority of her time obsessing over her.



PL-0001472

COMPLAINT AND DEMAND FOR JURY TRIAL

## I.    BLOCH INC

322.    BLOCH INC. was one of Plaintiff Dusty Buttons largest sponsors in the dance industry, whereas Plaintiff was the face of BLOCH INC for many years and included a fifteen-year relationship from the time Plaintiff was sixteen years old.

323.    On or around July 28th, 2021, Defendant Krista King-Doherty took to social media to intentionally embarrass, harass and defame Plaintiffs.

324.    Defendants' comments were discovered after the forementioned date.

325.    Defendant Krista King-Doherty posted salacious and defamatory statements with *actual malice* publicly, to over half a million people to intentionally harm Plaintiffs and to embarrass Plaintiffs by leading the public to believe the disgusting and defamatory rumors Defendant so proudly boasted on the public page of one of Plaintiff Dusty Button's biggest sponsors and who held a fifteen-year relationship with Plaintiff.

326.    Defendant knew that her statements were false and had proof that her statements were false, but made her defamatory statements anyway.

327.    Defendant admits publicly that she conspired with third parties, including her daughter, Defendant Luis Pons and litigants in the Nevada

litigation to "warn" and "send copies of restraining orders", while calling Plaintiffs "predators".

328.    Defendant admits that she was in possession or had actual knowledge of the abuse prevention order obtained by Sage Humphries.

329.    The following false and defamatory statement was posted by Defendant Krista King-Doherty publicly, to a mass audience, with actual malice and which, as a direct result, destroyed Plaintiffs business relations with BLOCH INC.

• @misskristakingdoh stated "*Dear Bloch, You were contacted numerous times over the past several years and I know through the industry you were warned and sent copies of restraining orders etc. you chose to do nothing and give a huge platform to a predator and promote her as a role model. It's good that you are finally taking a stand after The NY Times article came out but you should be apologizing for possibility contributing to the access to victims of the last several years. Do better. Discount Dance Supply and Red Bull were also aware.*"

330.    This statement made by Krista King-Doherty was in conjunction and in conspiracy with Sage Humphries' mother Micah Humphries who posted simultaneously on the account @blochdanceusa and which stated:

- @micahhumphries stated "*While we appreciate your stand and support now .... Just up until a few days ago, You had dusty button on your Instagram account in one of your header pink circles. We had heard, over the last few years, that people had tried to reach out and warn you about her and her husbands deviant behavior, yet, you still chose to continue to give her a platform, not only a platform but opportunity and access to other dancers. I hope that your company will make better choices in the future.*"

331.    Micah Humphries indirectly exposes her involvement as well as Defendant Krista King-Doherty's involvement in terminating Plaintiff Dusty Button's relationship with BLOCH INC by stating, "we had heard, over the last few years, that people had tried to reach out and warn you about her and her husbands deviant behavior, yet, you still chose to continue to give her a platform".

332.    Plaintiffs already had correspondence with BLOCH INC in 2017 and again in 2018 regarding Ms. Humphries and Ms. Doherty's conspiracy whereas, BLOCH INC had a lengthy discussion with Plaintiffs regarding the abuse prevention order which was sent to them by anonymous third parties, later confirmed to be Defendants and affiliates of Defendants including but not limited to Sage Humphries' mother

whereas, Plaintiffs explained the entirety of their relationship with Sage

Humphries in detail, further providing photos, videos and text messages to

corroborate their explanation.

333.    Defendant knew that her statements were false and not only made

further defamatory statements to a mass audience but influenced a third

party and good friend, Kim Comelek, which Plaintiffs have never met or

previously heard of to make her own defamatory statements about

Plaintiffs on the same account, @blochdanceusa.

334.    The comment made by Kim Comelek states "*Then why haven't you

supported Dusty Button's victims since you've known about them since at

least 2018? You've known, completely ignored it, and continued to

endorse and promote her as a role model to girl and young women. You

should be embarrassed and issue an apology.*"

335.    Kim Comelek's defamatory statements are a direct result of Juliet

Doherty and Krista King-Doherty's conduct as this third party is not

affiliated to Plaintiffs or any such litigation involving Plaintiffs or

Defendants.

336.    Ms. Comelek's defamatory and false statements prove that

Defendants conspired, were responsible for the disassociation of sponsors,

third parties, employers and business relationships including the

termination of employment and contracts including because Ms.

Comelek's statement stems from Defendants' slander and defamation as

she states "why haven't you supported Dusty Button's victims since

you've known about them since at least 2018?".

337.    As stated, *supra*, Plaintiff Dusty Button has only ever met Juliet

Doherty and Sage Humphries, and no other party in the Nevada litigation

therefore Ms. Comelek further confirms the conspiracy of Juliet Doherty,

her mother and the Humphries as Ms. Comelek can only be referring to

Ms. Doherty or Ms. Humphries.

338.    Ms. Doherty intentionally influenced a third party to defame, harass

and embarrass Plaintiffs to a mass audience after knowing her own

daughter's allegations were false in their entirety, including that she was

not a juvenile.

339.    Further, Ms. Comelek states only "Dusty Button's victims" and

"since at least 2018".

340.    Both Plaintiffs met Juliet Doherty in 2018.

341.    Defendant Juliet Doherty alleged she was drugged by both

Plaintiffs in Nevada litigation but only states cause of action against

Plaintiff Dusty Button.

342.    Defendant Juliet Doherty alleged she was a juvenile but she was twenty-one at the time she first met Plaintiffs.

343.    Krista King-Doherty is directly responsible for recklessness and negligence of her own daughter's claims in addition to her own defamatory, false and malicious statements made online and to hundreds of third parties including in the state of New York.

344.    Krista King-Doherty is directly responsible for the termination and disassociation of BLOCH INC with Plaintiffs.

## II.    *Master Ballet Academy*

345.    Krista King-Doherty is directly responsible for the termination and disassociation of Plaintiffs' affiliation, contractual agreements and employment with Master Ballet Academy.

346.    Master Ballet Academy is a dance studio in Arizona whereas, Defendant was a former teacher for that studio.

347.    Defendant Juliet Doherty was a former student of Master Ballet Academy but NEVER a student of Plaintiff Dusty Button's as Juliet was a teacher herself when she and Dusty met.

348.    Defendants had *actual knowledge* of Sage Humphries' consensual, adult, dating relationship with Plaintiffs and in fact, had the restraining order in their possession and/or had actual knowledge of the contents

written on Sage Humphries' abuse prevention order from 2017 prior to

Juliet Doherty filing her frivolous complaint in Nevada.

349.    Defendants had actual knowledge that Sage Humphries was not a

child and that she, herself, admitted she ever forced, threatened or under

duress at any time during her dating relationship with Plaintiffs including

because it is written on the order that Defendants provided by mail and/or

email to all of Plaintiffs' sponsors, employers, business affiliates and

various other third parties including but not limited to Slawomir Wozniak,

owner of Master Ballet Academy.

350.    Sage Humphries' abuse prevention order from 2017 is shown

below whereas, Humphries' verifies that she was not threatened, forced or

under duress at the time she was in a relationship with Plaintiffs; this

abuse prevention order was in the possession of Defendants and was

additionally and specifically provided to innumerable sponsors, employers

and affiliates of Plaintiffs including but not limited to Master Ballet

Academy via email, resulting in the termination of Dusty Button's

affiliation and employment with Master Ballet Academy indefinitely.

**COMPLAINT FOR PROTECTION FROM ABUSE**
(G.L. c. 209A) Page 1 of 2

COURT USE ONLY – DOCKET NO. 1701 R0182

**TRIAL COURT OF MASSACHUSETTS**

☐ BOSTON MUNICIPAL COURT  ☐ DISTRICT COURT  ☐ PROBATE & FAMILY COURT  ☐ SUPERIOR COURT    DIVISION

Name of Plaintiff (person seeking protection): **Sage Humphries**

Name of Defendant (person accused of abuse): **Dusty Button**
445 Artisan Way #531
Somerville MA

Defendant's Alias, if any

Sex: ☐ M ☒ F

☒ I am 18 or older.
☐ I am under the age of 18, and

my _____ (relationship to Plaintiff)
has filed this complaint for me.
The Defendant is 18 or older.

To my knowledge, the Defendant possesses the following guns, ammunition, firearms identification card, and/or license to carry. **has over fifty guns at home**

Are there any prior or pending court actions in any state or country involving the Plaintiff and the Defendant for divorce, annulment, separate support, legal separation or abuse prevention? ☒ No ☐ Yes  If Yes, give Court, type of case, date, and (if available) docket no.

The Defendant and Plaintiff:
☐ are currently married to each other
☐ were formerly married to each other
☐ are not married but we are related to each other by blood or marriage; specifically, the Defendant is my

☐ are the parents of one or more children
☐ are not related but live in the same household
☒ were formerly members of the same household
☒ are or were in a dating or engagement relationship.

Does the Plaintiff have any children under the age of 18?
☒ No ☐ Yes
If Yes, the Plaintiff shall complete the appropriate parts of Page 2

On or about (dates) **March 2017 onward thru July 2017** I suffered abuse when the Defendant:
☒ attempted to cause me physical harm  ☒ placed me in fear of imminent serious physical harm
☒ caused me physical harm  ☐ caused me to engage in sexual relations by force, threat or duress

**THEREFORE, I ASK THE COURT:**
☒ 1. to order the Defendant to stop abusing me by harming, threatening or attempting to harm me physically, or placing me in fear of imminent serious physical harm, or by using force, threat or duress to make me engage in sexual relations.
☒ 2. to order the Defendant not to contact me, unless authorized to do so by the Court.
☒ 3a. to order the Defendant to leave and remain away from my residence: See Plaintiff Confidential Information Form. If this is an apartment building or other multiple family dwelling, check here ☒
☒ 3b. to order the Defendant to leave and remain away from my workplace: See Plaintiff Confidential Information Form.
☐ 3c. to order the Defendant to leave and remain away from my school: See Plaintiff Confidential Information Form.
☒ 4a. to order that my residential address not appear on the order.
☐ 4b. to order that my workplace address not appear on the order.
☐ 4c. to order that my school address not appear on the order.
☐ 5. to order the Defendant to pay me $_____ in compensation for the following losses suffered as a direct result of the abuse:

☐ 6. to order the Defendant, who has a legal obligation to do so, to pay temporary support to me.
☐ 7. to order the relief requested on Page 2 of this Complaint pertaining to my minor child or children.
☐ 8. to order the following:
☒ 9. to order the relief I have requested, except for temporary support for me and/or my child(ren) and for compensation for losses suffered, without advance notice to the Defendant because there is a substantial likelihood of immediate danger of abuse. I understand that if the Court issues such a temporary Order, the Court will schedule a hearing within 10 court business days to determine whether such a temporary Order should be continued, and I must appear in Court on that day if I wish the Order to be continued.

8/1/17   X _Sage Humphries_

PLAINTIFF'S SIGNATURE

This is a request for a civil order to protect the Plaintiff from future abuse. The actions of the Defendant may also constitute a crime subject to criminal penalties. For information about filing a criminal complaint, you can talk with the District Attorney's Office for the location where the alleged abuse occurred.

Please complete affidavit on reverse of this page

**COURT COPY**

351.    Slawomir Wozniak, (owner of Master Ballet Academy), sent

Plaintiffs an email on February 27th, 2023, confirming Sage Humphries'

abuse prevention order was "anonymously" emailed to him from an email

account Plaintiffs now know to be associated with Juliet Doherty, Sage

Humphries and third parties who are non-parties to the Nevada litigation; just two months following Ms. Doherty's trip to Panama.

352. As shown in the email provided, the "anonymous" party intentionally and specifically refers to "children" in the email and included copies of the abuse prevention order Sage Humphries obtained at nearly twenty years of age.

353. Defendants' mention of Plaintiff Dusty Button's work with children was entirely irrelevant to Plaintiffs' relationship with Sage Humphries years prior but the verbiage of the email planned to *intentionally harm* Plaintiffs and resulted in the termination of Plaintiff Dusty Button's relationship with Slawomir Wozniak and Master Ballet Academy as they intentionally stated that "children's safety is paramount".

- The email which was sent to Plaintiffs from Slawomir Wozniak is shown below and is just one example of the egregious false and defamatory statements made by Defendants and associated third parties as a result of Defendants' conduct:

354.    Upon the forementioned email being sent to Slawomir Wozniak

and as a direct result of Defendants' defamatory statements and conduct,

Plaintiff Dusty Button received an email stating they could no longer be

associated with Plaintiff Dusty Button and terminated her scheduled

teaching engagement at Master Ballet Academy.

•   The screenshot of the email received by Plaintiff Dusty Button from

Master Academy is shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



355.    Not by coincidence, the date of this email terminating Dusty

Button's contract and stating "it is in our best interest to make sure your

name is not associated with our event this year" is direct proof that

Defendants conspired with Sage Humphries to ensure Plaintiffs' careers,

reputations, business relations, employment and sponsorships were

destroyed.

356.    August 14th, 2018 is the precise date in which Sage Humphries received her permanent abuse prevention order at an ex-parte hearing by lying to the Court and withholding documents which proved she was lying whereas, Plaintiffs were not present to defend themselves and equally had no representation present.

357.    Defendants intentionally, willfully and maliciously harmed Plaintiffs including by manipulating the narrative to encourage any affiliate of Plaintiffs should be afraid of them.

358.    The forementioned statements and emails are just a fraction of what was sent to Master Ballet Academy and which ended the relationship between the studio, Slawomir Wozniak and Plaintiffs.

359.    Defendant Krista King-Doherty is directly responsible for creating a hate group on Facebook which was directed at Plaintiffs to encourage a mass audience on social media to defame, harass, threaten and disassociate from Plaintiffs.

360.    For example, one such defamatory statement made by Krista King-Doherty on Facebook states "100, and companies who have had information from credible people over and over choose to do NOTHING should also be accountable for not protecting children. Unacceptable and unforgivable!!!"

361.     Defendant Krista King-Doherty's defamatory statement **again,** intentionally refers to children, aligning with her daughter's false and perjured claim that 1) Dusty Button committed any abuse against her daughter and 2) that Juliet Doherty claimed she was a juvenile in her complaint.

362.     Defendant willfully and maliciously made this statement on a Facebook group specifically created to defame, harass and threaten Plaintiffs to a mass audience in order to intentionally harm Plaintiffs and destroy their reputations, careers, business relationships and livelihoods.

363.     As stated, *supra*, Defendant Krista King-Doherty has been affiliated with Youth America Grand Prix for many years including by conducting business with YAGP[18] in New York City.

364.     Defendant Krista King-Doherty intentionally, maliciously and willingly made defamatory and salacious statements to the owner of YAGP in conspiracy with various third-parties to intentionally destroy Plaintiff's business relationship with YAGP; which she did.

365.     Further, Krista King-Doherty, in conjunction with Micah Humphries, (Sage Humphries' mother), created an Instagram username to specifically and intentionally harass, defame and threaten Plainitffs.

---

[18] YAGP is the abbreviation for Youth America Grand Prix

366.     This account was titled, @WarriorMoms.

367.     Defendant intentionally and maliciously participated in making knowingly defamatory and false statements about Plaintiffs from the "anonymous" account to further harass Plaintiffs online, causing Plaintiffs severe emotional distress and terminating many of their business relationships through direct messages from this account.

### E.  Luis Pons' Defamatory Statements about Plaintiffs

368.     Upon belief, Luis Pons is still currently a dance photographer specializing in photography of young girls.

369.     At the time of the events described herein, Luis Pons was a very close friend of Juliet Doherty, her mother and Sage Humphries and her mother and was additionally their personal photographer, posting numerous photos of them on his personal dance photography account.

370.     Mr. Pons was known for making flirtatious and inappropriate comments to his "subjects" and was stated many times to Plaintiffs by various third parties after they photographed with him including but not limited to Juliet Doherty and Sage Humphries who made it clear to Plaintiffs on different occasions that they were uncomfortable with his communications with them.

371.    For example, Defendant Pons stated to Ms. Humphries on more than one occasion that he wanted to see her again; including when she was in a dating relationship with Plaintiffs.

372.    Once such message from Defendant Pons to Ms. Humphries stated, "I love Sage, so part of loving sage is letting her go for long periods of time. I've accepted it. Lol" which was in reference to him, a married man with child, having to let her go as she was in a loving relationship with Plaintiffs for a "period of time".

373.    Luis Pons previously reached out to Plaintiff Dusty Button through Instagram, asking to photograph her whereas, Dusty responded by stating that she did not do outside photoshoots with other photographers not associated with her employers or sponsors unless her husband was behind the camera.

374.    Mr. Pons was offended and immediately blocked Dusty from his account on Instagram.

375.    Plaintiff Dusty Button was not comfortable with how Mr. Pons' photographed or his reputation of inappropriate communication with his "subjects", which Dusty would later find out included Juliet Doherty and Sage Humphries.

376.    As admitted by Juliet Doherty, herself, at the end of her trip in Panama Defendant Luis Pons, (a much older man married with child and in a position of power over the young girls he considers to be his "subjects"), messaged Juliet, one of those subjects, on July 12th, 2018 and stated the following to Juliet Doherty:

"The buttons are very strange people. When you have time I can explain but they are dangerous people and I'm not joking at all. I know why she was kicked out of Boston ballet . Saying this with love of course , looking out for you"; Ms. Doherty replied by stating, "Would like to hear :)".

377.    Mr. Pons then stated, "Ok let me know when you have time" to which Juliet replied, "In Panama rn".

378.    Defendant Pons then followed that defamatory statement with another to Defendant Juliet Doherty by stating, "Highly manipulative and strange. Keep em at a distance . Crazy shit".

379.    The night Juliet Doherty stated her allegations took place had already passed and she was enjoying Panama with Plaintiffs, Ivan Sepulveda and his son, Diego.

380.    Ms. Doherty did not initially respond to Mr. Pons and his last message to her was at 7:11am; Mr. Pons then sent another unsolicited message to Juliet Doherty, this time sending her a photo of herself from

an Instagram and stating, "you're pretty, that's about it !!!!" thus constituting one of many of his inappropriate communications with a subject much younger in age than himself while disregarding the fact that he was married with child.

381.    Unbeknownst to Plaintiffs, there was a large conspiracy taking place against them.

382.    Plaintiffs later discovered that Mr. Pons made numerous false and defamatory statements about Plaintiffs to many of their employers, sponsors and business affiliates including but not limited to stating that Plaintiffs were going to jail, that they were rapists, that they were dangerous people and including that they should not be around children.

383.    Defendant Luis Pons *knew* that his statements were defamatory, malicious and false and chose to make them anyway.

384.    As a direct and proximate result of Mr. Pons' false and defamatory statements to Juliet Doherty and other third parties including but not limited to employers and sponsors of Plaintiffs, business relationships were terminated and Plaintiffs suffered unimaginable loss to their careers, reputations and overall livelihood.

385.    Mr. Pons made false and defamatory statements with actual malice and/or reckless disregard for the truth.

### *F. The Aftermath of Defendants' Defamatory Statements*

386.     Plaintiffs will **never mentally, spiritually, physically or financially recover** from Defendants' defamatory, malicious and egregious false allegations and statements made to the Court, the public, the media, the press, employers, sponsors and innumerable third-parties.

387.     Defendants *knew* the defamatory statements and false allegations would inflict severe harm and trauma upon Plaintiffs whereas, there would be no recovery from the false and defamatory statements made about Plaintiffs to a mass audience.

388.     The aftermath of Defendants' defamatory statements and false allegations were catastrophic; preventing Plaintiffs from being able to properly defend themselves in the media and even in their own litigation, including being prevented from taking action against Juliet Doherty prior to Ms. Doherty filing her frivolous complaint in Nevada.

389.     The impact of Defendants' false and defamatory statements to the media, the public and the press was **catastrophic** to Plaintiffs, their livelihood and their mental health.

390.     The defamatory statements made by Defendants resulted in loss of millions of dollars in revenue, assets and income, as Plaintiffs' businesses, good names and network of professional relationships were all destroyed.

391.    As seen, *supra,* Plaintiffs themselves, *were* their business, contracted by numerous private contractors which immediately ceased working with Plaintiffs following the defamatory global media campaign waged against them, including but not limited to contractors and sponsors who had employed and worked with Plaintiffs for *over fifteen years,* and who immediately disassociated themselves from Plaintiffs.

392.    Plaintiffs were sent death threats, threats of physical violence if they were to be seen in public and harassing messages, as hundreds of thousands of accounts reposted Defendants' defamatory and slanderous statements which were intentionally harmful to Plaintiffs.

393.    Plaintiffs were physically, forcibly and embarrassingly removed from public events and various restaurants and stores where their names and likenesses were recognized from the media that Defendants orchestrated.

394.    As a direct and proximate result of Defendants' conduct, Plaintiffs no longer work in their respective industries and have been completely unemployed since 2021 as Defendants destroyed any and all ability to work in the industries Plaintiffs worked their entire lives to be proficient in.

**G. Defendants' Destruction of Plaintiffs' Business, Goods and Services**

395.    As stated in the above references, Plaintiffs' names and likeness was their *only business*, which generated the entirety of their revenue, income and business, whereas Plaintiffs, themselves, and what they provided to their respective industries was solely based on what they provided as their name brands known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand and Bravado by Dusty Button.

396.    Plaintiffs' established business, goods and services were directly sourced and provided from their good names, talent, expertise and reputations, which were completely destroyed by Defendants, and their defamatory posts and remarks.

397.    As stated in the above referenced facts, Plaintiffs were highly respected, extremely well-known, leaders of the dance industry and the automotive industry, and reliant on their businesses which were well established for over fifteen years, as each Plaintiff was their own business in which they were hired based on their desired skill sets in their industries, which others could not offer.

398.    Plaintiffs had established business with signed negotiated contracts with three companies to manufacture and sell their dancewear line which was in its initial phase and well under way as Plaintiffs were beginning

the second wave of these partnerships when Defendants' defamatory statements derailed all operations.

399.    Plaintiffs lost any and all business immediately and for the foreseeable future as a direct result of Defendants' defamatory and slanderous statements against Plaintiffs resulting in injurious falsehood.

400.    Defendants made their statements with *actual malice* as they knew that Plaintiffs would suffer significant and irreparable financial harm.

401.    Defendants knew their statements were false and intentionally crippled Plaintiffs' business and ability to generate revenue and income as they maliciously and intentionally reached out to any and all sponsors, employers and coworkers of Plaintiffs to ensure the destruction of their reputations.

402.    Defendants knew their statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

403.    Defendants knew their statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Taylor Buttons' design work, custom automotive creations, sponsorships, commercial shoots, events, marketing, advertising and speaking engagements, all of which were destroyed as Plaintiff Taylor Button was his own goods and services, as his name and career was his brand and his business.

404.    Defendants intentionally, willfully and maliciously made defamatory statements to numerous media and press outlets which in turn, resulted in further defamation by hundreds of thousands of third parties on social media, in the press and other new outlets.

405.    Defendants' defamatory post spread like fuel-soaked wildfire throughout the dance industry and community, automotive industry and community and further, to dance and automotive forums including but not limited to Facebook, Reddit and TikTok and was widely spread via communications through various messaging platforms nationally and internationally.

406.    Defendants' defamatory remarks were not only spread in written form but were widely spread via word of mouth through the grapevine of the industries which Plaintiffs were so highly respected and prominent in.

407.    Defendants were the curator and creator defamatory remarks and posts in which she had complete control of, using her influence and abuse of power to reach millions of people to intentionally, willfully and maliciously defame Plaintiffs while knowingly inflicting intentional harm on Plaintiffs and their business and reputations.

408.    Defendants' defamatory posts and remarks to a mass media audience were intentionally dishonest and her defamatory remarks were stated for an improper motive with the intent to injure Plaintiffs without just cause or excuse.

409.    Defendants knew that, as a result of the defamatory statements, Plaintiffs would suffer financial harm and never be capable of generating revenue using their names again.

410.    Plaintiffs suffered complete loss of business and sales including that Plaintiffs income was solely based on a per performance basis whereas, Plaintiffs' income was generated upon completion of work as they were themselves, their business.

411.    For example, Plaintiff Dusty Button's teaching classes and performances were immediately canceled following Defendants' defamatory statements.

412.     As another example, Plaintiff Dusty Button immediately lost any and all business with all scheduled dance studios, summer intensive courses, and events which she was scheduled to guest teach and choreograph for, including scheduled guest performance appearances nationally and internationally as a direct result of Defendants' defamatory statements.

413.     As another example, Plaintiff Taylor Button immediately lost any and all business related to his brands including his business and brand "Button Built", with all scheduled events in the automotive industry including pre-planned design builds for clients and customers including prominent name brands which were sponsors of Plaintiff Taylor Button, all of whom canceled their builds and design concept work with Plaintiff for the foreseeable future.

414.     Further, Plaintiffs, both immediately lost any and all contracts with sponsors, endorsements and event appearances in their respective industries including but not limited to: BLOCH Inc., Tiger Friday, Capezio, Yumiko, MPG Sport, Fenti, Volcom, Discount Dance, RedBull, Adidas, WeWork,  Rotiform Wheels, Brixton Forged, Momo racing, Bride Racing, Nitto Tires, Toyo tires, Brembo, Ferrari Parts, Tial Concepts, Xona Rotor, Aviva Performance, Impressive Wraps, Inozetek,

Tubi Style, Vivid Motorsport, Voodoo Automotive, SEMA Auto Show, Crep Protect, Accuair Suspensions, Currie axels, Pelican LLC, Greyman Tactical, PRP seats, KMC wheels, RAM mounts, Metalcloak suspension and body components, THULE, Rebel Offroad, PPG paint, Morimoto LED lighting solutions, BAJA off-road lighting solutions, Powertank, Maxxtraxx, HP tuners, Emory Motorsports, SABELT and Illest, amongst many others not listed here.

415.    Plaintiffs not only lost their business "Button Brand", suffering the complete destruction of their self-made brand but were forced to refund customers for items sold due to the connection of the defamatory statements made by Defendants and the third parties who "grapevined" off of their defamatory statements in the media and the press.

416.    Plaintiffs completely lost and forfeited their brand, Button Brand due to the defamatory statements made by Defendants.

417.    Plaintiffs had a pre-planned, negotiated contract with dancewear company Tiger Friday whereas, Plaintiffs designed, licensed and would market the line of leotards and dancewear utilizing the Button name and brand to expand their already successful company and image.

418.    Plaintiffs' contract was immediately canceled as a direct result of Defendants' defamatory remarks.

419. Plaintiffs were not paid for work already completed as Tiger Friday continued to use Plaintiffs' already completed designs, due to the false and defamatory statements made by Defendants.

420. Plaintiffs' brand, Bravado by Dusty Button was a dancewear and leotard line for dancers in which Plaintiffs had previous negotiated contracts with sponsored third-party companies and distributors such as Discount Dance, Showstopper and GK Elite, as well as advertised and garnered sales of this line through their own website "bravadodancewear.com" and through Plaintiffs' former social media page on Instagram, @bravado_dancewear and Plaintiffs' personal social media account, @dusty_button.

421. Bravado by Dusty Button was sold at various dance events for distribution, whereas, sales and contracts were immediately terminated following $100,000.00 of partner investment and nearly a year of travel and planning as a direct result of Defendants' defamatory statements in the global media campaign waged against Plaintiffs.

422. Defendants' defamatory remarks forced the termination of Bravado by Dusty Button as all sales came to a halt and additionally, customers demanded refunds stating the brand was associated with "sexual predators", "perpetrators", "criminal behavior" and "rapists".

423.    Immediately following Defendants' defamatory statements in the media and the press, Plaintiffs' businesses, Button Brand, Button Built, and Bravado by Dusty Button were completely destroyed, losing hundreds of thousands of dollars in revenue and costs, which were already paid, promised and negotiated with third party companies and distributors.

424.    Any and all marketing for the above reference brands with associated accounts advertising those brands including all sales were terminated as a direct result of Defendants' false and defamatory posts and remarks.

425.    The seriousness of Defendants' defamatory statements proves a clear intention to cause damage to Plaintiffs.

426.    The nature and substance of Defendants' defamatory posts, remarks and actual knowledge that her statements were untrue prove that Defendants' actions were willful, intentional and malicious.

427.    Defendants' defamatory statements and the audience that the Defendant intended to, and did reach, proves without question, her intent to harm Plaintiffs' careers, businesses and reputations as the false statements were aimed *specifically* at Plaintiffs' colleagues, clients and target demographics through these defamatory statements in the global media campaign waged against Plaintiffs including but not limited to

published defamatory statements in The New York Times, Cosmopolitan, The Boston Globe, ABC News, The Daily Mail and other mass media outlets including the press and nearly every major news outlet and social media account that were otherwise outside of Plaintiffs' industries.

428.    Defendants' defamatory statements caused the *entire* dance industry to not only turn against Plaintiff Dusty Button, (who had worked her entire life to build the reputation she was known for in her industry and was at the pinnacle of her career), but caused the industry to disassociate from Dusty, repost the defamatory statements and cease all communication with her, including halting any and all forms of employment for which she had been in extremely high demand for, for over fifteen years.

429.    Defendants' defamatory statements caused the *entire* automotive industry to not only turn against Plaintiff Taylor Button, (who had worked over thirteen years to build the reputation of the idol he was and that he was known for in his industry and was at the pinnacle of his career), but caused the industry to disassociate from Taylor, repost the defamatory statements and cease all communication with him, including halting any and all forms of employment for which he had been in extremely high demand for, for over thirteen years.

430.    The defamatory remarks and posts made by Defendants ignited a viral response which spread like wildfire, resulting in a 'grapevine' effect throughout Plaintiffs' industries including to their co-workers, clients, employers, potential employers, parents and children of those Dusty taught in the dance industry, sponsors, potential sponsors, friends and family involved in the industries, customers, former employers, agencies, dance studio owners and other various third parties whereas, Plaintiffs could not defend themselves against such widespread industry gossip.

431.    Defendants specifically targeted Plaintiffs in making false and defamatory statements, as they were influential and informative people in their industries in which the Defendants spread false statements further than it would seem at first blush.

432.    Plaintiffs were completely prevented from defending themselves to all third parties as Defendants' defamatory statements were so immediately viral and out of control, that Plaintiffs could not control or manage the effects of Defendants' false, defamatory and malicious statements.

433.    As a direct cause of Defendants' false and defamatory statements and global media campaign waged against Plaintiffs, Plaintiffs have been unable to even have a ringtone, vibration or sound on their phones when

notifications or calls come in, due to the influx of notifications, messages, harassment, death threats, unwanted threatening calls and the overwhelming immediate responses to Defendants' posts, comments and reposts whereas, Plaintiffs even had to take turns watching for notifications on each other's phones to even sleep just one hour as the harassing, threatening and defamatory remarks continued for months on end.

434.    To this day, Plaintiffs keep their phones on silent as it results in severe trauma and PTSD as a direct result of Defendants' defamatory statements and the global media campaign waged against them.

435.    As previously stated herein, Plaintiffs' business, was their names and likeness as they were individually contracted due to their reputations of who they were as a business and as their names were their brands.

436.    Plaintiffs were well-known and prominent figures in their industries and therefore, were contracted, employed and in high-demand because of their names and reputations, as they, themselves were their businesses for over fifteen years.

437.    Plaintiffs' reputations, *prior* to Defendants' defamatory statements in her global media campaign waged against Plaintiffs and the slaughter of Plaintiffs' good names, was impeccable in both their respective

industries whereas, Plaintiffs were well-liked, well-respected and in high demand due to their expertise in their industries, which others could not offer.

438.    Defendants have never made any attempt to rectify the false and malicious statements even after Plaintiffs have proven their statements to be defamatory, false, misleading and intentionally harmful, including in litigation.

439.    The shock and confusion resulting from the defamatory statements, coupled with Defendants' abuse of power and influence resulted in intense threats, harassment, and severe bullying including the use of Defendants' fame as a well-known dancer to intimidate and silence Plaintiffs while in litigation against her, led Plaintiffs to believe recourse would be an impossibility against her.

440.    Plaintiffs were so traumatized by Defendants' actions that they both suffered from suicidal thoughts, nearly taking their own lives as a direct result of the defamatory statements made by Defendants' and the global media campaign waged against them however, they have since championed those dark thoughts without the help of the therapy they are unable to afford due to the destruction of their careers through Defendants' defamatory conduct.

441.    Defendants took affirmative steps to ensure Plaintiffs were without the ability to seek recourse against them until now with the intentional harm they inflicted on Plaintiffs by way of forcing them to be unemployed with no ability to generate income, releasing them of any responsibility as they knew it was a possibility for their statutes of limitation to expire before Plaintiffs could take action against them.

442.    Defendants defamatory campaign against Plaintiffs was directly responsible for hundreds of death threats and a hired convicted felon that was paid nearly $100,000.00 to force Plaintiffs to destroy evidence that Defendant's defamation was meant to conceal; a felon who broke into Plaintiffs' home and thus rendered them in fear of their lives.

443.    Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

444.    Defendants' actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

445.    Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

446.    Allowing Defendants to do so would be unjust.

447.    Defendants took active steps to prevent Dusty and Taylor from commencing this lawsuit before now, including by destroying Plaintiffs'

inability to work after the onset of their defamatory global media campaign against Plaintiffs began and by using tactical intimidation by way of using their power and influence in the dance community to suppress and silence Plaintiffs from defending against her false and defamatory posts and remarks through litigation.

448.    Plaintiffs received additional discovery regarding Defendants' defamatory and false statements to third parties during the course of discovery in Nevada whereas, Plaintiffs were not aware of such communications and defamatory statements until the years 2022 and 2023 including but not limited to communications proving Defendants conspired in the years 2017-2021 to ensure Plaintiffs' reputations, careers, business relationships and livelihoods were destroyed.

449.    Plaintiffs have suffered and continue to suffer mental anguish, severe emotional distress and loss of enjoyment of life as a direct and proximate result of Defendants' defamatory and malicious statements.

450.    Had Plaintiffs succumbed to the darkness that Defendants cast over their lives, businesses, families and futures, this litigation would be criminal rather than civil as they are responsible the fraudulent actions that nearly ended two lives that were once the brightest lights of their careers for millions of people abroad.

## CAUSES OF ACTION

## COUNT I – BATTERY

### *Plaintiffs against Juliet Doherty*

451.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 450, *supra*, as if set forth herein.

452.    Juliet intended to commit and committed acts of unwanted contact with Dusty and Taylor.

453.    Juliet committed unwanted contacted contact with Plaintiffs in a harmful and offensive manner, including but not limited to by inflicting sexual abuse against Plaintiffs.

454.    Among other batteries, Juliet sexually abused Plaintiffs without their consent.

455.    Juliet used physical force to commit batteries against Plaintiffs.

456.    Juliet exploited her position of power to intimidate, overwhelm, and subdue Plaintiffs.

457.    Juliet abused her position of power over Plaintiffs by means of a scheme, plan, or pattern intended to cause Plaintiffs harm including but not limited to Juliet's conspiracy to repeat the relationship her good friend Sage Humphries once had with Plaintiffs by attempting to initiate a three-way relationship.

458.     Juliet's batteries on Plaintiffs caused severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

459.     Juliet's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiffs' rights.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Juliet Doherty for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT II

## ASSAULT

### *Plaintiffs against Juliet Doherty*

460.     Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 450, *supra*, as if set forth herein.

461.     Juliet intentionally attempted, threatened, and committed harmful and offensive contacts against Plaintiffs, including but not limited to inflicting sexual abuse and physical abuse against Plaintiffs.

462.     Juliet's conduct places Plaintiffs in a reasonable apprehension of bodily harm.

463.     Juliet's assaults on Plaintiffs caused severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

464.    Juliet's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference on Plaintiffs' rights.

465.    Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

466.    Defendant's actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

467.    Defendant is equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

468.    Allowing Defendant to do so would be unjust.

469.    WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Juliet Doherty for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## **COUNT III**

## **BREACH OF FIUCIARY DUTY**

### *Plaintiffs against Juliet Doherty*

470.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 450, *supra*, as if set forth herein.

471.    Juliet and Plaintiff's relationship was confidential and fiduciary in nature.

472.    Plaintiffs in fact placed trust, confidence, and reliance on Juliet.

473.    Juliet owed Plaintiffs fiduciary duties.

474.    Juliet breached her fiduciary duties, including but not limited to by inflicting sexual abuse against Plaintiffs.

475.    Juliet's conduct proximately caused Plaintiffs to suffer severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

476.    Juliet's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiffs' rights.

477.    Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

478.    Defendant's actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

479.    Defendant is equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

480.    Allowing Defendant to do so would be unjust.

481.     WHEREFORE, Plaintiffs Dusty and Taylor Button demand

judgment against Defendant Juliet Doherty for damages, punitive

damages, court costs, and such other relief as the Court deems just and

proper.

## COUNT IV

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

### *Plaintiffs against Juliet Doherty, Krista King-Doherty and Luis Pons*

482.     Plaintiffs repeat and reallege the allegations contained within

paragraphs 1 through 450, *supra*, as if set forth herein.

483.     Plaintiffs were an established brand in and of themselves who did

business nationally and internationally, providing services to employers,

sponsors, agencies and various other third parties, and had developed an

excellent reputation in the dance and automotive industries.

484.     Furthermore, since July 14th, 2018, Plaintiffs have worked for

various employers including but not limited to Panama Ballet Festival as

well as other entities which are either affiliated with, associated with, or

under the control or ownership of the same principals who own and

control Panama Ballet Festival.

485.    Since July 14th, 2018, Plaintiffs have worked for various employers including but not limited to other entities which are either affiliated with, associated with Master Ballet Academy.

486.    Since July 14th, 2018, Plaintiffs have worked for various employers including but not limited to BellaMoxi Dance as well as other entities which are either affiliated with, associated with, or under the control or ownership of the same principals who own and control BellaMoxi Dance.

487.    Since July 14th, 2018, Plaintiffs have worked for various employers including but not limited to Discount Dance as well as other entities which are either affiliated with, associated with, or under the control or ownership of the same principals who own and control Discount Dance.

488.    Since July 14th, 2018, Plaintiffs have worked for various employers including but not limited to BLOCH INC as well as other entities which are either affiliated with, associated with, or under the control or ownership of the same principals who own and control BLOCH INC.

489.    Upon information and belief, Plaintiff Dusty Button was referred to Panama Ballet Festival because, in part, of her excellent reputation. Due to the continuing and developing relationship with Panama Ballet Festival and affiliated entities, Dusty Button had developed business which generated revenue for services provided.

490.     Upon information and belief, Plaintiff Dusty Button was referred to Master Ballet Academy because, in part, of her excellent reputation. Due to the continuing and developing relationship with Master Ballet Academy and affiliated entities, Dusty Button had developed business which generated revenue for services provided.

491.     Upon information and belief, Plaintiff Dusty Button was referred to BellaMoxi Dance because, in part, of her excellent reputation. Due to the continuing and developing relationship with BellaMoxi Dance and affiliated entities, Dusty Button had developed business which generated revenue for services provided.

492.     Upon information and belief, Plaintiff Dusty Button was referred to Discount Dance because, in part, of her excellent reputation. Due to the continuing and developing relationship with Discount Dance and affiliated entities, Dusty Button had developed business which generated revenue for services provided.

493.     Plaintiff Dusty Button has had a long-standing relationship with BLOCH INC from the age of sixteen years old and upon belief, was initially referred to BLOCH INC because, in part, of her excellent reputation. Due to the continuing and developing relationship with

BLOCH INC and affiliated entities, Dusty Button had developed business which generated revenue for services provided.

494.    At some time, (and at different times) in 2018, and through the year 2021, Panama Ballet Festival, Master Ballet Academy, BellaMoxi Dance and Discount Dance, (among other sponsors and/or employers), became hesitant and or reluctant to use Plaintiffs' services due to Defendants' conduct.

495.    At or about this same time, the forementioned companies revealed that their hesitancy to work with Plaintiffs stemmed from the false and defamatory statements they were receiving from Defendant Juliet Doherty, her mother, Krista King-Doherty and Luis Pons amongst others not a party to this action.

496.    Plaintiffs then learned that Defendants had made disparaging and false remarks about Plaintiffs including false and defamatory rumors regarding criminal activity and "pending charges" which never occurred, their integrity, and professionalism to the forementioned companies and that Defendants had encouraged and assisted them in the termination of Plaintiffs' contracts and business relations.

497.    The forementioned companies and the related entities then terminated their relationships with Plaintiffs.

498.    Defendants acted intentionally and maliciously in interfering with Plaintiffs' relationship with the forementioned companies and its affiliates.

499.    The foregoing actions on the part of Defendants constitute an unlawful interference with contractual relations between the forementioned companies:

(A) there was a contractual relationship between Plaintiffs and the forementioned companies.

(B) Defendants clearly knew of Plaintiffs' contractual relationships with the forementioned companies.

(C) Defendants wrongfully interfered with Plaintiffs contractual relations;

(D)    Defendants' interference is the reason for the loss of ABCOs contractual relationship with the forementioned companies; and

(E) as a result of Defendants' actions, Plaintiffs have been severely and irreparably damaged.

500.    Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

501.    Defendants' actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

502.    Defendant is equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

503.    Allowing Defendant to do so would be unjust.

504.    Plaintiffs were not aware of Defendants' actions prior to 2021 until the discovery process in Nevada began whereas, Plaintiffs received discovery proving the forementioned statements to be true in and around the end of the year 2022 and in 2023 prior to and following Juliet Doherty's withdrawal from the Nevada litigation on February 24th, 2023.

505.    WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT V

## MALICIOUS PROSECUTION

### *Plaintiffs against Juliet Doherty*

506.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 450, *supra*, as if set forth herein.

507.    Juliet Doherty was actively involved in bringing and continuing a frivolous lawsuit against Plaintiffs with false allegations of sexual abuse, false allegations of abuse against a minor, (which she was not), false allegations of forced labor, involuntary servitude, assault, battery and

breach of fiduciary duty, sex trafficking, false imprisonment and intentional infliction of emotional distress whereas, Juliet knew that her allegations were frivolous, false, defamatory and would bring harm upon Plaintiffs.

508.    Juliet Doherty voluntarily dismissed her complaint against Plaintiffs on February 24th, 2023 citing false and defamatory reasoning for withdrawing her claims such as "online harassment", none of which took place and whereas, Juliet Doherty withdrew immediately, and the day following Plaintiffs' request for admissions.

509.    No reasonable person in Juliet Doherty's circumstances would have believed that there were reasonable grounds to bring the lawsuit against Plaintiffs including because in addition to Juliet Doherty's allegations being frivolous and malicious, the events which actually took place are described herein, as seen *supra*; and because Juliet Doherty conspired with Sage Humphries and her mother, Luis Pons and Krista King-Doherty to file a frivolous complaint against Plaintiffs three years after falsely stating there were "pending criminal charges" against Plaintiffs and that she did not want to be associated with them in any way because of those charges, not because of her own false and made up narrative stated in her complaint, which was never previously stated.

510.     Juliet Doherty acted primarily for a purpose other than succeeding on the merits of the claims in her complaint whereas, when Plaintiffs provided evidence that her allegations were entirely frivolous and malicious, Juliet withdrew her complaint and then lied to the Court regarding the reason behind her withdrawal to further defame Plaintiffs, as the media covered her withdrawal from the litigation.

511.     Plaintiffs were severely harmed by Juliet Doherty's false and frivolous complaint against them whereas, Plaintiffs have not been able to work a single job due to the false and defamatory allegations and their names being globally recognized in the media as Juliet Doherty and her counsel waged a global media campaign against Plaintiffs.

512.     Juliet Doherty's conduct was a substantial factor in causing harm on Plaintiffs as her salacious and defamatory statements to third parties entirely disseminated any and all employment, sponsorships and relationships with employers, sponsors, clients or businesses which previously respected and employed or sponsored Plaintiffs including defamatory statements which were not only made in person but on social media and in the news.

513.     WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VI – DEFAMATION PER SE

*Plaintiffs against Juliet Doherty, Krista King-Doherty and Luis Pons*

514.     Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 450, *supra*, as if set forth herein.

515.     The unprivileged statements made by Defendants to others about Plaintiffs were false and defamatory.

516.     The unprivileged statements made by Defendants to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs have not worked one single job since July, 28th, 2021 and moreover, since December 13th, 2021, including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

517.     The unprivileged statements made by Defendants to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs employment, sponsorships, careers, business relations and reputations suffered severe injury due to Defendants' conduct

beginning from the year 2018 and which was not discovered by Plaintiffs until discovery in the Nevada litigation took place in 2022 and 2023.

518.    Defendants made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

519.    At the time Defendants made such statements, they knew or should have known that they were false and defamatory.

520.    Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

521.    Defendants' statements were not privileged or protected.

522.    Defendants' statements were made and published with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said statements and publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

523.    Defendants possessed information and evidence, and had access to information that showed their statements were false and defamatory.

524.    Defendants made statements for which they had no factual basis.

525.    Defendants suggested Plaintiffs were involved in a serious crime involving moral turpitude or a felony, exposing Plaintiffs to ridicule in

which reflected negatively on Plaintiffs' characters, morality and integrity whereas, the defamatory statements impaired Plaintiffs' financial well-being.

526.    The false statements made by Defendants to the media, the press and other third parties, including law enforcement are not privileged including because statements and reports of a crime that are intentionally false or made with reckless disregard for the truth are not privileged.

527.    Because Defendants' false statements accused Plaintiffs of a serious crime and maligned Plaintiffs in their professions, those statements constitute defamation per se and Plaintiffs' injuries are presumed.

528.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute defamation *per se*.

529.    As a direct and proximate result of the maliciously false and defamatory publication of statements to third parties by Defendants, Plaintiffs have been severely damaged.

530.     Plaintiffs are entitled to punitive damages, because Defendants'
defamatory statements were made with hatred, ill will, and spite, with the
intent to harm Plaintiffs or in blatant disregard of the substantial
likelihood of causing them harm.

531.     Because Defendants' defamatory statements constitute intentional
acts which were made with actual malice towards Plaintiffs, Plaintiffs
seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand
judgment against Defendants for damages, punitive damages, court costs, and
such other relief as the Court deems just and proper.

## COUNT VII – LIBEL PER SE

### *Plaintiffs against Juliet Doherty, Krista King-Doherty and Luis Pons*

532.     Plaintiffs repeat and reallege the allegations contained within
paragraphs 1 through 450, *supra*, as if set forth herein.

533.     The unprivileged statements made by Defendants to others about
Plaintiffs were false and defamatory.

534.     The unprivileged statements made by Defendants to others about
Plaintiffs caused complete loss and injury to Plaintiffs' businesses
whereas, Plaintiffs have not worked one single job since May 13th, 2021
and moreover, since July 28th, 2021 and December 13th, 2021, including

that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

535.    The unprivileged statements made by Defendants to others about plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs employment, sponsorships, careers, business relations and reputations suffered severe injury due to Defendants' conduct beginning from the year 2018 and which was not discovered by Plaintiffs until discovery in the Nevada litigation took place in 2022 and 2023.

536.    Defendants made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

537.    At the time Defendants made such statements, they knew or should have known that they were false and defamatory.

538.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

539.    The statements were not privileged or protected.

540.    The statements were published and stated by Defendants with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said statements and

publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

541.    Defendants possessed information and had access to information that showed their statements were false.

542.    Defendants made statements for which they had no factual basis.

543.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputations in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute libel *per se.*

544.    As a direct and proximate result of the maliciously false and defamatory statements and publication of statements to third parties by Defendants, Plaintiffs have been severely damaged.

545.    Defendants made false and defamatory statements to a **mass** audience in which were so widely understood to be harmful that they are presumed to be defamatory as Defendants made statements which falsely accused Plaintiffs of committing heinous crimes of sexual assault and including against children.

546.    Plaintiffs are entitled to punitive damages, because Defendants' defamatory statements were made with hatred, ill will, and spite, with the

intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

547.    Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VIII – SLANDER PER SE

548.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 450, *supra*, as if set forth herein.

549.    The unprivileged statements made by Defendants to others about Plaintiffs were false and defamatory.

550.    The unprivileged statements made by Defendants to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs have not worked one single job since July, 28th, 2021 and moreover, since December 13th, 2021, including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

551.    The unprivileged statements made by Defendants to others about plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs employment, sponsorships, careers, business relations and reputations suffered severe injury due to Defendants' conduct beginning from the year 2018 and which was not discovered by Plaintiffs until discovery in the Nevada litigation took place in 2022 and 2023.

552.    Defendants made defamatory statements to various third parties with negligence, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

553.    At the time Defendants' statements were made, she knew or should have known that they were false and defamatory.

554.    Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

555.    Defendants' statements were not privileged or protected.

556.    The statements were made and published by Defendants with actual malice, oppression, and fraud in that she was aware at the time of the falsity of the publication and thus, made said statements and publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

557.    Defendants possessed information and had access to information that showed their statements were false.

558.    Defendants also made statements for which they had no factual basis.

559.    Defendants intentionally caused harm by telling Plaintiffs' co-workers, clients and employers these false and defamatory statements as to intentionally inflict harm on their reputations, careers and business including by making defamatory statements which accuse Plaintiffs of crimes and other immoral sexual acts.

560.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute slander *per se*.

561.    As a direct and proximate result of the maliciously false and defamatory publication of statements to third parties by Defendants, Plaintiffs have been severely damaged.

562.    Plaintiffs are entitled to punitive damages, because Defendants' defamatory statements were made with hatred, ill will, and spite, with the

intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

563.    Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT IX - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *Plaintiffs against Juliet Doherty, Krista King-Doherty and Luis Pons*

564.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 450, *supra*, as if set forth herein.

565.    The unprivileged statements made by Defendants to others about Plaintiffs were false and defamatory.

566.    The unprivileged statements made by Defendants to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs have not worked one single job since May 13th, 2021 and moreover, since July 28th, 2021 and December 13th, 2021, including

that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

567.    The unprivileged statements made by Defendants to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs employment, sponsorships, careers, business relations and reputations suffered severe injury due to Defendants' conduct beginning from the year 2018 and which was not discovered by Plaintiffs until discovery in the Nevada litigation took place in 2022 and 2023.

568.    Defendants made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

569.    At the time Defendants made such statements, they knew or should have known that they were false and defamatory.

570.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

571.    Defendants' statements were not privileged or protected.

572.    The statements were published by Defendants with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said statements and publications in bad

faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

573.    Defendants possessed information and had access to information that showed their statements were false.

574.    Defendants made statements which had no factual basis.

575.    Defendants acted intentionally and/or recklessly whereas her conduct was extreme and outrageous and was the direct cause of Plaintiffs' severe emotional distress in which Plaintiffs continue to suffer today.

576.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitutes *intentional infliction of emotional distress.*

577.    As a direct and proximate result of the maliciously false and defamatory statements and publication of statements to third parties by Defendants, Plaintiffs have been severely damaged.

578.    Plaintiffs are entitled to punitive damages, because Defendants' defamatory statements were made with hatred, ill will, and spite, with the

intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

579.    Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT X – PRIMA FACIE DEFAMATION

### *Plaintiffs against Juliet Doherty, Krista King-Doherty and Luis Pons*

580.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 450, *supra*, as if set forth herein.

581.    The unprivileged statements made by Defendants to others about Plaintiffs were false and defamatory.

582.    The unprivileged statements made by Defendants to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs have not worked one single job since May 13th, 2021 and moreover, since July 28th, 2021 and December 13th, 2021, including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

583.    The unprivileged statements made by Defendants to others about plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs employment, sponsorships, careers, business relations and reputations suffered severe injury due to Defendants' conduct beginning from the year 2018 and which was not discovered by Plaintiffs until discovery in the Nevada litigation took place in 2022 and 2023.

584.    Defendants made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

585.    At the time Defendants made such statements, she knew or should have known that they were false and defamatory.

586.    Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

587.    Defendants' statements were not privileged.

588.    The statements were made and published by Defendants with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

589.    Defendants possessed information and had access to information that showed their statements were false.

590.    Defendants made statements which had no factual basis.

591.    Defendants made intentionally false statements purporting to be fact, published and communicated those statements to hundreds of thousands of third parties faulting to, at the very least, negligence, whereas the damages and harm to Plaintiffs and their reputations is irreparable as a direct result of the defamatory statements made by Defendants.

592.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitutes *Prima Facie Defamation.*

593.    As a direct and proximate result of the maliciously false and defamatory statements and publication of statements to third parties by Defendants, Plaintiffs have been severely damaged.

594.    Plaintiffs are entitled to punitive damages, because Defendants' defamatory statements were made with hatred, ill will, and spite, with the

intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

595.    Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT XI – CIVIL CONSPIRACY

### *Plaintiffs against Juliet Doherty, Krista King-Doherty and Luis Pons*

596.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 450, *supra*, as if set forth herein.

597.    Defendants' actions resulted in "Unfair Competition" by way of coordinating efforts to spread false information about Plaintiffs, (whose names and likeness were their business), to gain an advantage, as to destroy Plaintiffs' reputations, careers, business, ability to work and defend themselves against the defamatory statements and litigation itself including three years prior to Juliet Doherty filing her complaint in Nevada.

598.    Defendants' actions were unlawful including that the defamatory statements they maliciously made and published were intentional and wrongful interreferences with Plaintiffs' business relationships.

599.    Defendants intentionally and knowingly made false statements about Plaintiffs to a mass audience, performing an unlawful act to gain notoriety and mislead the public and any potential juror through social media, the media and the press to secure bias against Plaintiffs, including while knowing Juliet Doherty's allegations were false and frivolous.

600.    Juliet, Krista and Luis conspired to ensure Plaintiffs' good names, their likeness, careers, reputations and business relations were destroyed by spreading false and frivolous rumors which resulted in complete loss of any and all employment, sponsorships and business relationships between Plaintiffs and innumerable third parties including but not limited to Panama Ballet Festival, BellaMoxi Dance, Master Ballet Academy, Discount Dance, BLOCH INC, Red Bull, Artists Simply Human, Cancun Ballet Festival, Youth America Grand Prix and Grand Prix Intensive.

601.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including

termination of any and all business, contracts or employment and, as such, constitute *Civil Conspiracy.*

602.    As a direct and proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

603.    Plaintiffs are entitled to punitive damages, because Defendants' defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

604.    Because Defendants' defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendants, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial, including but not limited to:

A. Entering judgment against the Defendants on all claims made against them in this Complaint;

B. Entering an Order directing that Defendants pay Plaintiffs reasonable fees and costs pursuant to any applicable law;

C. For actual damages in an amount to be proven at trial;

D. For punitive damages in an amount to be proven at trial;

E. For costs of suit;

F. For pre-judgment and post-judgment interest on the foregoing sums;

G. For such other and further relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby request a trial by jury on all causes of action asserted within this pleading.

Respectfully dated this 21st day of June, 2024,

Dusty Button and Mitchell Taylor Button (*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
Email: Prosecanyousee@malifence.com
Phone: 310-499-8930
Phone: 310-499-8702

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was emailed to Pro_Se_Filing@nysd.uscourts.gov on June 21st, 2024.

Dated this 21st day of June, 2024,

/s/ _____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/ _____

Signature of Plaintiff Mitchell Taylor Button (*Pro se*)