UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUSTY BUTTON and MITCHELL TAYLOR BUTTON., <br><br> Plaintiffs, <br><br> -against- <br><br><br> JULIET DOHERTY, KRISTA KING-DOHERTY and LUIS PONS, <br><br> Defendants. | **REPORT & RECOMMENDATION** <br> **ON MOTIONS TO DISMISS** <br><br> **24-CV-5026 (JPC) (KHP)** |

**TO:  HON. JOHN P. CRONAN, United States District Judge**
**FROM: HON. KATHARINE H. PARKER, United States Magistrate Judge.**

In this case, Plaintiffs (and formerly significant dance industry figures) Dusty and Taylor

Button sue Juliet Doherty, a young dancer, her mother Krista King-Doherty, and a dance

photographer, Luis Pons, claiming their stardom in the dance industry (among others) abruptly

ended when Defendants conspired to defame them beginning in or around 2018, culminating in

Doherty joining a lawsuit filed by several young dancers in the United States District Court for

the District of Nevada against the Plaintiffs in 2021 (the "Nevada Action").  The Nevada Action is

led by a dancer named Sage Humphries who claims, as do the other plaintiffs in the action, that

Plaintiffs sexually abused her.  Plaintiffs deny the allegations and allege they have been falsely

accused by the dancers and in fact had a consensual dating relationship with Humphries.  When

Doherty joined the action, she too alleged the Plaintiffs sexually abused her at a dance festival

in Panama.  According to the Buttons, however, in reality it was Doherty who sexually assaulted

them.

In response to the Nevada Action, Plaintiffs brought this action and other actions in

other districts against the other plaintiffs in the Nevada Action claiming they have been

defamed, among other claims.[1]  In this action, they assert claims of assault, battery, "breach of

duty,"[2] and malicious prosecution against Doherty.  In addition, they assert claims of

defamation, tortious interference with business relations, intentional infliction of emotional

distress, and civil conspiracy against all three Defendants.  Doherty, together with King-Doherty,

and, separately, Pons have now moved to dismiss the Amended Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(2) and/or 12(b)(6).  (ECF Nos. 42, 46.)  For the reasons that follow,

I recommend granting both motions.

---

[1] Plaintiffs brought suit in the U.S District Court for the Central District of California against Sage Humphries. *Button v. Humphries*, No. 24-cv-01730 (JVS) (DFM), 2025 WL 1820116, at *2 (C.D. Cal. June 9, 2025) (the "California Action"). The Honorable James V. Selna, U.S.D.J., dismissed the claims with prejudice under Federal Rule of Civil Procedure 8 in that case, finding the complaint was laden with "repeat[ed] grievances" and "wholly unsupported causes of action."  The Court notes that the Amended Complaint in the instant action features many similarly styled grievances as those raised in the California Action, though the parties here have not moved to dismiss under Rule 8. The Buttons refer to the other suits they have filed against the victims, the victims' lawyers, and the covering news outlets in the Amended Complaint. (ECF No. 41, at 9-11 n.4-6, 51 n.8, 56 n.9.)

[2]  The Court considers the "breach of duty" claim to be subsumed into the assault and battery claims because Plaintiffs plead that Doherty breached a duty by sexually assaulting them.  Further, they fail to plead any facts that would give rise to any duty owed by Doherty to them. (ECF No. 1, at 154 ¶¶ 495-508.)  Further, the Court is aware of no legal basis for asserting that Doherty owed a duty to the Buttons independent of the other claims on the facts alleged here. Therefore, the Court does not treat this as a separate cause of action for breach of a fiduciary duty below, as this claim would fail as a matter of law. *See, e.g., Lynn v. Maida*, 97 N.Y.S.3d 46, 49 (1st Dept 2019) (rejecting argument that "the fact that plaintiffs were friends with defendants creates a fiduciary relationship"); *Benzies v. Take-Two Interactive Software, Inc.*, 73 N.Y.S.3d 557, 559 (1st Dept 2018) (affirming dismissal of breach of fiduciary duty claim because facts establishing "a close friendship[] are not sufficient to establish the necessary requirement of trust and confidence").

**BACKGROUND FACTS**[3]

1. **Overview of Parties and Claims**

Plaintiffs are a married couple currently living in South Carolina.  They resided in Nevada

when the Nevada Action was filed. *Humphries et al. v. Button*, No. 2:21-cv-01412 (D. Nev.), ECF

No. 221 ¶¶ 11-12.  They resided in Massachusetts in 2018 when the alleged assault in Panama

occurred. (ECF No. 41, Amended Complaint, at 74 ¶ 199, 76 ¶ 213, 88 ¶¶ 251, 253).  Dusty

Button ("Dusty")[4] "was a world-renowned ballerina" who trained and danced at various well

known ballet schools in the United States and England, rising to be principal ballerina at the

Boston Ballet in 2014. (ECF No. 41, at 16-17 ¶ 1-4.)  Dusty also earned money through

corporate sponsorships and teaching.  For example, she "was Red Bull's first and only ballet

athlete," and has performed and taught dance across the United States and in thirty countries.

(*Id.* ¶ 5.)  According to the Amended Complaint, Plaintiff Mitchell Taylor Button ("Taylor") "was

one of the world's most influential custom Ferrari and military vehicle designers and builders"

between 2014 and 2021, when the underlying events in the Complaint took place. (*Id.* at 17 ¶

8.)  Both of the Buttons were active on social media and promoted themselves and their brands

through social media, which also contributed substantially to their income.[5]  At the time of the

---

[3] The Court derives the facts from the Amended Complaint, which are assumed to be true for purposes of this motion.  The Court also takes judicial notice of court filings in other cases in which the Buttons are parties, though not for the truth of the matter asserted in those filings. *Doe v. State Univ. of N.Y. Purchase College*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022).  The Court notes that the paragraph numbering in the Amended Complaint restarts at various points, meaning there are different paragraphs with the same number. Accordingly, where appropriate, the Court will cite to the Amended Complaint by first noting the page number, then the paragraph number on that page.

[4] Due to the common last names of the Plaintiffs, the Court uses their first names for clarity where appropriate.

[5] Plaintiffs assert that they had the following brands:  "Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, 'The Buttons,' 'Button Built,' Button Brand, Bravado by Dusty Button, Meisturwerk and Meisturwerk Machinen." (*Id.* at 18 ¶ 12.)

events underlying the Complaint (which for the most part occurred in or about 2018 through 2021), each Plaintiff had "amassed nearly half of a million followers and subscribers" to their Instagram accounts. (*Id.* at 16 ¶ 6, 17 ¶ 10.)

Defendants Krista King-Doherty ("King-Doherty") and Luis Pons ("Pons") were "well-known figures in the dance community." (*Id.* at 19 ¶ 14.)  King-Doherty in particular was "a well-known and globally sought-after master dance teacher and dance choreographer," with "31,000 subscribers" on Instagram, who had taught dance with Dusty. (*Id.* at 19-20 ¶¶ 16, 18.) King-Doherty "resides in and is domiciled in Albuquerque, New Mexico," though Plaintiffs allege she "frequents New York City, NY on a recurring basis for business purposes." (*Id.* at 14 ¶ 48.) Pons "was a well-known and sought-after dance photographer with a social media following of at least 57,000 subscribers" on Instagram. (*Id.* at 19 ¶ 17.)  Defendant Juliet Doherty ("Doherty") is a New York resident who "was an actress and model, world-renowned dancer and social media influencer with a following of at least 320,000 subscribers on Instagram" and a number of "fan pages" which posted in support of her. (*Id.* at 13 ¶ 47; 19 ¶ 15.)

According to the Plaintiffs, their business and reputations were ruined by false accusations by various people, including the Defendants, that Plaintiffs abused young dancers (sexually and otherwise).  The accusations started in or about 2017 when the parents of Sage Humphries called the police in Massachusetts claiming that Plaintiffs owned dangerous weapons and were having an inappropriate relationship with their daughter. (*Id.* at 56 ¶ 144) Ultimately, in 2021, Sage Humphries and another young dancer, Gina Menichino, filed the Nevada Action through their counsel, Sigrid McCawley, an attorney at the Boies Schiller Flexner

law firm, and spoke to the press about the Buttons.[6] (*Id.* ¶ 13; *Humphries et al. v. Button*, No. 2:21-cv-01412 (D. Nev 2021).)  Doherty joined the Nevada Action on or about December 13, 2021.  *Humphries et al. v. Button,* No. 2:21-cv-01412 (D. Nev. 2021), ECF No. 35. The Buttons brought counterclaims for abuse of process and civil conspiracy against Doherty and other plaintiffs in the Nevada action, but on August 12, 2022, they filed amended counterclaims that removed the claims against Doherty. *See generally Humphries et al. v. Button*, No. 2:21-cv-01412 (D. Nev. 2021), ECF Nos. 54, 67.  Thereafter, on February 24, 2023, Doherty voluntarily withdrew her claims in the Nevada action purportedly because Plaintiffs harassed her online. (ECF Nos. 41, at 72 ¶ 191; *Humphries et al. v. Button,* No. 2:21-cv-01412 (D. Nev. 2021), ECF No. 132.)  The Nevada Action is ongoing.

Plaintiffs assert that, as a result of Defendants' (and others') false and defamatory conduct, they were subjected to "severe cyber bullying and harassment" and had to delete their Instagram account, which caused them to lose substantial revenue they previously enjoyed through their social media presence. (ECF No. 41, at 17-18 ¶ 7, 11, 12, 13.)  They also claim that they suffered other adverse consequences as a result of the sexual abuse allegations against them including loss of employment and loss of business relationships and opportunities.

2.  **The 2018 Panama Trip**

The sexual abuse that underlies the Plaintiffs' claims against Doherty (and Doherty's claims in the Nevada Action against Plaintiffs) occurred in July 2018 in Panama.  That month the Plaintiffs traveled to Panama City, Panama, where Dusty was headlining "the Panama Ballet

---

[6] *See, e.g.*, Julia Jacobs, "Former Dance Instructor Accused of Sexual Assault in Lawsuit," N.Y. Times, July 29, 2021, https://perma.cc/FJ4P-5ELL (last visited July 24, 2025).

Festival Gala . . . presented by . . . Ivan Sepulveda." (*Id.* at 23 ¶ 29.)  Sepulveda asked Taylor "to capture photos and video for the Panama Ballet Festival," which Taylor generally did for Dusty. (*Id.* ¶ 31.)

Doherty "was also contracted to perform" at the festival in Panama City. (*Id.* at 24 ¶ 33.) Plaintiffs met Doherty for the first time at the airport in Panama. (*Id.* at 23 ¶ 32.)  The Plaintiffs say that, during this trip, Doherty "was extremely persistent in pursuing a friendship with Plaintiffs." (*Id.* at 25-26 ¶ 39.)  On one occasion, they say, while festival attendees and employees were "gathered at the hotel pool to celebrate," Doherty "came to sit with Plaintiffs at a poolside table and unexpectedly decided to open up" to them regarding details about her personal life; namely, Doherty allegedly stated she had had "kissed a girl" and "liked it." (*Id.* at 26-27 ¶¶ 40-44.)

After the festival concluded, Sepulveda invited the Plaintiffs and Doherty to stay in Panama to enjoy the location. (*Id.* at 27 ¶ 47.)  Doherty allegedly asked to move into the Buttons' room so she would not have to pay for her own room. (*Id.* at 27-28 ¶¶ 48.)  Plaintiffs agreed. (*Id.* at 28 ¶ 49.)  According to Plaintiffs, Doherty exposed herself to them after showering, jumped into their bed in a suggestive position, inappropriately touched Dusty under the table at dinner one night, became drunk and flirtatious with them in the pool and inappropriately touched and tried to kiss them in the pool and suggested she wanted to initiate a threesome, and attempted to kiss Dusty in their shared room.  Sepulveda and his son allegedly witnessed some of this behavior. (*Id.* at 28-32 ¶¶ 50 -51, 53-65; 35-36 ¶¶ 72-83.) According to Plaintiffs, after they left Panama, Doherty falsely told others, including to their employers, sponsors and contractors, that she was drugged and sexually abused in Panama by

6

the Plaintiffs—all allegations Plaintiffs deny. (*Id.* at 37 ¶ 90-91.) According to the Plaintiffs, sometime in or around mid-2018, Sepulveda contracted the Buttons to come back to Panama for a separate event the following year and also invited Doherty to come back. All three allegedly agreed to come back. (*Id.* at 41 ¶ 98.)

Plaintiffs state in their complaint that they never pursued a "criminal report" against Doherty for assaulting them in Panama out of purported sympathy with Doherty's alleged statements regarding her sexuality (*Id.* at 40 ¶ 92.) They allege they sought "advice from a detective they knew in Massachusetts and were advised that civil recourse would be the best option." (*Id.* ¶ 93.)

### 3.    The Alleged Defamatory Statements of Defendants

Defendants assert that "[f]or years" after the 2018 Panama trip, Doherty "slandered and harassed Plaintiffs including by spreading malicious and defamatory rumors that Dusty and Taylor 'kind of drugged her' and 'raped' her." (*Id.* at 45, ¶ 109.) As detailed in the complaint, the vast majority of allegedly defamatory statements identified by Plaintiffs were made shortly after the Panama trip in 2018 and in the complaint and other filings in the Nevada Action. A few other statements were private text messages or statements made by the Defendants to others that Plaintiffs learned about from discovery in the Nevada Action. Other statements were made on social media. Although not entirely clear, it appears that the alleged harm from the alleged defamation occurred in the immediate aftermath of the filing of the Nevada Action or earlier (i.e., prior to February 2023 when Doherty withdrew from the Nevada Action). Although the prolix complaint contains many generalized assertions, the Court has identified approximately nineteen specific statements that the Plaintiffs have alleged were made by

Defendants Doherty and Pons.[7]  The specific allegedly defamatory statements made by Doherty are as follows:

- Doherty allegedly told Sepulveda via text message on September 15, 2018, "As I have discovered during the end of my trip in Panama, both of the [B]uttons have serious criminal charges pending against them.  I do not want to be connected to them in any way," "[F]or the reputation of your festival[,] I don't think you want to be connected to them," and "[T]hey are not good people." (ECF No. 44-1; ECF No. 41, at 45-47 ¶¶ 112-16.)  The Plaintiffs say Doherty's statements "convinced" Sepulveda to terminate his relationship with them. (ECF No. 41, at 47 ¶¶ 117-18.)  According to Plaintiffs, Pons informed Doherty about criminal allegations that had been made about them sometime prior to September 15, 2018.[8] (*Id.* at 45-46 ¶¶ 107, 114).

- In a text message dated March 2, 2019, with Slawek Wozniak (the son of Slawomir Wozniak, who runs the Master Ballet Academy[9]), Doherty stated, "[R]emember they kind of drugged me so probably better to stay away from them," indicating she was "sure" of this. (ECF No. 44-2; ECF No. 41, at 47-48 ¶¶ 119-22.)  Plaintiffs discovered the text messages to Wozniak in 2023 during

---

[7] For the reasons stated in this Report and Recommendation, *infra*, the Court recommends dismissing King-Doherty for lack of personal jurisdiction.  Accordingly, the Court's statement of facts omits statements alleged to have been made only by King-Doherty.

[8] Plaintiffs deny they were ever facing any criminal charges. (*Id.* at 49 ¶ 125.) However, they admit in the complaint that Humphries and/or her parents reported them to the police in Massachusetts resulting in a restraining order being entered against them. (*Id.* at 89 ¶ 255.)

[9] Master Ballet Academy is an Arizona-based ballet school.  "About Us," Master Ballet Academy, https://perma.cc/R7BG-RJEV (last visited July 24, 2025).

discovery in the Nevada action.[10] (*Id.* ¶ 121.)

- In 2019, Plaintiffs allegedly discovered that at some unspecified time in 2018 or 2019 Doherty "made further defamatory statements to company members at Ballet West, . . . including stating that Plaintiffs drugged and raped her in Panama in 2018." (*Id.* at 69 ¶ 180.)

- Plaintiffs allege King-Doherty and/or Doherty "told the owner of [Youth America Grand Prix ['YAGP']] that the Plaintiffs were child predators" at an unspecified place and time, in an unspecified manner.[11] (*Id.* at 70 ¶ 182, 130 ¶ 386-87 n.24.)

- Plaintiffs identify a number of allegations Doherty made in the complaint in the Nevada Action which they claim are false and defamatory.  These include that Plaintiffs spiked Doherty's drink (*id.* at 59-60 ¶¶ 146-47); that Dusty inflicted "juvenile sexual abuse" against her (*id.* at 66-67 ¶¶ 166-170); that Plaintiffs "drugged and molested" her when they were in Panama; that Plaintiffs "emphasized their power in the dance world and spoke negatively about their enemies in the dance community," and "suggested that they had the ability to negatively impact individuals' dance careers" (*id.* at 58 ¶ 145 & 53 ¶ 142); that "[t]he Buttons encouraged [Doherty] to share personal details about her life with them" and "Dusty told [Doherty] she felt like [Doherty]'s 'big sister'" (*id.* at 54 ¶ 143); that Plaintiffs showed her pictures of "a room full of guns that the

---

[10] Plaintiffs deny purchasing or using drugs. (*Id.* at 48 ¶ 122.)

[11] YAGP is a New York-based non-profit. "Our Mission," Youth America Grand Prix, https://perma.cc/2BWE-QU4T (last visited July 23, 2025).  It is unclear who the "owner," if any, of YAGP would be.

Buttons had at their house" (*id.* ¶ 144); that Dusty touched Doherty's genitals without consent (*id.* at 60 ¶ 148); that she "felt overwhelmed and scared," attempting to "escape the pool," but ultimately falling and suffering bruises and scrapes (*id.* at 62 ¶ 149); that Doherty "locked herself in the bathroom and continued vomiting," with Plaintiffs "repeatedly" knocking to be let in, but Doherty "kept the door locked because she did not feel safe" with Plaintiffs (*id.* at 62-63 ¶ 150); and that Doherty "passed out on the bathroom floor" and "woke up . . . in bed in a towel lying next to Dusty." (*id.* at 63 ¶ 151.)

- On February 24, 2023, in connection with withdrawing from the Nevada Action, Doherty "allegedly posted a picture to Instagram showing a picture of herself smiling with the caption, "yep that's alright with me!" and a mailbox emoji. (*Id.* at 71 ¶ 188.)  She also stated in her court filing that she was withdrawing "due to severe online harassment in retaliation for her claims."[12] (*Id.* ¶ 189; *Humphries v. Button*, No. 2:21-cv-01412-ART-EJY, ECF No. 132.)

- At some point before Humphreys' August 23, 2023 deposition in the Nevada Action, Doherty allegedly "told [Humphreys] that she was raped by both Plaintiffs and that she woke up naked and afraid." (ECF No. 41, at 64, ¶ 152.)

Regarding Pons, the Plaintiffs allege he made the following defamatory statements:

- Plaintiffs allege on July 12, 2018, Pons told Doherty "The [B]uttons are very strange people.  When you have time I can explain but they are dangerous

---

[12] Plaintiffs speculate that this statement was made "because [Doherty] knew the media would pick up" the statement, and that "Cosmopolitan Magazine published that she withdrew because the Plaintiffs harassed her online." (*Id.* at 72 ¶ 191.)

people[,] and I'm not joking at all.  I know why she was kicked out of Boston

ballet[].  Saying this with love of course[], looking out for you." (*Id.* at 133 ¶ 399.)

- Around the same time in 2018, Pons also said Plaintiffs were "[h]ighly

  manipulative and strange.  Keep [th]em at a distance[]. Crazy shit." (*Id.* ¶ 401.)

Finally, the Plaintiffs allege generally that "Defendants," allegedly made the following

defamatory statements:

- "[A]s late as the summer of 2024," one or more Defendants allegedly made

  statements "via social media and to former employers that Plaintiffs are going to

  be 'locked up.'" (*Id.* at 167 ¶ 559.)

### 4.     The Plaintiffs' Relationship with Sage Humphries

The Plaintiffs' Complaint contains a lengthy rehashing of an allegedly "open dating

relationship" between themselves and Sage Humphries.  The Court does not recite the full

allegations here because they are largely irrelevant to the instant action.  However, Plaintiffs do

acknowledge that on August 1, 2017, and June 11, 2018, Humphries filed a series of

(purportedly false) police reports in Massachusetts against Plaintiffs regarding the potential

illegal sale of firearms in California and alleging third-party stalking by Plaintiffs. (*Id.* at 88 ¶¶

251-52, 124-25 ¶ 373.)  They admit that on or around August 15, 2018, the Massachusetts

Court "granted a permanent restraining order against Plaintiffs." (*Id.* at 89 ¶ 255.)  According to

the Plaintiffs, Slawomir Wozniak shortly thereafter terminated the Master Ballet Academy's

relationship with them. (*Id.* at 127-29 ¶¶ 377-79.)  This suggests that the termination of this

relationship was not the result of any conduct by Defendants in this action.

5.     **Plaintiffs' Alleged Damages**

According to Plaintiffs, the alleged defamation caused a "loss of millions of dollars in revenue, assets and income, as Plaintiffs' businesses, good names and network of professional relationships were all destroyed." (*Id.* at 136 ¶ 414.)  "As a direct and proximate result of Defendants' conduct," Plaintiffs claim they no longer work in their respective industries and have been completely unemployed since 2021.[13] (*Id.* at 137 ¶ 418.)  Plaintiffs assert that they "themselves, *were* their business, contracted by numerous private contractors which immediately ceased working with Plaintiffs following the defamatory global media campaign waged against them, including . . . contractors and sponsors who had employed and worked with Plaintiffs for *over fifteen years*, and who immediately disassociated themselves from Plaintiffs." (*Id.* at 136 ¶ 415.)  They received "death threats, threats of physical violence if they were to be seen in public and harassing messages," including on social media. (*Id.* ¶ 416.)  They allege they were "physically, forcibly and embarrassingly removed from public events and various restaurants and stores where their names and likenesses were recognized from the media that Defendants orchestrated." (*Id.* ¶ 417.)  They state they have "severe trauma and PTSD as a direct result" of the statements alleged in the Complaint and have contemplated suicide. (*Id.* at 147 ¶ 458; 149 ¶ 464.)

---

[13] Their contracts "with three companies to manufacture and sell their dancewear line" were lost. (*Id.* at 138 ¶ 422.)  Dusty lost income from "teaching, provid[ing] choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship." (*Id.* at 138-39 ¶ 426.)  Taylor lost revenue from "design work, custom automotive creations, sponsorships, commercial shoots, events, marketing, advertising and speaking engagements." (*Id.* ¶ 427.)  Plaintiffs allege they both lost contracts with "sponsors, endorsements and event appearances" including approximately fifty or more companies or organizations. (*Id.* at 141-42 ¶ 438.)

## LEGAL STANDARDS

King-Doherty, who as noted above is a resident of New Mexico, moves to dismiss the claims against her on the ground that this Court lacks personal jurisdiction over her. She and Doherty also move to dismiss for failure to state a claim, including because some claims are time-barred.[14] In a separate motion, Pons argues the complaint should be dismissed against him for failure to state a claim, including because some of the claims are time-barred. Although the parties are in different states and the conduct about which Plaintiffs complain occurred in Panama and various states, including New York and Nevada, Defendants argue principally for the application of New York law to all the claims. Though not entirely clear, it appears Plaintiffs argue that New York law should apply to their malicious prosecution claim and that Nevada law should apply to their remaining claims. Thus, choice of law issues must be addressed.

### 1.   Personal Jurisdiction

Under Rule 12(b)(2), a defendant may move for dismissal for lack of personal jurisdiction over a defendant. "The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause . . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, [the] plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Lit.*, 334 F.3d

---

[14] As to the claims alleged only against Doherty, she moves to dismiss these claims on the ground that they were forfeited because they were not brought against her in the Nevada Action as compulsory counterclaims under Rule 13 of the Federal Rules of Civil Procedure. As the Court discusses, *infra*, the assault, battery, and malicious prosecution claims are indisputably time-barred on the face of the Amended Complaint. Therefore, the Court does not reach the compulsory counterclaims argument.

204, 206 (2d Cir. 2003).  When no discovery has taken place, to survive a motion to dismiss, the "plaintiff may meet this burden by pleading in good faith . . . legally sufficient allegations of jurisdiction, *i.e.*, by making a prima facie showing of jurisdiction." *Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, No. 06-cv-07S, 2007 WL 894217, at *3 (W.D.N.Y. Mar. 21, 2007) (internal quotation marks omitted) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998)).  "A plaintiff can make such a prima facie showing through affidavits and supporting materials containing sufficient facts which, if credited, would establish personal jurisdiction over the defendant." *Id.* (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).  Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction.  *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

**2.  Choice of Laws Principles**

While courts generally abstain from performing a choice-of-law analysis on a motion to dismiss, they will do so where the pertinent facts are clear from the face of the complaint. *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018).  "Federal courts sitting in diversity look to the choice-of-law rules of the forum state." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (citing *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)).   Because jurisdiction in this case is premised on diversity, New York choice-of-law rules apply.

"'In New York, . . . the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Holborn Corp.*, 304 F. Supp. 3d at 398 (citing *Curley*, 153 F.3d at 12). "An actual conflict of law exists if the applicable law from each jurisdiction provides different substantive rules, and the differences have a significant *possible* effect on the outcome of the trial." *Id.* (cleaned up).

"If an actual conflict exists, courts must decide which choice-of-law test is most appropriate." *Id.* Here, all the causes of action in this case sound in tort, and thus New York's choice-of-law rules for tort causes of action, which require an interest analysis in the event of a conflict of laws, apply. *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006) (citing *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679 (1985) (cleaned up)). Under this test, New York courts will apply "the law of the state with the most significant interest in the litigation." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (citing *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999)) (internal quotation marks omitted).

Generally, the state of the plaintiff's domicile will have the most significant relationship to the case, and its substantive law will therefore govern. *Id.* When weighing a state's interests, "New York distinguishes between conduct-regulating rules and loss-allocating rules." *Kinsey*, 991 F.3d at 176 (citing *Sheldon v. PHH Corp.*, 135 F.3d 848, 853 (2d Cir. 1998)). For conduct-regulating rules, New York "usually applies the traditional law of the place of the tort." *Id.* Defamation causes of action are "considered conduct-regulating." *Id.* (citing *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). However, where, as here, multiple states are involved in the alleged conduct giving rise to the complaint, New York courts consider "whether another jurisdiction has a more significant relationship to the case," and must "weigh all the

factors that might impact" the various states' interests in the litigation, such as "where the plaintiff suffered the greatest injury; from where the statements emanated and were broadcast; where the activities to which the allegedly defamatory statements refer took place; and the policy interests of the states whose law might apply." *Prince v. Intercept*, 634 F. Supp. 3d 114, 133 (S.D.N.Y. 2022) (citing *Kinsey*, 991 F.3d at 177) (cleaned up); *see also Babcock v. Jackson*, 191 N.E.2d 279, 283-84 (N.Y. 1963) (applying the most significant interest test in a non-defamation context).

### 3.  Failure to State a Claim and Statute of Limitations

For a complaint to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions or formulaic recitation of the elements of a cause of action[]." *Id.* (internal quotation marks omitted.)  In assessing a motion to dismiss, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick v. Lima*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotations omitted) (citing *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

When evaluating a motion to dismiss, a court may consider "any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, documents that are 'integral' to the complaint even if they are not incorporated

by reference, and matters of which judicial notice may be taken." *See Donoghue v. Gad*, No. 21 CIV. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022).  Ordinarily, courts do not consider a statute of limitations affirmative defense on a motion to dismiss. *Essex Cap. Corp. v. Garipalli*, No. 17-cv-06347 (JFK), 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018).  However, if the complaint pleads dates showing "that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss" under Rule 12(b)(6). *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

These same standards apply to motions to dismiss complaints filed by pro se plaintiffs. *Jenkins v. N.Y.C. Dep't of Educ.*, 2011 WL 5451711, at *3 (S.D.N.Y. Nov. 9, 2011).  However, the court must construe a pro se plaintiff's complaint liberally and interpret it as raising the strongest arguments it suggests.  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted).

## DISCUSSION

### 1. Personal Jurisdiction over King-Doherty

Because jurisdiction here is premised on diversity, the Court looks to New York's long-arm statute to evaluate whether personal jurisdiction is proper. *Bresciani v. Leela Mumbai-A-Kempinski Hotel*, 311 F. Supp. 2d 440, 444 (S.D.N.Y. 2004); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) ("To answer th[e] question [of personal jurisdiction over a defendant], we look first to the law of the State of New York, in which the district court sits.")  If the defendant's contacts with the forum are not "continuous and systematic" such they would be sufficient for the exercise of general jurisdiction, the Court must assess whether it has specific jurisdiction to hear the claims in this case. *See Metro. Life Ins. Co.*, 84 F.3d at 567-

68.

King-Doherty is a resident of New Mexico and there are no allegations of "continuous and systematic" contacts with New York to support an exercise of general jurisdiction over King-Doherty. Therefore, the Court directs its attention to whether it has specific jurisdiction over King-Doherty. To determine if a court has personal jurisdiction, "[a] court must undertake a two-step inquiry." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 228 (S.D.N.Y. 2015) (internal quotation marks omitted). First, the court asks whether the forum state would subject a defendant to personal jurisdiction. *Id.* If New York would subject the out-of-state defendant to jurisdiction, the court asks whether the exercise of jurisdiction over the out-of-state defendant "comports with the Due Process Clause of the United States Constitution." *Id.*

New York C.P.L.R. 302 is New York's long-arm statute that provides for specific jurisdiction over a defendant under certain circumstances. *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8-9 (2d Cir. 2018) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are four categories of conduct that justify specific jurisdiction under New York law, including: (1) transacting business within the state or supplying services in the state; (2) committing a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) committing a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business in the state, or (ii) should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; and (4) using or possessing real property within the

state. N.Y. C.P.L.R. 302(a).

The only possible basis for exercising jurisdiction over King-Doherty is subsection (1) as to the defamation claims and subsections (1) and potentially (2) with respect to the other tort claims, because Plaintiffs are not within New York and the conduct does not relate to real property. To establish jurisdiction over a non-domiciliary defendant under C.P.L.R. 302(a)(1), a plaintiff must show that the defendant (1) "transacts any business within the state" and that (2) the plaintiff's claim arises from the business that the non-domiciliary transacted in New York. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). Transacting business in the state requires a showing of "purposeful activity"— meaning an act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Best Van Lines*, 490 F.3d at 246-47 (cleaned up). Further, the Second Circuit has observed that "New York courts do not interpret 'transact[ing] business' to include mere defamatory utterances sent into the state." *Id.* at 248. While in ordinary cases a single act of transacting business may satisfy New York's test to exercise personal jurisdiction, defamation cases are treated differently, and statements directed at the forum do not, alone, permit an exercise of personal jurisdiction over a non-resident. *Id.* (collecting cases). Additionally, for jurisdiction to apply, there must be "an articulable nexus, or a substantial relationship" between the business transaction and the claim. *Id.* at 246, 249. For defamation causes of action, at least part of the defamatory content must have been "created, researched, written, developed, or produced in New York." *Prince*, 634 F. Supp. 3d at 129 (quoting *Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 662 (S.D.N.Y. 2020)). A "court must look at the totality of the circumstances to determine the existence of purposeful activity and may not

subject the defendant to jurisdiction based on 'random,' 'fortuitous,' or 'attenuated' contacts."
*Madison Cap. Markets, LLC v. Starneth Eur. B.V.*, No. 15 CIV. 7213, 2016 WL 4484251, at *9
(S.D.N.Y. Aug. 23, 2016) (quoting *Aquiline Cap. Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378,
387 (S.D.N.Y. 2012)) (first internal quotation marks omitted).

Plaintiffs have alleged King-Doherty made statements on Instagram and Facebook (and
potentially over the phone),  from her home in New Mexico (presumably), targeted at
companies and/or individuals potentially residing in New York.  The most specific assertion of a
communication to someone in New York is their assertion that King-Doherty "intentionally,
maliciously and willingly made defamatory and salacious statements to the owner of YAGP,"
which is located in New York City, "in conspiracy with various third[ ]parties to intentionally
destroy Plaintiff's [sic] business relationship with YAGP; which she did." (*Id.* at 130 ¶¶ 386-87.)
Even if this statement were made in person, there are no clear allegations regarding any
specific business transactions in which King-Doherty was engaged in New York that have a
nexus with the claims against her.  Nor do Plaintiffs allege that any defamatory statements
were made in New York or that King-Doherty engaged in other tortious conduct while in New
York.  While Plaintiffs point generally toward their loss of business with YAGP, this allegation is
insufficient to establish that King-Doherty conducted business in New York and that her alleged
tortious conduct arises from that business.

Plaintiff's assertion that "New York recognizes a conspiracy theory as the basis for
exercising personal jurisdiction over a non-domiciliary under [C.P.L.R. ]302(a)(2)" is unavailing.
The cited C.P.L.R. provision does not provide the rule they claim.  Further, "'the bland assertion
of conspiracy … is insufficient to establish jurisdiction for the purposes of section 302(a)(2).'" *In*

*re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005) (internal

quotation marks omitted) (citing *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d

Cir. 1975)).  Here, Plaintiffs offer nothing more than conclusory assertions regarding King-

Doherty's alleged participation in any conspiracy to defame them.  Thus, they have failed to

meet the required showing for the Court to exercise jurisdiction over King-Doherty.  The claims

against King-Doherty should therefore be dismissed for lack of personal jurisdiction.

    **2.**  **Whether New York or Nevada Law Applies to the Claims Against Doherty and Pons**

    While this Court sits within New York, the allegations of the Amended Complaint allege

a "global campaign" of defamation and other torts, often crossing state lines.  Accordingly, this

Court must evaluate which state's law will apply.  Defendants chiefly argue for application of

New York's substantive law and statutes of limitations, while Plaintiffs chiefly argue for

application of Nevada law and statutes of limitations (including, in part, by citing largely to

Ninth Circuit caselaw),[15] operating with the impression that Nevada recognizes the discovery

rule in defamation cases.  As noted above, the Court sitting in diversity applies New York's

choice of law rules.

    *A. Statutes of Limitation*

    Both New York and Nevada apply the traditional rule which considers statutes of

limitation to be matters of procedure rather than substance. *See Abbott Laboratories v.*

---

[15]  The lone exception is that they seem to argue that New York substantive law governs the malicious prosecution claim.  Further, while they make some references to South Carolina law, they clearly favor Nevada, given their understanding that it recognizes the discovery rule, which they believe is imperative to maintain a number of their claims.  They make no mention of Massachusetts law in their papers, despite having apparently been domiciled there at some point.  Because the Court has no way to assess when they lived in which state, and their theory of this case flows almost exclusively from the Nevada Action and the discovery conducted there, the Court focuses on the applicability of New York versus Nevada law.

*Feinberg*, 477 F. Supp. 3d 57, 61 (S.D.N.Y. 2020); *Asian American Ent. Corp., Ltd. v. Las Vegas*

*Sands, Inc.*, 324 F. App'x 567, 568-69 (9th Cir. 2009).  This means the Court should apply the

relevant statute of limitations of the forum state (i.e., New York's statutes of limitation). *Abbott*

*Laboratories*, 477 F. Supp. 3d at 61.  Also, relevant here, New York has a borrowing statute.

Under this law, "'[w]hen a nonresident sues on a cause of action accruing outside New York,

[C.P.L.R.] 202 requires the cause of action to be timely under the limitation periods of both New

York and the jurisdiction where the cause of action accrued.'" *Banga v. Lustig*, No. 24-140, 2025

WL 1983460, at *2 (2d Cir. July 17, 2025) (citing *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482,

484 (N.Y. 1999)).  Thus, any claim in this action is not timely if it is untimely under the New York

statute of limitations applying to such claims.

### B.  Substantive Law

Before analyzing whether the allegations in the Amended Complaint plausibly support

any of the causes of actions pled, the Court must determine which law applies.  The Court

begins by comparing New York and Nevada substantive law in such cases.

To state a prima facie claim for defamation under New York law, "the plaintiff must

allege (1) a false statement about the plaintiff; (2) published to a third party without

authorization or privilege; (3) through fault amounting to at least negligence on part of the

publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo*

*v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citing *Dillon v. City of New*

*York*, 704 N.Y.S. 2d 1, 5 (N.Y. App. Div. 1st Dep't 1999)).  Under Nevada law, a plaintiff must

prove (1) the defendant made "a false and defamatory statement" in (2) "an unprivileged

publication to a third person," with (3) an applicable level of "fault, amounting to at least

negligence; and (4) "actual or presumed damages." *Grand Canyon Skywalk Development, LLC v. Cieslak*, No. 2:13-cv-596 (JAD) (GWF), 2014 WL 2123255, at *3 (D. Nev. 2014) (internal quotation marks omitted).  Both jurisdictions recognize libel per se and slander per se. *See, e.g.*, *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 923 (D. Nev. 2019); *Bongiovi v. Sullivan*, 138 P.3d 433, 448 (Nev. 2006); *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001); *Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 299-300 (S.D.N.Y. 2023).  Thus, the Court cannot discern any difference in the defamation causes of action that would require performing an analysis of which state has the most significant interest in the defamation causes of action.

There also appears to be no substantive difference in the law of Nevada and New York with respect to the elements of a claim for intentional infliction of emotional distress, tortious interference with business relations/prospective business relations, or civil conspiracy.[16] Starting with intentional infliction of emotional distress, in New York, to prevail on such a claim, the plaintiff must show "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard or a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Sorrell v. County of Nassau*, 162 F. Supp. 3d 156, 172 (S.D.N.Y. 2016).  Nevada similarly requires the plaintiff to establish "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual

---

[16]  As the Court discusses, *infra*, the claims for malicious prosecution, assault, and battery are untimely, and thus they are time-barred.  Therefore, the Court does not include the elements for each in this section or analyze them for purposes of substantive choice law.

or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000) (quoting *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981)).

Likewise, there is no difference in law between New York and Nevada causes of action for tortious interference with business relations/prospective economic advantage. Both require a contractual or prospective contractual relationship between the plaintiff and a third party, knowledge by the defendant of the relationship/prospective relationship, intent to harm the plaintiff by interfering with the relationship, the absence of privilege or justification by the defendant, and actual harm as a result of the defendant's conduct. *Compare Winter-Wolff Int'l, Inc. v. Alcan Packaging Food and Tobacco Inc.*, 499 F. Supp. 2d 233, 242 & n.4 (E.D.N.Y. 2007) and *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011).

Finally, neither state recognizes civil conspiracy as an independent cause of action where an underlying tort cannot be maintained. *Heilbut v. Cassava Sciences, Inc.*, 24-cv-05948 (JLR), 2025 WL 919654, at *15 (S.D.N.Y. March 26, 2025); *In re. Mortg. Elec. Reg. Sys. (MERS) Litig.*, 744 F. Supp. 2d 1018, 1027 (D. Ariz. 2010). And the elements of a civil conspiracy are likewise substantially the same. In Nevada, "[a]n actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damages result from the act or acts." *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998); *Sternberg v. Warneck*, No. 23-cv-01466 (APG) (EJY), 2024 WL 4804826, at *9 (D. Nev. 2024), *modified on other grounds*, 2025 WL 1489701, at *7 (D. Nev. 2025). To sustain a civil conspiracy theory for liability in New York, a plaintiff "must allege [1] a cognizable cause of action, [2] agreement among the conspirators, [3] an overt act in furtherance of the agreement,

[4] intentional participation by the conspirators in furtherance of a plan or purpose, and [5] damages." *Heilbut*, 2025 WL 919654, at *15 (internal quotation marks omitted).

Insofar as there is no significant difference between New York and Nevada law for any of these torts, the Court will apply New York substantive law when analyzing the claims.[17]

### 3. Whether Plaintiffs Have Stated Plausible Claims Against Doherty and Pons Under New York Law

Doherty and Pons argue that certain of Plaintiffs' claims are barred by applicable statute of limitations and that Plaintiffs otherwise fail to state plausible claims.

#### A. Assault & Battery Claims

The assault and battery claims against Doherty are indisputably time-barred as pleaded. In this case, the New York borrowing statute would apply since the cause of action accrued in Panama. Panama applies a one-year statute of limitations to such claims. Panama Civ. Code, ch. iii, art. 1706; *see also* ECF No. 44-3, at 5; *Multibank, Inc. v. Access Global Capital, LLC*, 52 N.Y.S.3d 247 (N.Y. Sup. Ct. N.Y. Cnty. 2017) (utilizing the borrowing statute with Panamanian law). New York's statute of limitations is also one year. N.Y. C.P.L.R. 215(3). The statute of limitations on the assault and battery claims began to accrue in July 2018, when the incident occurred. Thus, the claims should have been brought no later than 2019. This action was filed in 2024—well after any possible limitations period. There can be no credible assertion (let alone any assertion of fact to support the application) of equitable tolling or estoppel applicable

---

[17] The Court also notes that New York has a strong policy interest in regulating the conduct of its residents and that the place of harm is not necessarily the same as the state with the most significant interest. *See, e.g., K.T. v. Dash*, 827 N.Y.S.2d 112, 115 (N.Y. App. Div. 1st Dep't 2006) ("[T]he outcome of the litigation will have no impact at all on Brazil or any of its citizens or residents."); *Prince v. Intercept*, 634 F. Supp. 3d 114, 134 (finding New York had the most significant interest in the litigation even though no harm was alleged to have occurred in New York). *Id.* at 134.

to these causes of action, which Plaintiffs acknowledge they knew about and even allege they consulted with a detective regarding charges and were specifically advised civil claims would be the most likely avenue for recourse. *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) (no equitable estoppel if from face of complaint it is clear that plaintiffs were not induced by defendant's misrepresentations or fraud to delay filing action). These claims are therefore time-barred and should be dismissed with prejudice.

### B. Malicious Prosecution

The malicious prosecution claim is also time-barred. New York applies a one-year statute of limitations to malicious prosecution claims. N.Y. CPLR 215(3).[18] The cause of action will "accrue when 'the prosecution terminates in the plaintiff's favor.'" *Watt v. City of New York*, 740 F. Supp. 3d 212, 226 (E.D.N.Y. 2024). Here, the latest date the cause of action could have accrued is the date that Doherty withdrew her claims in Nevada, which Plaintiffs plead to be February 24, 2023. As with the assault and battery claims, there can be no facts pleaded to support a claim for equitable estoppel as to this cause of action since the Plaintiffs admit they have been participating in the Nevada Action continuously for years. Accordingly, any claim for malicious prosecution expired before this action was filed in June 2024. Thus, the cause of action for malicious prosecution is time-barred and should be dismissed with prejudice.[19]

---

[18] As stated, for purposes of New York's borrowing statute, Nevada's statute of limitations is immaterial, since it must be timely under both New York and Nevada law.

[19] For completeness, the Court notes that the Plaintiffs also have failed to state a claim for malicious prosecution. New York courts adjudicating malicious prosecution claims which were prosecuted in other states generally apply the substantive law of the forum where the allegedly malicious prosecution was conducted—here, Nevada. *See Tripodi v. Local Union No. 38 Sheet Metal Workers' Int'l Ass'n, AFL-CIO*, 120 F. Supp. 2d 318, 321 (S.D.N.Y. 2000) (citing *Heaney v. Purdy*, 272 N.E.2d 550 (N.Y. 1971)). Under Nevada substantive law, Plaintiffs also cannot maintain a cause of action for malicious prosecution, which requires lacking probable cause in "a prior criminal proceeding." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002). Doherty's causes of action in the Nevada federal action were civil claims between private parties, not criminal prosecutions.

### C. Defamation Claims

#### i. Time-Barred Claims

New York applies a one-year statute of limitations on defamation claims (whether libel or slander). N.Y. C.P.L.R. 215(3).  New York follows the "single publication rule," under which the statute of limitations runs from the date of the first publication of a statement which is widely distributed or republished. *Firth v. State*, 775 N.E.2d 463, 464-65 (N.Y. 2002). "Republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.'" *Id.* at 466; *see also Comolli v. Huntington Learning Ctrs., Inc.*, 117 F. Supp. 3d 343, 349 (S.D.N.Y. 2015).  Additionally, "New York law clearly holds that causes of action sounding . . . in defamation . . . accrue at the time of publication, not at the time of discovery of the allegedly defamatory statement." *ACTV, Inc. v. Walt Disney Co.*, No. 01-cv-8402 (JSR), 2002 WL 922172, at *2 (S.D.N.Y. 2002).[20]

The Complaint was initially filed in this case on June 27, 2024.  Thus, absent any tolling or estoppel, any statements made before June 27, 2023, would be time-barred.  Yet by Plaintiff's own admission, almost all the allegedly defamatory statements made by Doherty and Pons were made before June 27, 2023.  Doherty's statements were made on February 12, 2018;

---

[20]  Plaintiffs' suggestion that the statute of limitations should run from their discovery of the defamation is unavailing.  First, New York has "consistently declined to recognize a so-called 'discovery rule' for libel claims." *Hanly v. Powell Goldstein, L.L.P.*, 290 F. App'x 435, 439 (2d Cir. 2008).  And even if New York did recognize a discovery rule on these claims, Plaintiffs acknowledge they were "made aware of rumors that surrounded false and defamatory statements" over a period of "years" before 2022 and 2023. (ECF No. 41, at 70 ¶ 184.)  Therefore, while the specific statements themselves may have been discovered later, the Plaintiffs knew about these purportedly false statements long before they filed this action. Further, the bulk of the alleged defamation leading to the alleged harm in this case stems from the allegations in the filings in the Nevada Action – all of which happened on or before February 2023.

September 15, 2018; March 2, 2019; December 13, 2021 (in the complaint she joined in the

Nevada Action); and on February 24, 2023 (when she withdrew from the Nevada Action "citing

false and defamatory reasoning for withdrawing her claims such as 'online harassment.'").[21]

(ECF No. 54, at 13; ECF No. 41, at 115 ¶ 340; 162-63 ¶ 539.)  Similarly, Pons' statements were

made on July 12, 2018, when Pons told Doherty the Plaintiffs were "criminals" and "drugged

and assaulted" Humphries. (ECF No. 41, at 8 ¶ 27.)  On the same date, he also allegedly called

the Plaintiffs "strange" and "dangerous," and asserted knowledge "why [Dusty] was kicked out

of Boston ballet," calling them "[h]ighly manipulative," "strange," and "[c]razy" (*Id.* at 133

¶ 399-401.)  Plaintiffs cannot maintain a cause of action for any of these statements.

   Plaintiffs claim that even if their defamation claims are time-barred, they should receive

the benefit of equitable estoppel[22] of the relevant statutes of limitations.  "Under New York

---

[21] The Court also notes that generally a defamation claim cannot be premised on statements made in a court filing. *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995).  "Under New York law, '[i]n the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation.'" *Id.* (citing *Grasso v. Mathew*, 564 N.Y.S.2d 576, 578 (N.Y. App. Div. 3d Dep't 1991)). However, neither absolute nor qualified immunity applies where a litigant "maliciously institute[s] a judicial proceeding alleging false and defamatory charges, and[ ]then circulate[s] a press release or other communication based thereon." *Williams v. Williams*, 246 N.E.2d 333 (N.Y. 1969); *Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187, 1194 (S.D.N.Y. 1985) (Williams applies to both absolute and qualified immunity). A "[d]efendants' intention to use [an] action as ... a device [to disseminate defamatory statements] is a factual issue" that must be resolved by a jury. *Halcyon Jets, Inc. v. Jet One Grp., Inc.*, 894 N.Y.S.2d 392 (N.Y. App. Div. 1st Dep't 2010). "New York courts have consistently held that the *Williams* exception is a narrow one and does not apply 'in the absence of any allegation that the ... action was brought maliciously and solely for the purpose of later defaming the plaintiff.' " *Riel v. Morgan Stanley*, No. 06 Civ. 524 (TPG), 2007 WL 541955, at *12 (S.D.N.Y. Feb. 16, 2007) (quoting *Branca v. Mayesh*, 476 N.Y.S.2D 187 (N.Y. App. Div. 2d Dep't 1984); citing *Cuthbert v. Nat'l Org. for Women*, 615 N.Y.S.2d 534 (3d Dept. 1994)).  The statements extracted from Doherty's filings in the Nevada Action are indisputably "pertinent to the litigation" and absolutely immune from claims of defamation.  There are no allegations on the face of the Amended Complaint that Doherty was motivated "solely" by the purpose of "later defaming" the Plaintiffs, nor are there any factual allegations to support the inference that she had the requisite malice, as discussed further *infra*.

[22]  Because all of the causes of action in this case are common law torts analyzed under New York law, the Court only analyzes the New York doctrine of equitable estoppel and does not examine federal equitable tolling.  The cases cited by the parties do not support application of federal equitable tolling to state common law claims. *See, e.g., Davis v. Jackson*, No. 15-cv-5359 (KMK), 2016 WL 5720811, at *11 (S.D.N.Y. Sept. 30, 2016) (analyzing equitable tolling regarding federal claims arising under 42 U.S.C. § 1983).

law, equitable estoppel refers to a court's power to bar the application of the statute of limitations due to representations or conduct by a party which induces the opposing party to postpone bringing suit on a known cause of action, or which fraudulently conceals an action unknown to the opposing party." *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006). Courts invoke it sparingly, requiring "exceptional circumstances." *Id.* (internal quotation marks omitted). To show entitlement to equitable estoppel, a party must show the defendant (1) misrepresented or concealed material facts; (2) intended the plaintiff would act upon such a misrepresentation or concealment, thus delaying bringing an action; and (3) knew the real facts. Likewise, the party claiming estoppel must show they (1) lacked knowledge of the truth regarding the material facts; (2) relied upon the conduct of the opposing party; and (3) were prejudiced by that conduct. *Id.* (citing *Smith v. Smith*, 830 F.2d 11, 12 (2d Cir. 1987)).

There are no exceptional circumstances warranting equitable estoppel here. To start, Plaintiffs affirmatively plead that Doherty gave them direct notice of the statements she was making when she joined the Nevada Action. Additionally, there is no showing that Defendants misrepresented or concealed material facts intending that Plaintiffs would act on such misrepresentation or concealment to delay the bringing of this action. Nor can Plaintiffs show, on their pleading, that they relied on conduct of any of the Defendants in delaying bringing this action. Plaintiffs plead that they were aware of rumors about them and were fully aware of the substance of Doherty's assertions about them when she joined the Nevada action and plead that they did not bring defamation claims sooner out of concern for Doherty's emotional state. Thus, their decision to delay bringing suit was conscious and not based on misrepresentations or concealment of facts by Defendants. Plaintiffs cite to a Ninth Circuit case, *Supermail Cargo,*

*Inc. v. United States*, 68 F.3d 1204 (9thCir. 1995), for the proposition that "the applicability of the equitable tolling doctrine often depends on matters outside the pleadings," rendering conclusions on equitable tolling inapt to a Rule 12(b)(6) motion. *Id.* at 1206-07.  However, this case does not assist them, as it is not precedential in this Court, and the pleading makes plain that there is no basis for equitable tolling here.

ii.  <u>Timely Claims</u>

There are only three statements potentially attributable to Doherty or Pons that arguably were made within the year prior to the filing of this action.

First, Plaintiffs contend "Defendants" made defamatory statements about them in 2023 and 2024 to third parties including but not limited to various former employers such as affiliates of YAGP, Cancun Ballet Festival and Master Ballet Academy. (ECF No. 41, at 161 ¶ 534.)  Particularly regarding YAGP, Plaintiffs allege that at some point either King-Doherty or Doherty called the Plaintiffs "child predators."  However, these allegations are far too conclusory to state a claim of defamation.  Little to no information is provided about the precise statements made, the specific defendant who made the statements or to whom, or the precise dates of the statement.[23] *See Manolov v. Borough of Manhattan Community College*, 952 F. Supp. 2d 522, 531 (S.D.N.Y. 2013) (citing *Twombly*, 550 U.S. at 555).

Second, they allege Doherty told Sage Humphries that she was raped by both Plaintiffs –

---

[23]  In addition, the Court notes that even if the "child predators" comment were considered definite enough to be analyzed on the merits, it would still fail as hyperbolic and inactionable opinion. *See, e.g., Rosa v. Eaton*, No. 23-cv-6087 (DEH), 2024 WL 3161853, at *3 (S.D.N.Y. June 25, 2024) (noting terms such as "scum," "predators," "greedy crooks," and "criminals preying on [street art] culture" were too vague and imprecise, as well as hyperbole and nonactionable opinion).  Nor are such statements without some basis, in that the allegations actually made against the Plaintiffs in the Nevada Action involve multiple parties who allege the Plaintiffs sexually harassed and abused them when they were minors. *See Humphries v. Button*, No. 2:21-cv-01412-ART-EJY, ECF No. 221 ¶¶ 42-122, 218-28.

a statement they allegedly learned about during the deposition of Sage Humphries on August 23, 2023, in the Nevada Action. (*Id.* at 64, ¶¶ 152-53.) With respect to the second statement made to Sage Humphries, it is not clear when the statement was made to Sage Humphries. It is more likely the statement was made on or about the time that Doherty joined the Nevada Action as a plaintiff and that Plaintiffs were aware of it well before the deposition, meaning any defamation claim premised on this statement would be time-barred. It is nevertheless conceivable that it was made to Doherty between June 27, 2023, and August 23, 2023.

Third, they claim as late as the summer of 2024, "Defendants" made statements "via social media and to former employers that Plaintiffs are going to be 'locked up.'" (ECF No. 41, at 167 ¶ 559.)

Plaintiffs assert the following theories of defamation: (1) prima facie defamation; (2) defamation per se; (3) libel per se; and (4) slander per se. As noted above, the Court looks to New York substantive law to evaluate these claims. "Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (internal quotation marks omitted). "Generally, spoken defamatory words are slander; written defamatory words are libel." *Id.* To state a prima facie claim for defamation under New York law, "the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citing *Dillon v. City of New York*, 704 N.Y.S. 2d 1, 5 (N.Y. App. Div. 1st Dep't 1999)). New York courts encourage the resolution of "defamation

claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.'" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (quoting *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 828 (N.Y. 1995)).

"The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert*, 239 F.3d at 265-66. "'Special harm' means 'the loss of something having economic or pecuniary value.'" *Id.* at 271 (citing *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992)) (cleaned up). "The four categories of statements that have historically constituted slander per se in New York are those that (i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman." *Id.* (citing *Liberman*, 605 N.E.2d at 347).[24]

To show a cause of action for libel, a plaintiff must plausibly allege (1) the defendant made "a written defamatory statement of fact concerning the plaintiff," which they (2) published to a third party, with (3) "fault," meaning negligence regarding the truth of the statement (or, under certain circumstances, actual malice regarding its falsity); (4) "the falsity of the defamatory statement"; and (5) "special damages or per se actionability." *Celle v. Filipino*

---

[24] The Court treats the cause of action styled as "defamation per se" as being subsumed within the category of slander per se, as the parties do not provide authority for any different elements applicable to such a claim. *See Kramer v. Skyhorse Pub., Inc.*, 989 N.Y.S.2d 826, 836 (Sup. Ct. N.Y. Cnty. 2014) (noting statements which tend to injure a plaintiff in their trade or business constitutes defamation per se); *Knutt v. Metro Int'l, S.A.*, 938 N.Y.S.2d 134, 137 (N.Y. App. Div. 2d Dep't 2012) (noting imputation of "serious" crimes to a plaintiff constitutes defamation per se).

*Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).  Where a plaintiff is a "public figure," the heightened standard of "actual malice" applies. *Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 296 (S.D.N.Y. 2023).  "Actual malice" involves "acting 'with knowledge that [the statement] was false or with reckless disregard of whether it was false or not.'" *Id.* (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).  Libel per se involves a libelous statement where the "defamatory meaning" is plain on the face of the statement itself, as opposed to those statements which are defamatory only with reference to extrinsic facts. *Id.* at 300.

Plaintiffs cannot maintain a claim on the two remaining categories of allegedly defamatory statements.  First, even assuming the truth of the allegations in the Amended Complaint, the statement that the Plaintiffs would soon be "locked up" is a statement of opinion.  Statements of opinion are not actionable in defamation cases.  *Hammer v. Amazon.com*, 392 F. Supp. 2d 423, 431 (E.D.N.Y. 2005).  Here, the statement that the Plaintiffs would soon be "locked up" is plainly understood as a hope for the Plaintiffs to face criminal sanctions for the conduct alleged by Humphries, Doherty, and others. Regardless of whether they were facing criminal charges, it was not a statement capable of being proven false.

Second, the alleged statement to Humphries (which is only considered timely granting an extremely favorable inference to Plaintiffs) fails as a matter of law because the Plaintiffs have failed to adequately allege actual malice.  The New York Anti-Strategic Litigation Against Public Participation ("Anti-SLAPP") statute, N.Y. Civ. Rts. L. § 76-a, requires a plaintiff to allege actual malice where the statements alleged "involv[e] public petition and participation" and relate to "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the

constitutional right of petition." *Id.* § 76-a(1)(a).  Courts have deemed allegations of sexual

assault, particularly among influential members of arts professions during the period of the

#MeToo movement, a matter of public interest.  *See Coleman v. Grand*, 523 F. Supp. 3d 244,

259 (E.D.N.Y. 2021); *Watson v. N.Y. Doe 1*, No. 19-cv-533 (JGK), 2023 WL 6540662, at *3-4

(S.D.N.Y. Oct. 6, 2023).

　　　　Here, Plaintiffs are attempting to obtain money damages against Doherty because she

joined a lawsuit and spoke on a matter of public concern (i.e., alleged sexual abuse in the dance

world).  That the matter of what happened between Plaintiffs and Doherty is a matter of public

concern cannot be meaningfully debated.  Indeed, Plaintiffs admit as much in their Amended

Complaint, which is replete with allegations that they are world-renowned artists working in

the dance industry (including Taylor, who was Dusty's photographer), with nearly half a million

social media followers each.  They state that the abuse allegations against them were published

in a number of high-profile publications.  They expressly connect the allegations against them

to the movement referred to as #MeToo. (ECF No. 41, at 20 ¶ 19.)  Based on the allegations in

the Amended Complaint, the Court is constrained to the inference that Doherty shared her

rape/sexual assault allegation with Humphries in connection with joining the Nevada Action

and sharing her experience in Panama.  Indeed, the Amended Complaint repeatedly insists that

Doherty and Humphries were closely coordinating their litigation efforts in Nevada.  Thus, it is

apparent from the pleading in this case that this statement was made in connection with

"public petition and participation" and relates to "lawful conduct in furtherance of the exercise

of the constitutional right of free speech in connection with an issue of public interest."

Accordingly, they must plead actual malice in order to survive a motion to dismiss.[25]

To reiterate, bald assertions and conclusions of law are not sufficient to survive a motion to dismiss. *Manolov*, 952 F. Supp. 2d at 531 (citing *Twombly*, 550 U.S. at 555). Indeed, courts will typically assess "actual malice from objective facts." *Celle*, 209 F.3d at 183. While the Complaint is replete with conclusory assertions that Doherty acted with actual malice, there are no facts pleaded to support those assertions. There is nothing inherently improbable about her story, and her source is her firsthand knowledge of the situation and her relationship with the Plaintiffs. While it is true that she voluntarily withdrew her claims in the Nevada Action against the Plaintiffs, the withdrawal by itself is not cause to conclude that she knew or should have known her claims were meritless. As a result, the defamation claims should be dismissed..

### b. Intentional Infliction of Emotional Distress

The New York statute of limitations on IIED claims is one year. N.Y. C.P.L.R. 215(3); *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016). Thus, the same two statements (that Plaintiffs would be "locked up" and that they "raped" Doherty) are the only ones relevant to consider for the purposes of the IIED claim. All other claims or facts potentially giving rise to an IIED claim are time-barred.

Under New York law, to prevail on a claim for intentional infliction of emotional distress, the plaintiff must show "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard or a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct

---

[25] Having concluded New York's Anti-SLAPP statute requires a showing of actual malice for the statements to Humphries, the Court does not reach the argument that the Plaintiffs are public figures.

and the injury; and (4) severe emotional distress." *Sorrell v. County of Nassau*, 162 F. Supp. 3d 156, 172 (S.D.N.Y. 2016) (internal quotation marks omitted) (citing *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009)). However, "allegations based on the content or consequences of the Nevada Action itself—such as emotional distress caused by the complaint—cannot support an intentional infliction of emotional distress claim [in New York], as such acts are not considered 'outrageous' or 'atrocious' in a legal sense." *See N.H. v. Graham*, 231 N.Y.S.3d 818 (N.Y. Sup. Ct. N.Y. Cnty. April 24, 2025) (citing *Kaye v. Trump*, 873 N.Y.S.2d 5 (1st Dept 2009)).

Moreover, neither of the statements as pleaded qualifies as "extreme and outrageous;" nor have Plaintiffs pleaded the requisite level of intent to cause severe emotional distress. New York law requires a much greater showing of outrageous or atrocious conduct than mere statements of sexual assault allegations to support a claim of IIED. *See Sylvester v. City of New York*, 385 F. Supp. 2d 431, 441-42 (S.D.N.Y. 2005) (noting "[a]llegedly lying about the circumstances surrounding [a man shot by police] does not rise to the level of" an IIED claim); *see also Kurschus v. PaineWebber, Inc.*, 16 F. Supp. 2d 386, 389-91, 394-95 (S.D.N.Y. 1998) (sustaining an IIED claim where defendants had allegedly orchestrated a sophisticated scheme not only to accuse plaintiff, falsely, of sex crimes but to have him actually arrested and charged with sodomy, resulting in his being abused by officers and inmates while in detention, with the charge ultimately dropped by a grand jury). Thus, the intentional infliction of emotional distress claim should be dismissed.

### c. Tortious Interference with Business Relations

Plaintiffs' claim for tortious interference with business relations wholly duplicates the

four defamation causes of action.  The Second Circuit has observed that New York considers tort claims for injury to reputation or "where the entire injury complained of by plaintiff flows from the effect on his reputation" to be defamation claims. *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012).  Plaintiffs here allege that "Defendants' defamatory statements were directed in part" at businesses with which Plaintiffs had existing and prospective business relations. *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 725-26 (S.D.N.Y. 2014).  Thus, these claims should be dismissed as duplicative of the defamation claims.[26]

---

[26] The statute of limitations on this claim, while normally three years, would be one year because the claims all relate to alleged defamation. *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 262 (S.D.N.Y. 2023); N.Y. C.P.L.R. 214; *Beter v. Murdoch*, No. 17-cv-10237 (GBD), 2018 WL 3323162, at *7 (S.D.N.Y. June 22, 2018). Where a cause of action sounding in defamation has "been disguised as other causes of action," meaning "a plaintiff's claims all involve the same allegedly false and defamatory statements, and all seek damages for injury to reputation, regardless of the terms in which a cause of action may be cast, the one-year limitations period for libel and slander applies." *Beter*, 2018 WL 3323162, at *7 (cleaned up).  Thus, this claim, if cognizable, would be largely time-barred to the extent it flows from defamatory statement made more than a year before this action was filed. To the extent it would not be time-barred, only the two statements noted under the defamation causes of action could be considered as interference.  The two alleged statements fail to state a cause of action for tortious interference with business relations.  "Under New York law, the elements of a claim for tortious interference" with business relations "are (1) a business relationship" between a plaintiff and a third-party; (2) "the defendant's knowledge [of] and intentional interference with that relationship; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *Restis*, 53 F. Supp. 3d at 725; *Guzik v. Albright*, No. 16-cv-2257 (JPO), 2018 WL 4386084 (S.D.N.Y. 2018).  First, they fail to allege timely "*specific*" existing business relationships with which Doherty or Pons allegedly interfered. *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 369 (S.D.N.Y. 2012).  Here, they fail to allege facts making it plausible their injuries were proximately caused by Defendants' alleged conduct. *Pride Techs., LLC v. Khublall*, No. 21-2225, 2022 WL 17587755, at *1 (2d Cir. 2022).  They also fail to explain what, if any, prospective contracts or business relationships were harmed as a result of the two potentially timely statements.  Here, they only lost contracts they specifically allege were potentially proximately caused by Doherty's or Pons's statements are those with the companies owned by Sepulveda and Wozniak or that occurred in 2021 or earlier. (ECF No. 41, at 126-27 ¶¶ 376-77; 159 ¶ 523.)  Further, there are no allegations that Pons or Doherty acted for an unlawful purpose or by unlawful means.  "[F]or [a] [d]efendants' interference to constitute the kind of 'wrongful means' that will support [a] claim for tortious interference, . . . (1) that conduct must amount to an independent crime or tort; (2) that conduct must have been taken solely out of malice; or (3) that conduct must amount to 'extreme and unfair' economic pressure." *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008).  "Simple persuasion" is not actionable. *Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 426 (E.D.N.Y. 2019).  Even granting Plaintiffs all favorable inferences, the pleadings as alleged do not support any inference that the Defendants' conduct rose to the level of an independent crime or tort, was done solely to injure Plaintiffs, or amounted to "extreme and unfair" economic pressure.  Accordingly, no plausible claim of tortious interference with business relations has been pleaded.

### d. Civil Conspiracy

New York does not recognize an independent cause of action for civil conspiracy; rather, it recognizes civil conspiracy only as a theory of liability to connect Defendants. *Heilbut v. Cassava Sciences, Inc.*, 24-cv-05948 (JLR), 2025 WL 919654, at *15 (S.D.N.Y. March 26, 2025). Thus, the claim should be dismissed for this reason. Further, to sustain a civil conspiracy theory for liability, a plaintiff "must allege [1] a cognizable cause of action, [2] agreement among the conspirators, [3] an overt act in furtherance of the agreement, [4] intentional participation by the conspirators in furtherance of a plan or purpose, and [5] damages." *Id.* (internal quotation marks omitted). Here, Plaintiffs' conclusory allegations of conspiracy are wholly insufficient to support such a theory against Doherty or Pons. Therefore, this clam should be dismissed.

### e. Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave [to amend a complaint] when justice so requires." Dismissal with prejudice is proper only where the deficiencies with the complaint are incurable. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming dismissal of complaint because "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it.") Where the Plaintiff is proceeding pro se, '[d]istrict courts should generally not dismiss a pro se complaint without granting the plaintiff leave to amend" unless amendment "would be futile." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013). It is "within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).

While it is true that Plaintiffs have already had the opportunity to amend after multiple opportunities to review the sufficiency of their allegations, this is the first such opportunity

after a motion to dismiss.  The Court accordingly recommends dismissing with prejudice only

the assault, battery, and malicious prosecution claims, which are indisputably time-barred, and

to which no facts can be asserted that equitable estoppel can apply.  Similarly, the claim for civil

conspiracy should be dismissed with prejudice as that claim is not cognizable.  The other claims

should be dismissed without prejudice in solicitude to the pro se Plaintiffs.

## CONCLUSION

For the reasons set forth above, the Court recommends that the motions at ECF Nos. 42

and 46 be granted and the Amended Complaint be dismissed in its entirety, with prejudice as to

the assault, battery, malicious prosecution, and civil conspiracy claims, and otherwise without

prejudice.

Dated: July 30, 2025                                                  Respectfully submitted,
       New York, New York


                                                                      _____
                                                                      Katharine H. Parker
                                                                      U.S. Magistrate Judge

## NOTICE

       **Plaintiffs shall have seventeen days and Defendants shall have fourteen days from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P.72(b)(2).**

       **Plaintiffs shall have seventeen days to serve and file any response. Defendant shall have fourteen days to serve and file any response. Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John P. Cronan at the United States Courthouse, 500 Pearl Street, New York, New York 10007-1312, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**