USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/13/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DUSTY BUTTON and MITCHELL TAYLOR
BUTTON,

                              Plaintiffs,

        -against-


JULIET DOHERTY and KRISTA KING-DOHERTY,

                              Defendants.

**REPORT & RECOMMENDATION
ON MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT**

**24-CV-5026 (JPC) (KHP)**

**TO:  HON. JOHN P. CRONAN, United States District Judge**
**FROM: HON. KATHARINE H. PARKER, United States Magistrate Judge.**

In this case, Plaintiffs Dusty and Mitchell Taylor Button, a dancer, choreographer and instructor and automotive designer, respectively, sue Juliet Doherty, a young dancer who lives in New York, and her mother Krista King-Doherty, who lives in New Mexico, claiming their stardom in the dance and automotive industry abruptly ended when Defendants conspired to defame them beginning in or around 2018, culminating in Doherty joining a lawsuit filed by several young dancers in the U.S. District Court for the District of Nevada against the Plaintiffs in 2021 (the "Nevada Action").  The Plaintiffs in the Nevada Action generally allege Plaintiffs sexually abused them.  Plaintiffs deny the allegations.

In response to the Nevada Action, Plaintiffs brought counterclaims and suits against all the plaintiffs in the Nevada Action and associated persons, asserting defamation and other causes of action contending generally that the plaintiffs in the Nevada Action injured them personally and professionally by accusing them of sexual abuse.  These cases were brought in various districts across the country.

1

The Buttons' prior amended complaint (the "First Amended Complaint") in this action was dismissed without prejudice as to some claims and with prejudice as to others.  They have now filed an amended pleading (the "Second Amended Complaint") claiming defamation, defamation by implication, tortious interference with prospective economic advantage, and intentional infliction of emotional distress against Doherty and King-Doherty. *See Button v. Doherty*, No. 24 Civ. 5026, 2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025), *report and recommendation adopted*, 2025 WL 2846927 (S.D.N.Y. July 30, 2025).  Before the Court is Defendants' motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). (ECF No. 83).  For the reasons that follow, I recommend granting the motion in full and dismissing all of Plaintiffs' claims with prejudice.

## BACKGROUND FACTS

### 1.  Overview of Parties and Claims

Familiarity with the facts is presumed. *See Button v.* Doherty, No. 24 Civ. 5026, 2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025), *report and recommendation adopted*, 2025 WL 2846927 (S.D.N.Y. July 30, 2025).  The Court notes only the pertinent facts on this motion and those matters of public record of which it can take judicial notice.[1]

According to the Plaintiffs, their business and reputations were ruined by false accusations by Defendants (and others) that Plaintiffs abused young dancers (sexually and otherwise).  In 2021, several dancers filed a lawsuit against the Buttons alleging the same,

---

[1] The Court derives the facts from the Second Amended Complaint, which are assumed to be true for purposes of this motion.  The Court also takes judicial notice of court filings in other cases in which the Buttons are parties, though not for the truth of the matter asserted in those filings. *Doe v. State Univ. of N.Y. Purchase College*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)); *see also Casey v. Odwalla*, 338 F. Supp. 3d 284, 293–94 (S.D.N.Y. 2018) (stating that "[c]ourts may also take judicial notice of public documents or matters of public record").

through their counsel, Sigrid McCawley, an attorney at the Boies Schiller Flexner law firm. *Humphries et al. v. Button*, No. 21-cv-01412 (D. Nev 2021).  Doherty joined the Nevada Action on or about December 13, 2021. *Humphries et al. v. Button,* No. 21 Civ. 01412 (D. Nev. 2021), ECF No. 35.  The Buttons brought counterclaims for abuse of process and civil conspiracy against Doherty and other plaintiffs in the Nevada Action, but on August 12, 2022, they filed amended counterclaims that removed the claims against Doherty. *See generally Humphries et al.*, No. 21 Civ. 01412, ECF Nos. 54, 67.  Thereafter, on February 24, 2023, Doherty voluntarily withdrew her claims in the Nevada Action purportedly because Plaintiffs harassed her online. (ECF No. 79 ("Second Amended Compl.") ¶¶ 3, 46); *Humphries et al.,* No. 21-cv-01412, ECF No. 132.  The Nevada Action is ongoing. *Humphries et al.,* No. 21-cv-01412.

Plaintiffs allege that Defendants engaged in a defamation campaign "[b]eginning as early as February 2023 and continuing through 2023, 2024, and 2025," by contacting professional and industry colleagues and repeating "false statements that Plaintiffs 'drugged and raped' Juliet" and that the Plaintiffs were "child predators." (Second Amended Compl. ¶ 3). Plaintiffs allege that they suffered other adverse consequences as a result of the sexual abuse allegations against them, including loss of employment and loss of business relationships and opportunities. *Id.* ¶¶ 5–6.

### 2.    The Alleged Defamatory Statements

Plaintiffs' Second Amended Complaint now asserts that Doherty's statements about them, made from 2023 to 2025, differ materially from statements Doherty made in the Nevada Action and are far more serious, insofar as she has accused Plaintiffs of "serial predation, child exploitation, and ongoing criminal acts." *Id.* ¶¶ 18–19.  Plaintiffs allege that Defendants acted

3

with "reckless disregard for the truth" when accusing them because they knew and know the accusations are false. *Id.* ¶¶ 22–23, 46.  Among other things, Plaintiffs assert that Doherty was an adult—contrary to the claims Plaintiffs allege she and King-Doherty made regarding her status as a minor. *Id.*

Plaintiffs provide scant details of the alleged defamatory statements made from 2023 to 2025.  They do not provide specific dates on which statements were made.  They do not provide where the statements were made.  They state generally that defamatory statements were made to an individual from Cosmopolitan Magazine—Michael Humphries, Micah Humphries, Kim Comelek, Erin Quinlan. *Id.* ¶ 22.  They then list the following alleged defamatory statements without explaining which of the Defendants made the statements, the manner of communication, or to whom they were made:

- "Dusty and Mitchell raped Juliet,"

- "Juliet was drugged by the Buttons,"

- "Juliet was a minor,"

- "the Buttons prey on young dancers,"

- "the Buttons are child predators,"

- "Juliet withdrew from Nevada because she was harassed by the Buttons,"

- "the Buttons are going to prison,"

- that "they would "make sure the Buttons are known as child predators,"

- "the Buttons have been charged," and

- "the Buttons are going to be arrested."

*Id.*

4

Plaintiffs further allege that these same statements were repeated to other journalists in early 2023 and July 2023 without providing the names of the journalists, the manner of communication, or any specifics. *Id.* ¶¶ 24–25.  They also assert that Doherty said at some unidentified time to an unidentified person that she "stands by her claim she was raped and drugged in another country." *Id.*

Additionally, Plaintiffs allege that between Fall 2023 and Fall 2025, Defendants repeated the above-listed defamatory statements (or statements like them) to additional recipients including:  "Slawomir Wozniak Sr. & Jr., Ivan & Diego Sepulveda, Kennedy Brown, Madison Breshears, Cary Ballet Conservatory, YAGP (NY), Master Ballet Academy, Discount Dance, Bloch Dance, World Ballet Competition, Boston Magazine journalist, Micah Humphries, Martino Auto Concepts, Ferrari New York, Other industry professionals, Facebook dance-community groups, . . . Nigel Lythgoe, Jason Lavengood (known as @timber.no on social media, David Hoffman (known as @sharkcookie on social media), Complexions (contemporary ballet company), Members of American Ballet Theatre, Red Bull, Tia Wenkman, Tana Wenkman, Kenneth B. Edwards."[2] *Id.* ¶¶ 31–32.  Plaintiffs generally assert that these statements were made through direct communication channels, including social media, "industry messaging," group chats, Facebook groups, emails, and private message threads. *Id.* ¶¶ 33–35, 45.  They do not, however, tie specific comments to specific channels, provide specific dates, or say which statements were made to whom.

Plaintiffs allege that King-Doherty used her industry connections to "disseminate her

---

[2] These specific statements were:  that Plaintiffs "raped Juliet, drugged Juliet, prey on minors, sexually exploit dancers, threatened Juliet, caused her to withdraw from Nevada, are going to prison, were 'charged,' have been arrested, and are 'dangerous predators.'" *Id.* ¶ 32.

defamatory accusations to individuals in positions of hiring, influence or editorial discretion" to ensure Plaintiffs' position in their respective industries would suffer. *Id.* ¶¶ 25–27.  The most specific instance Plaintiffs cite is that Defendants allegedly "contacted SEMA beginning in 2022 and continuing into 2023, including renewed statements in early 2023, stating that Mitchell Button and 'his wife' were sexual predators" that should not be affiliated with SEMA.[3]  Finally, they assert that during discovery in the Nevada Action, Doherty "repeated to Sage Humphries the accusation that Plaintiffs raped her." *Id.* ¶ 29.

According to Plaintiffs, the alleged defamation caused a "complete professional destruction." *Id.* ¶ 37.  "As a direct and proximate result of Defendants' conduct," Plaintiffs claim they no longer work in their respective industries and have been completely unemployed since 2021.[4] *Id.* ¶¶ 39, 41.  Plaintiffs state that they have "severe anxiety and PTSD," "shattered reputations," experienced "social ostracism," and a "loss of professional relationships built over 20 years." *Id.* ¶ 41.

## LEGAL STANDARDS

King-Doherty, who as noted above is a resident of New Mexico, moves to dismiss the claims against her on the ground that this Court lacks personal jurisdiction over her. (ECF No. 84 ("Motion to Dismiss"), at 6–7).  Doherty moves to dismiss her lawsuit on the grounds that the

---

[3] Plaintiffs do not identify what company or organization "SEMA" is purported to be.  Generally, courts "may take judicial notice" of "'matters of common knowledge' and 'facts capable of verification.'" *United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (quoting FED. R. EVID. 201(b) advisory committee's note to 1972 amendment). However, here, Plaintiffs have provided little context as to whether SEMA is an organization tied to the dance or automotive industry—both industries Plaintiffs claim to have had a significant presence in—therefore, this is a fact not capable of verification.

[4] Dusty Button allegedly lost product partnerships with Bloch, and Mitchell Taylor Button was allegedly "blacklisted" despite being a "previously successful automotive designer." *Id.* ¶¶ 38–40.

claims are compulsory counterclaims and were forfeited when the Buttons did not bring them in the Nevada Action. *Id.* at 8–9. She and King-Doherty also move to dismiss for failure to state a claim, including because some claims are time-barred. *Id.* at 9–25. Ultimately, both Defendants request that the Second Amended Complaint be dismissed in its entirety with prejudice. *Id.* at 25–26.

### 1. **Personal Jurisdiction**

Under Rule 12(b)(2), a defendant may move for dismissal for lack of personal jurisdiction over a defendant. "The requirement that a court have personal jurisdiction flows not from Art. III [of the U.S. Constitution], but from the Due Process Clause . . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, [the] plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Lit.*, 334 F.3d 204, 206 (2d Cir. 2003). When no discovery has taken place, to survive a motion to dismiss, the "plaintiff may meet this burden by pleading in good faith . . . legally sufficient allegations of jurisdiction, *i.e.*, by making a prima facie showing of jurisdiction." *Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, No. 06 Civ. 07S, 2007 WL 894217, at *3 (W.D.N.Y. Mar. 21, 2007) (internal quotation marks omitted) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998)). "A plaintiff can make such a prima facie showing through affidavits and supporting materials containing sufficient facts which, if credited, would establish personal jurisdiction over the defendant." *Id.* (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). "[W]here the issue is addressed on affidavits, all allegations are

7

construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).  Further, courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

### 2.  **Statute of Limitations**

Ordinarily, courts do not consider a statute of limitations affirmative defense on a motion to dismiss. *Essex Cap. Corp. v. Garipalli*, No. 17 Civ. 06347, 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018).  However, if the complaint pleads dates showing "that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss" under Rule 12(b)(6). *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

### 3.  **Failure to State a Claim**

For a complaint to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions or formulaic recitation of the elements of a cause of action[]." *Id.* (internal quotation marks omitted).  In assessing a motion to dismiss, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions

couched as factual allegations." *Stadnick v. Lima*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotations omitted) (citing *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010)).

When evaluating a motion to dismiss, a court may consider "any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, documents that are 'integral' to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken." *See Donoghue v. Gad*, No. 21 Civ. 7182, 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022). These same standards apply to motions to dismiss complaints filed by pro se plaintiffs. *Jenkins v. N.Y.C. Dep't of Educ.*, No. 10 Civ. 6159, 2011 WL 5451711, at *3 (S.D.N.Y. Nov. 9, 2011). However, the court must construe a pro se plaintiff's complaint liberally and interpret it as raising the strongest arguments it suggests. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

**DISCUSSION**

1. **Personal Jurisdiction over King-Doherty**

Because jurisdiction here is premised on diversity, the Court looks to New York's long-arm statute to evaluate whether personal jurisdiction is proper. *Bresciani v. Leela Mumbai-A-Kempinski Hotel*, 311 F. Supp. 2d 440, 444 (S.D.N.Y. 2004); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) ("To answer th[e] question [of personal jurisdiction over a defendant], we look first to the law of the State of New York, in which the district court sits."). If the defendant's contacts with the forum are not "continuous and systematic" such that they would be sufficient for the exercise of general jurisdiction, the Court must assess whether it has specific jurisdiction to hear the claims. *See Metro. Life Ins. Co. v. Robertson-Ceco*

*Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996).

King-Doherty is a resident of New Mexico. (Second Amended Compl. ¶ 11). Furthermore, although Plaintiffs allege that King-Doherty "conducts business with multiple New York–based institutions including . . . Youth America Grand Prix and Pointe Magazine" and "directed" the alleged defamatory statements there, these allegations are not specific enough to establish "continuous and systematic" contacts with New York to support an exercise of general jurisdiction over King-Doherty. *Two's Co., Inc. v. Hudson*, No. 13 Civ. 3338, 2014 WL 903035, at *2, 5–6 (S.D.N.Y. Mar. 6, 2014) (finding that where a defendant did not have a place of business, phone number, or company registration in New York, but rather merely had a few transactions in New York, the conduct did not arise to the level of continuous or systematic); *Wallert v. Atlan*, 141 F. Supp. 3d 258, 271–73 (S.D.N.Y. 2015) (finding that where a complaint alleged that defendant contracted with New York–based clearinghouses and collaborated with New York–based producers, the allegations fell short of establishing continuous and systematic contacts).  Therefore, the Court directs its attention to whether it has specific jurisdiction over King-Doherty.

To determine if a court has personal jurisdiction, "[a] court must undertake a two-step inquiry." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 228 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018).  First, the court asks whether the forum state would subject the defendant to personal jurisdiction. *Tannerite Sports, LLC*, 135 F. Supp. 3d at 228; *see also DeLorenzo,* 757 F. App'x at 8.  If New York would subject the out-of-state defendant to jurisdiction, the court asks whether the exercise of jurisdiction over the out-of-state defendant

"comports with the Due Process Clause of the United States Constitution." *Tannerite Sports, LLC*, 135 F. Supp. 3d at 228; *see also DeLorenzo,* 757 F. App'x at 8.

New York Civil Practice Law and Rule 302 ("N.Y. C.P.L.R. 302") is New York's long-arm statute that provides for specific jurisdiction over a defendant under certain circumstances. *DeLorenzo*, 757 F. App'x at 8–9 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are four categories of conduct that justify specific jurisdiction under New York law, including:  (1) transacting business within the state or supplying services in the state; (2) committing a tortious act within the state, "except as to a cause of action for defamation of character arising from the act"; (3) committing a tortious act outside of the state "causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business in the state," or (ii) "should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce"; and (4) using or possessing real property within the state. N.Y. C.P.L.R. 302(a).

The only possible basis for exercising jurisdiction over King-Doherty is subsection (1) as to the defamation claims and subsections (1) and potentially (2) with respect to the other tort claims—tortious interference with prospective economic advantage and intentional infliction of emotional distress.  This is because Plaintiffs are not within New York, and the conduct does not relate to real property. (Second Amended Compl. ¶¶ 8–9).  To establish jurisdiction over a non-domiciliary defendant under N.Y. C.P.L.R. 302(a)(1), a plaintiff must show that the defendant (1) "transacts any business within the state" and that (2) the plaintiff's claim arises from the business that the non-domiciliary transacted in New York. *Licci ex rel. Licci v. Lebanese*

11

*Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citing N.Y. C.P.L.R. 302(a)(1)).  Transacting

business in the state requires a showing of "purposeful activity"—meaning an act by which the

defendant "purposefully avails itself of the privilege of conducting activities within the forum

[s]tate." *Best Van Lines*, 490 F.3d at 246–47 (cleaned up).  Further, the Second Circuit has

observed that "New York courts do not interpret 'transact[ing] business' to include mere

defamatory utterances sent into the state." *Id.* at 248.  Although a single act of transacting

business might satisfy New York's test to exercise personal jurisdiction in some cases,

defamation cases are treated differently, and statements made outside the state directed at

the state do not, alone, permit an exercise of personal jurisdiction over a non-resident—there

must be additional conduct beyond a mere defamatory utterance. [5] *Id.* (collecting cases); *see*

*also Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 662 (S.D.N.Y. 2020) (finding that the

plaintiff had sufficiently pled "something more" when the complaint sufficiently alleged that

the defendant had contracts to distribute with New York–based channels, maintained a studio

and employed a camera crew in New York, and conducted the subject interview in New York).

In particular, at least part of the defamatory content must have been "created, researched,

written, developed, or produced in New York." *Prince*, 634 F. Supp. 3d at 129 (quoting *Goldfarb*,

442 F. Supp. 3d at 662).  Additionally, for the plaintiff's claim to arise from the business

transaction, there must be "an articulable nexus, or a substantial relationship" between the

business transaction and the claim. *Id.* at 246, 249.  A "court must look at the totality of the

circumstances to determine the existence of purposeful activity and may not subject the

---

[5] New York courts have stated that defamation is treated differently under New York's long-arm statute because "the Advisory Committee intended to avoid unnecessary inhibitions on freedom of speech or the press." *Best Van Lines, Inc.*, 490 F.3d at 245 (quoting *Legros v. Irving*, 38 A.D.2d 53, 55–56 (N.Y. App. Div. 1971)).

defendant to jurisdiction based on 'random,' 'fortuitous,' or 'attenuated' contacts." *Madison*

*Cap. Markets, LLC v. Starneth Eur. B.V.*, No. 15 Civ. 7213, 2016 WL 4484251, at \*9 (S.D.N.Y. Aug.

23, 2016) (quoting *Aquiline Cap. Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 387 (S.D.N.Y.

2012)) (first internal quotation marks omitted).

Plaintiffs have alleged King-Doherty made statements to journalists and publications;

"used her existing New York industry relationships . . . to disseminate her defamatory

accusations to individuals in positions of hiring, influence, or editorial discretion"; and made

defamatory statements to Ballet West, Block, Discount Dance, and SEMA, along with other

individuals, through social media and individual and group messages. (Second Amended Compl.

¶¶ 22, 25–28, 31–33, 35).  As with the First Amended Complaint, there are no clear allegations

in the Second Amended Complaint regarding any specific business transactions in which King-

Doherty was engaged in New York that have a nexus to the claims asserted against her.  Nor do

Plaintiffs allege that King-Doherty made any defamatory statements in New York or engaged in

other tortious conduct while in New York.  Although Plaintiffs point generally toward their loss

of business and sponsorships, this allegation is insufficient to establish that King-Doherty

conducted business in New York and that her alleged tortious conduct arises from that

business. *Id.* ¶¶ 38–39, 61.

In sum, Plaintiffs have failed to meet the required showing for the Court to exercise

general or specific jurisdiction over King-Doherty.  The claims against King-Doherty should

therefore be dismissed for lack of personal jurisdiction under Rule 12(b)(2).

### 2. <u>Whether Plaintiffs Have Stated Plausible Claims Against Doherty and Pons Under New York Law</u>

As for the claims made against Doherty, Doherty argues that some of Plaintiffs' claims are

barred by applicable statute of limitations and that Plaintiffs otherwise fail to state plausible claims.

### A. Defamation Claims

#### i. <u>Time-Barred Claims</u>

New York applies a one-year statute of limitations on defamation claims (whether libel or slander). N.Y. C.P.L.R. 215(3).  New York follows the "single publication rule," under which the statute of limitations runs from the date of the first publication of a statement which is widely distributed or republished. *Firth v. State*, 775 N.E.2d 463, 464-65 (2002).  "Republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.'" *Id.* at 466; *see also Comolli v. Huntington Learning Ctrs., Inc.*, 117 F. Supp. 3d 343, 349 (S.D.N.Y. 2015).  Additionally, "New York law clearly holds that causes of action sounding . . . in defamation . . . accrue at the time of publication, not at the time of discovery of the allegedly defamatory statement." *ACTV, Inc. v. Walt Disney Co.*, No. 01 Civ. 8402, 2002 WL 922172, at *2 (S.D.N.Y. May 7, 2002).

The Complaint was initially filed in this case on June 27, 2024.  Therefore, any statements made before June 27, 2023, are time-barred. *See Button v. Doherty*, No. 24 Civ. 5026, 2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025), *report and recommendation adopted*, 2025 WL 2846927, at *21 (S.D.N.Y. July 30, 2025).  Plaintiffs allege several statements in their Second Amended Complaint that pre-date June 27, 2023:  (1) In February and March of 2023, Plaintiffs allege that Defendants made alleged defamatory statements to "Michael Humphries, Micah Humphries, Kim Comelek, Erin Quinlan (Cosmopolitan Magazine) and others"; (2) Plaintiffs

14

allege that these accusations were repeated "to other publications in early 2023"; and (3)

Plaintiffs allege that "Defendants contacted SEMA beginning in 2022 and continuing into 2023,

including renewed statements in early 2023 stating that [Plaintiffs] were sexual predators and

should not be sponsored or allowed to attend SEMA." (Second Amended Compl. ¶¶ 22–24, 28,

29).  Therefore, insofar as these statements pre-date June 27, 2023, they are time-barred and

should be dismissed.

Additionally, although republication of a defamatory statement can sometimes give rise

to a new cause of action and is an exception to the single publication rule, a plaintiff cannot

avoid the statute of limitations by alleging that a defendant repeated a time-barred statement

to the same audience within the statute of limitations period.  The republication exception

requires that the statement differ in kind from the original defamatory statement and reach a

new audience. *Firth*, 775 N.E.2d at 466 (stating that the justification for the republication

exception "is that the subsequent publication is intended to and actually reaches a new

audience" and that the republication exception did not apply when "it is not reasonably

inferable that the addition was made either with the intent or the result of communicating the

earlier and separate defamatory information to a new audience"); *Hoesten v. Best*, 34 A.D.3d

143, 150–51 (N.Y. App. Div. 2006) (finding that a defendant did not republish alleged

defamatory remarks when she presented a summary of various complaints to executives, who

had previously been made aware of the complaint because there was no new audience and the

reported information was identical); *Giuffre v. Dershowitz*, 410 F. Supp. 3d. 564, 572–73

(finding that a defendant could not find shelter in the statute of limitations since he had

republished the statement to a new audience, including a bevy of other publications, such as

15

the Miami Herald, CNN, the NY Daily News, The Crimson, and Vanity Fair)*; Colantonio v. Mercy Med. Ctr.*, 115 A.D.3d 902, 903–04 (N.Y. App. Div. 2014) (stating that where defendants' statements "differ[ed] substantially in scope, detail and descriptive content from the originally published documents," the single publication rule did not apply).  Several of the post-June 27, 2023 statements listed in the Second Amended Complaint are merely restatements of the same alleged words to the same people.  These include the statements to SEMA continuing into 2023 and Doherty's alleged repetition to Sage Humphries, another alleged victim, that "Plaintiffs raped her." (Second Amended Compl. ¶¶ 28–29).  Because the specific audiences remained the same—respectively, SEMA and Humphries—and the Plaintiffs do not allege that the substance of the statements changed in either instance, these statements are not actionable as separate defamatory statements.

ii.  <u>Timely Claims</u>

Defendants assert that the defamation claims as to the other post-June 27, 2023 statements fail regardless because Plaintiffs have not provided sufficient facts to render them plausible.  This Court agrees.  Plaintiffs present two theories of defamation:  (1) direct defamation (libel and slander) and (2) defamation by implication. As noted above, the Court looks to New York substantive law to evaluate these claims.  "Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (internal quotation marks omitted). "Generally, spoken defamatory words are slander; written defamatory words are libel." *Id.*  To state a prima facie claim for defamation under New York law, "the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or

privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citing *Dillon v. City of New York*, 704 N.Y.S. 2d 1, 5 (N.Y. App. Div. 1999)).  New York courts encourage the resolution of "defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.'" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (quoting *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 828 (1995)).

"The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert*, 239 F.3d  at 265–66.  "'Special harm' means 'the loss of something having economic or pecuniary value.'" *Id.* at 271 (citing *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (1992)) (cleaned up).  "The four categories of statements that have historically constituted slander per se in New York are those that (i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman." *Id.* (citing *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (1992)).

To show a cause of action for libel, a plaintiff must plausibly allege (1) the defendant made "a written defamatory statement of fact concerning the plaintiff," which they (2) published to a third party, with (3) "fault," meaning negligence regarding the truth of the statement (or, under certain circumstances, actual malice regarding its falsity); (4) "the falsity of

17

the defamatory statement"; and (5) "special damages or per se actionability." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).

Where a plaintiff is a "public figure," the heightened standard of "actual malice" applies. *Goldfarb*, 663 F. Supp. 3d at 296.  "Actual malice" involves "acting 'with knowledge that [the statement] was false or with reckless disregard of whether it was false or not.'" *Id.* (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).  Libel per se involves a libelous statement where the "defamatory meaning" is plain on the face of the statement itself, as opposed to those statements which are defamatory only with reference to extrinsic facts. *Id.* at 300.

For the post-June 27, 2023 statements, Plaintiffs assert that in July 2023, Doherty made the following defamatory statements to a Cosmopolitan Magazine journalist:

> "Dusty and Mitchell raped Juliet, Juliet was drugged by the Buttons, Juliet was a minor . . . the Buttons prey on young dangers, the Buttons are child predators, Juliet withdrew from Nevada because she was harassed by the Buttons, the Buttons are going to prison . . . the Buttons have been charged, the Buttons are going to be arrested," and that the Plaintiffs would "make sure the Buttons are known as child predators." (Second Amended Compl. ¶¶ 22–25).

Plaintiffs further allege that Doherty made statements to unspecified industry professionals "that Plaintiffs drugged and raped Juliet and preyed on minors." *Id.* ¶ 26.  Plaintiffs do not allege any dates for these statements. *Id.*  Finally, Plaintiffs allege that between Fall 2023 and Fall 2025, Defendants made defamatory statements to a slew of enumerated individuals—"Slawomir Wozniak Sr. & Jr., Ivan & Diego Sepulveda, Kennedy Brown, Madison Breshears, Cary Ballet Conservatory, YAGP (NY), Master Ballet Academy, Discount Dance, Bloch Dance, World Ballet Competition, Boston Magazine journalist, Micah Humphries, Martino Auto Concepts, Ferrari New York, Other industry professionals, Facebook dance-community groups, . . . Nigel Lythgoe, Jason Lavengood (known as @timber.no on social media, David Hoffman (known as

@sharkcookie on social media), Complexions (contemporary ballet company), Members of American Ballet Theatre, Red Bull, Tia Wenkman, Tana Wenkman, Kenneth B. Edwards"— alleging that the Plaintiffs raped, drugged, threatened, and caused Doherty to withdraw from the Nevada action; that Plaintiffs "prey on minors [and] sexually exploit dancers"; and that Plaintiffs were "going to prison" and "were 'charged.'" *Id.* ¶¶ 31–33.  Plaintiffs allege that these statements occurred through a variety of means including private messages, social media posts, and "industry messaging." *Id.* ¶ 33.  They do not specify specific dates or tie specific methods of communication to specific statements or people.

To start, even assuming the truth of the allegations in the Second Amended Complaint, the comments that the Plaintiffs are "child predators" and the statement that "the Buttons are child predators" are hyperbolic and inactionable opinion. (Second Amended Compl. ¶ 22); *see, e.g.*, *Rosa v. Eaton,* No. 23 Civ. 6087, 2024 WL 3161853, at *3 (S.D.N.Y. June 25, 2024) (noting terms such as "scum," "predators," "greedy crooks," and "criminals preying on [street art] culture" were too vague and imprecise, as well as hyperbole and nonactionable opinion); *Uribe v. Nieves*, No. 17 Civ. 5155, 2022 WL 17770288, at *6 (E.D.N.Y. Sept. 13, 2022) (finding that statements that a plastic surgeon was a "butcher," "scammer doctor," and "money hungry" were slang and hyperbole, and therefore inactionable opinion); *Graham v. UMG Recordings, Inc.*, 806 F. Supp. 3d 454, 472–73 (S.D.N.Y. 2025) (finding that Kendrick Lamar's naming of Drake as a "pedophile" in a commercially successful rap diss track was not a statement of fact, but rather inactionable opinion when placed in the factual context).  Nor are such statements without some basis, in that the allegations actually made against the Plaintiffs in the Nevada Action involve multiple parties who allege the Plaintiffs sexually harassed and abused them

19

when they were minors. See *Humphries et. al v. Button*, No. 21 Civ. 01412, ECF No. 221 ¶¶ 42–

122, 218–28.  The same reasoning applies to the statement that "the Buttons are going to be

arrested" and "are going to be arrested," as this Court previously found in addressing the

"statement that the Plaintiffs would soon be 'locked up'" in the First Amended Complaint. *See*

*Button v. Doherty*, No. 24 Civ. 5026, 2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025)*, report and*

*recommendation adopted*, 2025 WL 2846927, at *15 (S.D.N.Y. July 30, 2025) (finding that such a

statement "is plainly understood as a hope for the Plaintiffs to face criminal sanctions for the

conduct alleged" and one that could not be proven false).  Furthermore, insofar as these

statements were made on social media and in online forums, New York courts have found such

platforms to be "fora for stating opinions." *Rosa*, 2024 WL 3161853, at *4; *Uribe*, 2022 WL

17770288, at *6.

The remaining statements also do not give rise to a plausible defamation claim because

the Plaintiffs have failed to adequately allege actual malice and otherwise as pleaded are too

vague and conclusory as to when the statements were made, how they were made and to

whom.  The New York Anti-Strategic Litigation Against Public Participation ("Anti-SLAPP")

statute, New York Civil Rights Law § 76-a, requires a plaintiff to allege actual malice where the

statements alleged "involv[e] public petition and participation" and relate to "lawful conduct in

furtherance of the exercise of the constitutional right of free speech in connection with an issue

of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y.

Civ. Rts. L. § 76-a(1)(a).  Courts have deemed allegations of sexual assault, particularly among

influential members of arts professions during the period of the #MeToo movement, a matter

of public interest.  *See Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021) (finding that

a defendant must prove that a plaintiff acted with actual malice when speaking on a matter of public interest, as broadly determined under the Anti-SLAPP statute); *Watson v. N.Y. Doe 1*, No. 19 Civ. 533, 2023 WL 6540662, at *3–4 (S.D.N.Y. Oct. 6, 2023) (finding that a defendants' posts on an industry website related to sexual assault claims brought against plaintiff fell into the scope of New York's Anti-SLAPP statute).

As this Court has previously found, Plaintiffs are attempting to obtain money damages against Doherty because she joined a lawsuit and spoke on a matter of public concern (i.e., alleged sexual abuse in the dance world).  That the matter of what happened between Plaintiffs and Doherty is a matter of public concern cannot be meaningfully debated.  Indeed, Plaintiffs admit as much in their Second Amended Complaint, which is replete with allegations that they are world-renowned artists working in the dance and automotive industries, with deep industry connections. (Second Amended Compl. ¶¶ 8, 9, 38–40).  They point to conversations the Defendants allegedly had with Cosmopolitan magazine and other unnamed journalists and publications. *Id.* ¶¶ 22–25, 31.  Further, the Plaintiffs allege that these comments occurred across "direct communication channels," but also through Facebook groups and social media. *Id.* ¶ 32. Thus, it is apparent from the pleading in this case that the remaining post-June 27, 2023 statements were made in connection with "public petition and participation" and relate to "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest."  Accordingly, as this Court previously concluded, the Defendants must plead actual malice in order to survive a motion to dismiss.[6]

---

[6]Having concluded New York's Anti-SLAPP statute requires a showing of actual malice for the statements, the Court does not reach the argument that the Plaintiffs are public figures.

Courts typically assess "actual malice from objective facts," looking to the "defendant's own actions or statements, the dubious nature of his sources, and the inherent improbability of [her] story among other circumstantial evidence." *Celle*, 209 F.3d at 183.  Although the Second Amended Complaint is replete with conclusory assertions that Doherty acted with actual malice, there are no facts pleaded to support those assertions.  This is insufficient to plausibly plead actual malice. *See Cassava Sciences, Inc. v. Bredt*, No. 22 Civ. 9409, 2024 WL 1347362, at *24 (S.D.N.Y. Mar. 8, 2024) (finding that where the plaintiffs had alleged bias, access to contradictory information, common knowledge, and a general improbability of the defamatory statements' truth, there still was not enough evidence to make the assertions of actual malice persuasive)*; Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 179–80 (S.D.N.Y. 2024) (finding that a plaintiff that failed to provide any additional supporting facts regarding the defendant's state of mind, failed to plead actual malice).  Plaintiffs merely assert that Doherty knew the statements were false because she never made the claims in her Nevada pleadings; she was an adult, not a minor; and she withdrew from the Nevada action without making these allegations. (Second Amended Compl. ¶ 46).  However, there is nothing inherently improbable about Dougherty's story, and her source is her firsthand knowledge of the situation and her relationship with the Plaintiffs.  Additionally, as to Plaintiffs' allegations that Doherty lied when making the statement itself—"Juliet was a minor"—these allegations lack sufficient detail. *Id.* ¶ 22. Further, as this Court has previously found, Doherty's withdrawal from the Nevada action is not cause to conclude that she knew or should have known her claims were meritless. *See generally Button v. Doherty*, No. 24 Civ. 5026, 2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025), *report and recommendation adopted*, 2025 WL 2846927 (S.D.N.Y. July 30, 2025).  Therefore, Plaintiffs have

22

failed to allege actual malice, a required element of their defamation claims.  As a result, the remaining defamation claims should be dismissed.

Further, as was true in the First Amended Complaint, the Buttons' allegations are far too conclusory to state a claim of defamation. *See Manolov v. Borough of Manhattan Community College*, 952 F. Supp. 2d 522, 531 (S.D.N.Y. 2013) (citing *Twombly*, 550 U.S. at 555) (dismissing defamation claim when pleading failed to provide precise dates and other specifics about the alleged defamatory statement); *Rodgers-King v. Candy Digital Inc.*, No. 23 Civ. 2591, 2024 WL 382092 (S.D.N.Y. Feb. 1, 2024) (finding that where a plaintiff did not allege when the statements were made or who made them, his complaint lacked the required specificity to survive a motion to dismiss); *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790–91 (S.D.N.Y. 2019) (finding that where a plaintiff only pleaded the specific month that a statement was made, the allegation failed to "meet the particularity requirement under New York law").

For the above reasons, the defamation and defamation by implication claims should be dismissed.

### B.  Intentional Infliction of Emotional Distress

The New York statute of limitations on intentional infliction of emotional distress ("IIED") claims is one year. N.Y. C.P.L.R. 215(3); *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016).  Thus, as with the defamation claims, all the claims enumerated previously as being time-barred, are also time-barred as it relates to Plaintiffs' IIED claims. *See supra*.

Under New York law, to prevail on a claim for intentional infliction of emotional distress, the plaintiff must show "(1) extreme and outrageous conduct, measured by the reasonable

23

bounds of decency tolerated by society; (2) intent to cause or disregard or a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Sorrell v. County of Nassau*, 162 F. Supp. 3d 156, 172 (S.D.N.Y. 2016) (internal quotation marks omitted) (citing *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009)).  The post-June 27, 2023 statements as pleaded do not qualify as "extreme and outrageous" conduct; nor have Plaintiffs pleaded the requisite level of intent to cause severe emotional distress.  New York law requires a much greater showing of outrageous or atrocious conduct than mere statements of sexual assault allegations to support a claim of IIED. *See Sylvester v. City of New York*, 385 F. Supp. 2d 431, 441-42 (S.D.N.Y. 2005) (noting "[a]llegedly lying about the circumstances surrounding [a man shot by police] does not rise to the level of" an IIED claim); *see also Kurschus v. PaineWebber, Inc.*, 16 F. Supp. 2d 386, 389-91, 394-95 (S.D.N.Y. 1998) (sustaining an IIED claim where the defendants had allegedly orchestrated a sophisticated scheme not only to accuse the plaintiff, falsely, of sex crimes but to have him actually arrested and charged with sodomy, resulting in his being abused by officers and inmates while in detention, with the charge ultimately dropped by a grand jury).  Furthermore, Plaintiffs have not pleaded any facts demonstrating that Doherty had the requisite intent to cause emotional distress, rather Plaintiffs have merely included conclusory statements in their Second Amended Complaint. (Second Amended Compl. ¶¶ 63–69).  Thus, the intentional infliction of emotional distress claim should be dismissed.

### C. Tortious Interference with Business Relations

Plaintiffs' claim for tortious interference with business relations wholly duplicates their defamation claims.  In New York, to survive dismissal of a tortious interference with business

24

relations/prospective economic advantages claim, there must be a contractual or prospective contractual relationship between the plaintiff and a third party, knowledge by the defendant of the relationship/prospective relationship, intent to harm the plaintiff by interfering with the relationship, the absence of privilege or justification by the defendant, and actual harm as a result of the defendant's conduct. *See Winter-Wolff Int'l, Inc. v. Alcan Packaging Food & Tobacco Inc.*, 499 F. Supp. 2d 233, 242 & n.4 (E.D.N.Y. 2007). However, the Second Circuit has observed that New York considers tort claims for injury to reputation or "where the entire injury complained of by plaintiff flows from the effect on his reputation" to be duplicative of defamation claims. *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012).

Plaintiffs here allege that Doherty was aware of Plaintiffs' New York networks across the dance and automobile industry and that she "intentionally interfered with them." (Second Amended Compl. ¶¶ 55–62); *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 725-26 (S.D.N.Y. 2014). However, Plaintiffs do not allege any facts that indicate that Doherty knew of their business relationships. Moreover, Plaintiffs allegations here are duplicative of their defamation claims, because the injury they allege is based solely on the damage to their reputations. (Second Amended Compl. ¶¶ 55–62); *Chao*, 476 F. App'x at 895 (affirming the district court's dismissal of the plaintiff's tort claims that were duplicative of his defamation claims, because all the injury flowed from the impact the statements had on his reputation); *Restis*, 53 F. Supp. 3d at 705 (dismissing the plaintiff's tort claims where the various tort claims had the same factual allegations as the plaintiff's defamation claim and were based solely on the defendant's alleged "name and shame" campaign); *Button v. Breshears*, No. 24 Civ. 3757, 2025 WL 2771663, at *9–10 (S.D.N.Y. Sept. 26, 2025) (dismissing the Buttons' claims

25

of "injurious falsehood, intentional infliction of emotional distress, and tortious interference . . .

as duplicative of their defamation claims").  Thus, as with Plaintiff's intentional infliction of

emotional distress claim, Plaintiff's claim of tortious interference with business relations should

be dismissed as duplicative.[7]

### 3. Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave [to

amend a complaint] when justice so requires." FED R. CIV. P. 15(a)(2).  Dismissal with prejudice is

proper only where the deficiencies with the complaint are incurable. *See Cuoco v. Moritsugu*,

222 F.3d 99, 112 (2d Cir. 2000) (affirming dismissal of complaint because "[t]he problem with

[Plaintiff's] causes of action is substantive; better pleading will not cure it.").  Where the

Plaintiff is proceeding pro se, '[d]istrict courts should generally not dismiss a pro se complaint

without granting the plaintiff leave to amend" unless amendment "would be futile." *Ashmore v.

Prus*, 510 F. App'x 47, 49 (2d Cir. 2013).  However, it is "within the sound discretion of the

district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).

Here, Plaintiffs have had two opportunities to amend, and an opportunity to review

both Defendants' arguments and the Court's decision regarding the deficiencies in their prior

complaints.  These deficiencies have not been remedied. *Moore v. Experian*, No. 23 Civ. 673,

2023 WL 7169119, at *9–10 (S.D.N.Y. Oct. 13, 2023) (finding that where a pro se plaintiff had

been given an opportunity to amend her complaint and still did not cure the deficiencies, leave

---

[7] Additionally, as this Court has previously found, insofar as the tortious interference with business relations and intentional infliction of emotional distress claims are duplicative of the time-barred defamation claims, they are also time-barred. *See Button v. Doherty*, No. 24-cv-5026, 2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025), *report and recommendation adopted*, 2025 WL 2846927, at *17 n.26 (S.D.N.Y. July 30, 2025); *Button*, 2025 WL 2771663, at *9–10 ("Plaintiffs' injurious falsehood, intentional infliction of emotional distress, and tortious interference claims, which sound in defamation, are time barred just as their defamation claims.").

to amend should be denied).  Furthermore, notwithstanding this Court's prior warning to them,

Plaintiffs appear to have used artificial intelligence to generate hallucinated cases in their brief,

mischaracterizing authorities before the Court.[8]  For these reasons, I recommend that Plaintiffs'

request for leave to amend be denied and all of Plaintiffs' claims be dismissed with prejudice.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the motion at ECF No 83

be granted, and the Second Amended Complaint be dismissed in its entirety, with prejudice.

Dated: May 13, 2026                                     Respectfully submitted,
       New York, New York

                                                       Katharine H. Parker
                                                       U.S. Magistrate Judge

---

[8] The Plaintiffs cited a case in their Opposition that did not exist—*SPCA of Upstate New York, Inc. v. American Working Farm Dog Ass'n*, 18 A.D.3d 1087 (3d Dept. 2005)—and incorrectly cited both quotations and propositions. (ECF No. 89 ("Surreply"), at 2—3).  The Court has previously warned Plaintiffs regarding their use of artificial intelligence in the drafting of documents to be submitted to the court. *See Button v. Doherty*, No. 24-cv-5026, 2025 WL 2776069, at *5 n.7 (S.D.N.Y. Sept. 30, 2025).

## NOTICE

Plaintiffs shall have seventeen days and Defendants shall have fourteen days from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P.72(b)(2).

Plaintiffs shall have seventeen days to serve and file any response. Defendants shall have fourteen days to serve and file any response. Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John P. Cronan at the United States Courthouse, 500 Pearl Street, New York, New York 10007-1312, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).